Lawrence D. Rosenberg
(*admitted pro hac vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001.2113
Telephone: +1.202.879.3939
Facsimile:  +1.202.626.1700
ldrosenberg@jonesday.com

Christine E. Cheung (Cal. Bar No. 335629)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA  90071.2452
Telephone: +1.213.489.3939
Facsimile:  +1.213.243.2539
cecheung@jonesday.com

Attorneys for Petitioner
Lufthansa Technik AG

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| In the Matter of the Application of LUFTHANSA TECHNIK AG, Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to Take Discovery, Pursuant to the Federal Rules of Civil Procedure, of Respondent Thales Avionics, Inc., for Use in Foreign Proceedings | Case No. 8:22-mc-00034-JVS-KES<br><br>AMENDED APPLICATION FOR DISCOVERY IN AID OF FOREIGN LITIGATION PURSUANT TO 28 U.S.C. § 1782<br><br>ORAL ARGUMENT REQUESTED |
|---|---|

Petitioner Lufthansa Technik AG ("Lufthansa") makes this amended application for an order pursuant to 28 U.S.C. § 1782 authorizing its attorneys to issue subpoenas pursuant to Federal Rule of Civil Procedure 45 upon Thales Avionics, Inc. ("Thales") to produce documents and to provide testimony pursuant to Federal Rule of Civil Procedure 30, for use in currently pending patent infringement proceedings in Germany and the United Kingdom.  In the

proceedings, Lufthansa demonstrated that Astronics Advanced Electronic Systems ("AES") infringed Lufthansa's European Patent No. EP 881 145 B1 ("EP' 145 Patent) by selling 110V in-seat power systems, called "EmPower," for installation in commercial aircraft. Part of the patent infringement includes AES's sales of its system for incorporation in Thales's in-flight entertainment ("IFE") units that Thales sells to airlines worldwide. The German action remains pending for Lufthansa to submit evidence and accountings for damages based on sales by AES and its customers.

This is Lufthansa's second action under 28 U.S.C. § 1782 to obtain discovery from Thales in connection with these foreign proceedings against AES in Germany. In the first action (Case No. 8:19-mc-00016-UA-KES) ("First § 1782 Action"), Thales had produced contracts between Thales and AES and also spreadsheets regarding purchases and sales of parts AES had supplied to Thales ("AES Components"). This present action pertains to new information Thales disclosed in a letter to AES in June 2022, which AES later produced to Lufthansa as required by the court in the German action. The letter indicates that Thales supplied components to its downstream customers that were incorporated with AES Components, resulting in an infringing system. These Thales Components and their integration with AES Components to create infringing systems are relevant to Lufthansa's accounting for damages, and so Lufthansa is now seeking additional data from Thales to be used in the German action. On December 30, 2022, Lufthansa submitted its initial § 1782 application seeking these parts ("Second § 1782 Application"), but the Magistrate Judge recommended against granting the application so that Lufthansa could submit a more narrowly tailored application and subpoena. Dkt. Nos. 1, 41. To be clear, the present subpoena only seeks information about Thales Components that are incorporated with AES Components to create an infringing system. Information regarding AES Components, IFE-Systems or the information already provided by Thales in its June 1, 2022 letter is

not sought after in this Subpoena.

## JURISDICTION

1.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as it arises under federal law, specifically 28 U.S.C. § 1782.  *See United Co. Rusal PLC v. Trafigura A.G.*, No. 3:11mc17 (SRU), 2011 WL 1045532 (D. Conn. Mar. 16, 2011).

## BACKGROUND REGARDING FOREIGN PROCEEDINGS

### A.    THE PENDING GERMAN ACTIONS

2.     On December 29, 2010, Lufthansa initiated an action in a district court in Mannheim, Germany (the "Mannheim Court") against Astronics Advanced Electronic Systems ("AES") for infringement of Lufthansa's European Patent No. EP 881 145, validated in Germany as  DE 598 10 238 (the "German Patent"). Jaekel Decl. ¶ 14.

3.     By that civil action, Lufthansa sought an injunction to stop further harm from AES's infringement and to obtain damages for AES's past infringement. *Id*.

4.     On February 2, 2015, the Mannheim Court held that AES had infringed the German Patent through direct shipments of In-Seat-Power-Systems to Germany.  *Id.* ¶ 22.  On November 14, 2016, the Karlsruhe Higher Regional Court of Germany affirmed this decision.  *Id.*  In March 2019, the German Federal Supreme Court dismissed AES's appeal by holding that Lufthansa is entitled to ask for any and all damages incurred by AES's infringement through direct shipments of In-Seat-Power-Systems to Germany as far back as December 26, 2003.  *Id.*  On July 26, 2017, Lufthansa filed an action for its damages on the basis of AES's accounting.  *Id.* ¶ 18.  The Mannheim District Court granted Lufthansa damages on December 6, 2019.  *Id.*  Lufthansa enforced the judgement against AES.  *Id.*  That judgment is on appeal before the Karlsruhe Court of Appeals.  *Id.* ¶ 19.

5.     On December 29, 2017, Lufthansa filed another action against AES

claiming damages because AES infringed Lufthansa's patent by supplying infringing systems to customers outside of Germany, like Thales, while knowing that these systems would eventually be sold by AES's downstream customers in Germany (indirect shipments). In a December 6, 2019 judgment, the Mannheim District Court granted Lufthansa's claims for damages and accounting concerning AES's indirect shipments and AES's contributory infringement by supplying parts of its system to directly and indirectly to Germany such that, for example, AES is liable if AES Components are combined with Thales Components in Germany to create an infringing system.  In addition, the court granted Lufthansa's request for an affirmation because the court suspected AES's German accounting to be incorrect and incomplete.  In its appeal, AES asserted that it has no knowledge that its customers and further downstream customers would (i) supply its parts to Germany or (ii) combine the parts as an infringing system in Germany. *Id.* ¶¶ 25-27.  Lufthansa relies on claims for damages based on joint liability because AES collaborated with its downstream customers to commit patent infringement in Germany. This includes damages claims against AES for collaborating with Thales, such as by participating in system planning coordination meetings with customers, the aircraft manufactures and seat vendors to plan the installation and configuration of the infringing system in Germany.  *Id.* ¶ 27.

6.     In an appeal by AES of an order issuing the maximum fine allowable under German law for a second time, the Karlsruhe Court of Appeals confirmed that "If an entire system is the subject-matter, then, in addition to the parts mentioned in the patent claim, all other components indispensable for the proper functioning as well as all further elements belonging to the product put on the market are to be included." *Id.* ¶ 28.

7.     Because Lufthansa previously had been unaware that Thales Components are integrated with AES Components, Lufthansa sought discovery only regarding damages for infringing sales resulting from the supply of AES

1   Components in actions under 28 U.S.C. § 1782, against AES in the Western

2   District of Washington (Case No. 2:17-cv-1453-JCC), and against Thales in the

3   First § 1782 Action.  Now that Thales disclosed in its June 1, 2022 letter that Thales

4   Components are part of the infringing system or sold with an infringing system,

5   Lufthansa understands that these Thales Components are also subject to

6   Lufthansa's damages in Germany.  *Id.* ¶¶ 42-43.

7   **FACTUAL BACKGROUND**

8   **A.   LUFTHANSA AND THE EP 145 PATENT**

9       8.      Lufthansa is one of the leading manufacturers and independent

10  providers of maintenance, repair, overhaul, and modification services in the civil

11  aviation industry.  Jaekel Decl. ¶ 7.  With tailored maintenance programs and state-

12  of-the-art repair methods, Lufthansa ensures the unbroken reliability and

13  availability of its customers' fleets.  *Id.*  Lufthansa is an international organization

14  involved in maintenance, production, and development.  *Id.*

15      9.      Lufthansa's German Patent, titled "Electrical Power Supply Device,"

16  was issued on November 26, 2003.  *Id.* ¶ 11.  The patent claims technology that

17  enables a standard household voltage supply to be provided safely in the cabin of an

18  aircraft to supply electricity to allow passengers to use their laptops or electronic

19  entertainment devices in flight.  *Id.*  Before the patented invention, aviation

20  authorities took the view that placing a plug socket in the armrest of a passenger

21  seat, for example, posed a safety risk because a passenger might inadvertently insert

22  conductive material into the socket and receive an electric shock.  *Id.*  The risk was

23  particularly acute for young travelers, who might insert a sharp object into the plug

24  socket.  *Id.*

25      10.     The technology in the patent incorporates safety features to prevent the

26  possibility of electrical shock.  *Id.* ¶¶ 11-12.  Specifically, the patented technology

27  ensures that power is only supplied to a plug socket only if both pins are inserted

28  into the socket simultaneously.  *Id.*  Only when two pins are detected in the socket

within a predetermined maximum time (such as 300 milliseconds) will the power

supply switch the power on. *Id.* Thus, if a child, for example, inserted a needle

into one side of the plug socket, the power would not be switched on. *Id.* Even if a

child inserted a second needle into the second pole, no power would be switched

on, because the two pins would not be detected within the predetermined maximum

time. *Id.*

### B.    THALES

11.    Thales is a Delaware corporation, headquartered in Virginia, that has a

corporate office in Irvine, California, from which it has been known to ship

infringing units to Germany. Jaekel Decl. ¶ 9.

12.    Thales is a subsidiary of Thales USA Inc., which is, in turn, the

principal North American subsidiary of Thales Group.  Among other things, Thales

designs, engineers, sells, and installs in-flight entertainment and communications

solutions to airlines worldwide for both commercial and private aircraft.  *Id.*

13.    AES sells its AES Components to Thales, among other aircraft-

component companies that Thales then supplies to its downstream customers,

including in Germany.  *Id.* ¶ 35.

14.    Many or most of these AES Components are delivered to Thales's

facility in Irvine, California.  And, as noted previously, Thales has been known to

ship these AES Components from this facility to Germany.  Accordingly, the

documentation Lufthansa is seeking should be located at the Irvine, California,

facility or otherwise in the custody and control of Thales and its employees in that

facility.  *Id.* ¶ 10.

### <u>SECTION 1782'S STATUTORY REQUIREMENTS HAVE BEEN MET</u>

15.    28 U.S.C. § 1782 authorizes this Court to order any person in the

Central District of California to give testimony and produce documents for use in a

foreign proceeding upon the application of any person with an interest in that

proceeding.  Specifically, Section 1782(a) provides, in pertinent part:

> The district court of the district in which a person resides
> or is found may order him to give his testimony or
> statement or to produce a document or other thing for use
> in a proceeding in a foreign or international tribunal,
> including criminal investigations conducted before formal
> accusation.  The order may be made . . . upon the
> application of any interested person and . . . [t]o the extent
> that the order does not prescribe otherwise, the testimony
> or statement shall be taken, and the document or other
> thing produced, in accordance with the Federal Rules of
> Civil Procedure.

16.    To obtain discovery in aid of a foreign litigation, a petitioner must show:  (a) that the person to provide discovery resides or is found in the district where the application is made; (b) that the information sought is "for use in a proceeding in a foreign or international tribunal"; and (c) that the petitioner is an "interested person" in the foreign proceeding.  28 U.S.C. § 1782(a); *see also Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246 (2004).  Lufthansa's application satisfies each of these requirements.

17.    *First*, Thales resides in or can be found in this District.  Thales maintains a corporate office in Irvine, California, where many key business functions relating its in-flight entertainment systems are handled.  Jaekel Decl. ¶¶ 9-10.  On information and belief, the documents that Lufthansa seeks are either located in Irvine, California, or within this Respondent's possession, custody, or control, as those terms are defined in Federal Rule of Civil Procedure 34.  The Magistrate Judge confirmed that this requirement is satisfied and not in dispute in the Magistrate Judge's Report and Recommendation regarding Lufthansa's Second § 1782 Application.  Dkt. No. 41 at 11.

18.    *Second*, the information sought is highly relevant to, and will be used to assist Lufthansa in the pending German Action.  Specifically, the requested information pertains to sales of an infringing system and components sold with that infringing system, which are both relevant for calculating damages.  As such actions constitute proceedings in a foreign tribunal, the second requirement is met. *See Intel*, 542 U.S. at 258.  The Magistrate Judge confirmed that this requirement is

AMENDED APPLICATION FOR DISCOVERY PER 28 U.S.C. § 1782
- 7 -

1  satisfied with respect to the pending German Action in the Magistrate Judge's

2  Report and Recommendation regarding Lufthansa's Second § 1782 Application.

3  Dkt. No. 41 at 12.

4      19.    *Third*, this application is made by an "interested person."  28 U.S.C.

5  § 1782(a).  Lufthansa is the plaintiff in the Pending European proceedings.  *See*

6  Jaekel Decl. ¶¶ 1–2.  Parties to foreign litigation are "interested persons."  *See Intel*,

7  542 U.S. at 256 ("No doubt litigants are included among, and may be the most

8  common example of, the 'interested person[s]' who may invoke § 1782[.]"); *Akebia*

9  *Therapeutics, Inc. v. FibroGen, Inc.*, 793 F.3d 1108, 1110-11 (9th Cir. 2015)

10  (holding that a party to the foreign proceedings has the requisite "reasonable

11  interest" necessary for judicial assistance pursuant to Section 1782).  The

12  Magistrate Judge confirmed that this requirement is satisfied and not in dispute in

13  the Magistrate Judge's Report and Recommendation regarding Lufthansa's Second

14  § 1782 Application.  Dkt. No. 41 at 11.

15  **THE COURT SHOULD EXERCISE ITS DISCRETION AND PERMIT**
16  **LUFTHANSA TO OBTAIN THE REQUESTED DISCOVERY**

17      20.    Upon finding that the three statutory factors are satisfied, the district

18  court should determine, in its discretion, whether to order the requested discovery.

19  *See Intel*, 542 U.S. at 264.

20      21.    In *Intel*, the Supreme Court declined to adopt inflexible rules for

21  determining when or to what extent discovery is permissible under Section 1782.

22  Instead, the Court "suggested" factors that the district court could consider in

23  resolving that question.  *See Intel*, 542 U.S. at 247 ("Whether such assistance is

24  appropriate in this case is a question yet unresolved.  To guide the District Court on

25  remand, we suggest considerations relevant to the disposition of that question.").

26      22.    The four factors suggested by the Supreme Court for consideration are:

27  (1) whether "the person from whom discovery is sought is a participant in the

28  foreign proceeding" such that the "foreign tribunal has jurisdiction over [it]";

(2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the requests are "unduly intrusive or burdensome," and, if so, whether those requests can be "trimmed." *Intel*, 542 U.S. at 264-65; *see also United States v. Global Fishing, Inc.*, 634 F.3d 557, 563 (9th Cir. 2011) ("*Global Fishing*").

23.    In addition to these suggested factors, the Court should also consider the overarching principles of Section 1782. "Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal court assistance in gathering evidence for use in foreign tribunals." *Intel*, 542 U.S. at 247. While this legislation has undergone many amendments, these amendments have steadily and consistently moved the legislation in the singular direction of providing more, not less, discovery for use in more, not fewer, judicial and quasi-judicial forums in connection with more, not fewer, types of proceedings. *See id.* at 248-49. Indeed, the Seventh Circuit has explained that "a party to litigation in a foreign country can seek discovery relating to that litigation in a federal district court, and, in the discretion of that court, can obtain as much discovery as it could if the lawsuit had been brought in that court rather than abroad." *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 594 (7th Cir. 2011) ("*Biomet*") (internal citations omitted).

24.    Section 1782 has two aims: to provide "efficient assistance to participants in international litigation" in our federal courts and to "encourag[e] foreign countries by example to provide similar assistance to our courts. *Intel*, 542 U.S. at 252; *see also Akebia*, 793 F.3d at 1110; *Global Fishing*, 634 F.3d at 563; *Malev Hungarian Airlines v. United Techs. Int'l Inc.*, 964 F.2d 97, 100 (2d Cir. 1992); *Marubeni Am. Corp. v. LBA Y.K.*, 335 F. App'x 95, 96 (2d Cir. 2009)

1    (noting that the district court's discretion should be guided by the twin aims of the

2    statute); *Cryolife, Inc. v. Tenaxis Med., Inc.*, No. C08-05124 HRL, 2009 WL 88348,

3    at *3 (N.D. Cal. Jan. 13, 2009) (granting discovery requested for use in German

4    court because it would be consistent with the twin aims of the statute).

5         25.    To that end, Section 1782 has been described as a "one-way street"

6    that grants wide assistance to others, but demands nothing in return. *Malev*, 964

7    F.2d at 101. "Absent specific directions to the contrary from a foreign forum, the

8    statute's underlying policy should generally prompt district courts to provide some

9    form of discovery assistance." *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095,

10   1102 (2d Cir. 1995); *see also London v. Does 1-4*, 279 F. App'x 513, 515 (9th Cir.

11   2008) (affirming district court decision to permit Section 1782 discovery because

12   the petitioner showed the discovery would be useful to prove its case in the foreign

13   court). Indeed, if a court fails to consider this backdrop in analyzing the

14   discretionary Intel factors, it risks abusing its discretion. *See Malev*, 964 F.2d at

15   101-02.

16        26.    Applying these factors and considering the overarching principles

17   behind the statute, this Court should permit Lufthansa to obtain the requested

18   discovery.

19                         **Thales Is Not A Party**

20        27.    The first *Intel* factor considers whether a respondent is a participant in

21   the foreign proceedings because, when a respondent is party, "the need for

22   § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought

23   from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264.

24        28.    Thales is not a participant in the German Action. As the *Intel* Court

25   explained, this fact demonstrates why Lufthansa needs Section 1782 aid. *Id.*

26   ("nonparticipants in the foreign proceeding may be outside the foreign tribunal's

27   reach; hence, their evidence, available in the United States, may be unobtainable

28   absent § 1782(a) aid"). Indeed, a federal court has held that the first *Intel* factor

"necessarily favors" the petitioner where the respondent "is not a party to the foreign action." *Pott*, 945 F. Supp. 2d at 1200. In addition, Lufthansa will have no opportunity to seek discovery of the information sought by the Application in the pending German action because that jurisdiction does not have a mechanism that Lufthansa may invoke to obtain third-party discovery. Jaekel Decl. ¶¶ 54-56.

29. There is a provision in the German Code on Civil Procedure ("Zivilprozessordung" or "ZPO"), particularly, Section 142, that permits a party to request that the other party or a third party be ordered to present a certain, specifically identified document. *Id.* But Lufthansa cannot use that provision to obtain the discovery it seeks for at least three reasons. *First*, to invoke Section 142 ZPO, Lufthansa would be required to identify specifically the document(s) it seeks and justify the request by showing how those specific document(s) would be used to support a claim or defense in the lawsuit; a general request seeking discovery of the internal documents of the other party as evidence for the litigation , no matter how narrowly tailored, would not be sufficient. *Id.* If the information sought is uniquely within the knowledge and possession of the other party, these hurdles simply cannot be overcome. *Id. Second*, even if Lufthansa could overcome these hurdles, there is no guarantee that Thales would produce the requested documents in the German Action. There is no mechanism by which the German court can compel production. *Id. Third*, because the documents Lufthansa seeks are located in the United States, they are outside the jurisdictional reach of the German court. *Id. See In re Servicio Pan Americano de Proteccion, C.A.*, 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004) (granting the § 1782 petition because, among other things, "the apparent limitations of Venezuelan discovery rules suggest that the exercise of jurisdiction by this court may be necessary to provide Pan Americano with the documents it seeks.")

30. Moreover, even if a mechanism did exist under German or other foreign law to obtain such discovery, Section 1782 does *not* require that Lufthansa

1    invoke that mechanism or exhaust all possible alternatives before seeking discovery

2    in this Court.  *See Intel*, 542 U.S. at 261; *In re O'Keeffe*, 646 F. App'x 263, 268 (3d

3    Cir. 2016) ("We have never held that an applicant must seek discovery relief in the

4    foreign forum first."); *In re Procter & Gamble Co.*, 334 F. Supp. 2d 1112, 1115

5    (E.D. Wis. 2004) (rejecting as "inefficient and possibly ineffective" the argument

6    that petitioner should have to seek discovery from the foreign tribunal first).

7        31.    The first *Intel* factor thus weighs in favor of granting Lufthansa's

8    Application.  Indeed, the Magistrate Judge confirmed that this factor weighs in

9    favor of allowing the discovery in the Magistrate Judge's Report and

10    Recommendation regarding Lufthansa's Second § 1782 Application.  Dkt. No. 41

11    at 14.

12                **The Foreign Courts Will Be Receptive To The Discovery**

13        32.    The second *Intel* factor considers the nature of the foreign tribunal and

14    its receptiveness to the requested discovery.  Absent authoritative proof that a

15    foreign tribunal would reject evidence obtained with the aid of Section 1782, this

16    factor weighs in favor of granting a Section 1782 petition.  *See Minatec Fin.*

17    *S.A.R.L. v. SI Grp. Inc.*, No. 1:08-CV-269 (LEK/RFT), 2008 WL 3884374, at *6-7

18    (N.D.N.Y. Aug. 18, 2008) (granting request for discovery upon finding absence of

19    authoritative declarations from Germany's judiciary, executive, or legislature

20    addressing the use of evidence obtained by Section 1782); *Cryolife*, 2009 WL

21    88348, at *3 (finding no evidence that the German court would be unreceptive to

22    assistance under Section 1782 and granting petition).

23        33.    German courts generally receive evidence without regard to its origin,

24    how it was obtained, or whether the obtaining was in line with the ZPO, as long as

25    it was not obtained in violation of the basic rights provided in the German

26    constitution.  Lufthansa already introduced materials obtained through § 1782

27    actions in the German Action.  Jaekel Decl. ¶ 65.

28        34.    Federal courts examining this factor have routinely granted requests to

obtain discovery in the United States for use in proceedings pending in Germany. *See, e.g.*, *Biomet*, 633 F.3d at 599 (granting request for discovery under Section 1782 for German trade secret case); *Heraeus Kulzer GmbH v. Esschem, Inc.*, 390 F. App'x 88, 93 (3d Cir. 2010) (vacating order quashing subpoena and remanding with instructions to grant discovery on an expedited basis); *Cryolife*, 2009 WL 88348, at *4 (noting that under Section 1782, one is not "obliged to establish a 'compelling need' for discovery . . . petitioner need only show that the information will be useful"); *Minatec*, 2008 WL 3884374, at *4 ("[I]t is far better to provide federal court assistance than none at all."); *In re Gemeinschaftspraxis Dr. Med. Schottdorf*, No. Civ. M19-88 (BSJ), 2006 WL 3844464, at *7 (S.D.N.Y. Dec. 29, 2006) (concluding that the applicant's attempt to acquire discovery it was unable to obtain in Germany was "not an 'impermissible' use of § 1782 because, in some respects, that is precisely the type of assistance that the statute was designed to afford"); *Procter & Gamble Co.*, 334 F. Supp. 2d at 1115 (granting discovery for use in five foreign proceedings, including one in Germany).

35.    And, indeed, evidence obtained pursuant to Section 1782 has been decisive in German proceedings. *See In re Heraeus Kulzer GmbH*, No. 3:09-CV-530 RLM-MGG, 2017 WL 214322, at *1 (N.D. Ind. Jan. 18, 2017) (noting that the German court "relied on" documents obtained pursuant to Section 1782 in reaching its judgment); *see also In re Heraeus Kulzer GmbH*, No. 3:09-CV-530 RM, 2015 WL 5613156, at *1 (N.D. Ind. Sept. 22, 2015) (noting that "the German judgment quotes extensively from the cited documents," all of which were produced pursuant to a Section 1782 petition).

36.    The second *Intel* factor thus weighs in favor of granting Lufthansa's Application.  Indeed, the Magistrate Judge confirmed that this factor weighs in favor of allowing the discovery—finding that "the Court has no reason to doubt that the foreign proceedings comport with notions of fairness and due process"— in the Magistrate Judge's Report and Recommendation regarding Lufthansa's Second §

1782 Application.  Dkt. No. 41 at 14.

### The Request Does Not Conceal An Attempt
### To Circumvent Foreign Proof-Gathering Restrictions

37.     The third *Intel* factor considers whether the foreign jurisdiction has
proof-gathering restrictions that might be improperly circumvented if the discovery
request is granted.  Germany has no such proof-gathering restrictions.  *See Intel*,
542 U.S. at 264-65.  As noted above, German courts generally admit the evidence
offered by a party without regard to its origin.  Jaekel Decl. ¶¶ 53-65.

38.     The third *Intel* factor thus weighs in favor of granting Lufthansa's
Application.  Indeed, the Magistrate Judge confirmed that this factor weighs in
favor of allowing the discovery with regard to the German Action in the Magistrate
Judge's Report and Recommendation regarding Lufthansa's Second § 1782
Application.  *See* Dkt. No. 41 at 14-15.

### The Discovery Requests Are
### Narrowly Tailored To Obtain Relevant Information

39.     The discovery requests in this Application are narrowly tailored to
seek information concerning the Thales Components shipped to Germany while
excluding information relating to the previously sought after AES Components,
Thales' IFE-Systems, and the information Thales provided previously under the
2019 Subpoena or in its June 1, 2022 letter.  Lufthansa was not aware of the
information contained in the June 1, 2022 Letter regarding Thales Components'
incorporation with AES Components to form infringing systems prior to the June 1,
2022 letter.  The information that Lufthansa requests in this Application is therefore
not duplicative of discovery requests from the First Section 1782 action or from any
other proceeding.

40.     Particularly, by this Application, Lufthansa seeks information on (i)
shipments of Thales Components to Germany, (ii) part numbers for Thales
Components, (iii) purchases of Thales Components, (iv) possible ways to

incorporate Thales Components within infringing systems, (v) the actual
incorporate incorporation of Thales Components into infringing systems in Germany, (vi) AES
and Thales' joint efforts to incorporate the Thales Components into infringing
systems in Germany.  Jaekel Decl. ¶ 5.

41.    Before engaging in the document collection and review process,
however, given Thales' counsel's representations that the universe of documents
subject to the subpoena could be very limited, *see* Dkt. No. 41 at 17-18, Lufthansa's
amended subpoena requests a Rule 30(b)(6) deposition of Thales to determine the
precise universe of documents that could be implicated by the subpoena before the
parties engage in the document production process.  Lufthansa may thereafter seek
further deposition testimony on similar topics and those that arise from the
responsive documents.

42.    While Lufthansa has made every effort to propound narrowly tailored
discovery requests, if these requests are deemed to be overly broad, the proper
course of action is to modify the subpoena, rather than quashing it outright:

> [R]ecently, we have made the point that although
> American-style discovery for one party may skew foreign
> litigation, "it is far preferable for a district court to
> reconcile whatever misgivings it may have about the
> impact of its participation in the foreign litigation by
> issuing a closely tailored discovery order rather than by
> simply denying relief outright."

*Metallgesellschaft AG v. Hodapp*, 121 F.3d 77, 80 (2d Cir. 1997) (quoting
*Euromepa*, 51 F.3d at 1101); *see also id.* at 78 ("We agree . . . that the district court
abused its discretion in refusing discovery.").

43.    Similarly, the Seventh Circuit reversed the lower court's denial of
Section 1782 discovery, finding that denying the petitioner's request outright was
an abuse of discretion:

> The district court's second error was to turn down
> [petitioner's] discovery request flat, on the ground that
> compliance would be unduly burdensome to [respondent],
> without requiring [respondent] to negotiate with
> [petitioner] over cutting down the request to eliminate

1
2
3

> excessive burden and failing that to ask the district court
> to limit the scope of discovery . . . .  If [petitioner is]
> asking for too much, the district court can and should cut
> down its request, but not to nothing, as it did.  That was
> unreasonable, and therefore reversible.

4
5
6
7

*Biomet*, 633 F.3d at 597-98.  Lufthansa stands ready and willing to cooperate with Thales to try to resolve any concerns that Thales may have about the breadth of its discovery requests.  The fourth *Intel* factor thus weighs in favor of granting Lufthansa's Application.

8
9
10
11

44.     Indeed, this Court  previously found that, on balance, the four *Intel* factors weighed in favor of granting Lufthnsa's prior application for discovery from Thales.  (Dkt. No. 11, Case 8:19-mc-00016, Order Granting § 1782 Application at 4.)  The result should be the same here.

12
13
14
15
16
17
18
19
20
21
22
23

45.     The Magistrate Judge recommended against granting Lufthansa's Second § 1782 Application, without prejudice, on the basis that Lufthansa's proposed subpoena encompassed more information than information about Thales components that are integrated with AES components.  *See* Dkt. No. 41 at 16-20. Lufthansa's amended application and subpoena resolve this issue by targeting the Thales Components more specifically.  And, given Thales' counsel's representations that the universe of documents subject to the subpoena could be very limited, *see* Dkt. No. 41 at 17-18, Lufthansa's amended subpoena requests a Rule 30(b)(6) deposition of Thales to determine the precise universe of documents that could be implicated by the subpoena before the parties engage in the document production process.  Therefore, the Court should now have no issue finding this factor weighs in favor of granting Lufthansa's amended application for discovery.

24
25
26
27

## **The Proposed Protective Order Protects Thales's Confidentiality**

46.     Even if Thales were to challenge production of the requested documents and testimony by alleging that its own information is highly confidential, such confidentiality concerns should not be an impediment to this

28

1   Court's granting Lufthansa's Application for at least two reasons.

2       47.    *First*, this Court may enter a Protective Order to ensure that

3   confidential information will be provided only to Lufthansa's counsel who have

4   submitted to this Court's jurisdiction and not to Lufthansa's employees.  The

5   parties already agreed to a Protective Order in the First Section 1782 Action,

6   attached hereto as Attachment 5.  The proposed Protective Order also provides that,

7   before Lufthansa may use a document in the Pending European Proceedings, it

8   must give notice of its intent to Thales's counsel five (5) business days in advance.

9   Thales's counsel will then have an opportunity to challenge that proposed use in

10  this Court if it believes there is an undue risk of disclosure of the confidential

11  information.  Through this procedure, this Court can evaluate the likelihood that

12  disclosure might occur, and balance Lufthansa's need for the information against

13  Thales's confidentiality concerns.  The Ninth Circuit has acknowledged that

14  protective orders of this sort sufficiently "guard against disclosure" of confidential

15  information.  *Akebia*, 793 F.3d at 1112.

16      48.    *Second*, challenges to Lufthansa's proposed use should be rare because

17  the German court files are not publicly accessible and because Germany has

18  mechanisms to protect the confidentiality of evidence presented in their courts.  *See*

19  Jaekel Decl. ¶¶ 63-65.  Indeed, Lufthansa has previously presented material from

20  discovery in the United States as part of the German proceedings, and AES did not

21  have any problems with the way the German court handled the confidentiality

22  issues. *See id.*

23      49.    Thus, Thales's potential confidentiality concerns are no basis for

24  denying this Petition.

25                          **<u>CONCLUSION</u>**

26      This Court should exercise its discretion in favor of Lufthansa to effectuate

27  the twin aims of 28 U.S.C. § 1782: (i) providing efficient means of assistance to

28  participants in international litigation in our federal courts; and (ii) encouraging

foreign countries by example to provide similar means of assistance to our courts.
*See Intel*, 542 U.S. at 252; *Metallgesellschaft*, 121 F.3d at 79.  Lufthansa asks this
Court to consider its request promptly to ensure that responsive discovery is
obtained in sufficient time to be of use in the Pending German Proceedings, and,
after Thales has had an opportunity to voice any objections, to allow discovery
relevant to the issues generally identified in this application, including issuing and
serving subpoena in the form of Attachment 4 annexed hereto, pursuant to
Rules 26, 30, 34, and 45 of the Federal Rules of Civil Procedure.  In particular,
Lufthansa requests that the Court (i) set this matter for the earliest available hearing
date; and, after providing Thales an opportunity to voice its objections, if any;
(ii) enter an order compelling Thales to produce documents; (iii) enter a Protective
Order in the form annexed to Lufthansa's Second § 1782 Application (Dkt No. 1)
as Attachment 5; and (iv) grant such other and further relief to Lufthansa as may be
just and equitable.

Dated this 21st day of April, 2023.

By: */s/ Christine E. Cheung*

Lawrence D. Rosenberg
(*pro hac vice application to be filed*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001.2113
Telephone:    +1.202.879.3939
Facsimile:    +1.202.626.1700
ldrosenberg@jonesday.com

Christine E. Cheung (Cal. Bar No. 335629)
JONES DAY
555 South Flower Street, Fiftieth Floor
Los Angeles, CA 90071.2452
Telephone:    +1.213.489.3939
Facsimile:    +1.213.243.2539
asmith@jonesday.com

Attorneys for Petitioner
LUFTHANSA TECHNIK AG

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| Lufthansa Technik AG | ) |
| *Plaintiff* | ) |
| v. | ) |
| Thales Avionics, Inc. | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.  8:22-mc-00034-JVS-KES

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                     Thales Avionics, Inc.

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attached List.

| Place: | Date and Time: |
|---|---|
| | |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _____

        *CLERK OF COURT*

                                                    OR

_____              _____
*Signature of Clerk or Deputy Clerk*                              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
_____ , who issues or requests this subpoena, are:

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   8:22-mc-00034-JVS-KES

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____  on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                                *Server's signature*

                                    _____
                                                *Printed name and title*

                                    _____
                                                *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) *For Other Discovery.*** A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) *Command to Produce Materials or Permit Inspection.***
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) *Quashing or Modifying a Subpoena.***
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) *Claiming Privilege or Protection.***
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## Exhibit A to Subpoena Directed to Thales

### Definitions

"Thales" or "You" shall mean Thales Avionics Inc., located at 58 Discovery, Irvine, CA 92618, and all predecessors, successors in interest, assignees; and all directors, officers, employees, agents, representatives, and/or partners of the aforementioned entity.

"Astronics" or "AES" shall mean Astronics Advanced Electronic Systems, located at 12950 Willows Road, NE, Kirkland, WA 98034, and all predecessors, successors in interest, assignees; and all directors, officers, employees, agents, representatives, and/or partners of the aforementioned entity.

"Document(s)" shall be defined to the fullest extent permitted by Federal Rule Civil Procedure 34 and case law interpreting it.

The words "and," "or" and "and/or" shall be construed conjunctively or disjunctively as is necessary to make the request inclusive rather than exclusive.

"Thales/AES Infringing Assemblies" shall mean any assemblies or parts thereof sold, offered for sale, imported, owned, or brought into circulation by Thales until May 21, 2018 providing an alternating current supply with 110V or more that incorporate one or more AES Components.

"Thales Components" shall mean parts of Thales/AES Infringing Assemblies that are not AES Components and also are not part of an IFE-System as defined below.

"AES Components" shall mean part or component (a) listed in Annex A, including the respective test equipment for such parts, or (b) comprising of the same functionality as a part or components in (a) and also offered, imported, owned, sold, or brought into circulation by AES.

"IFE System" means entertainment systems or parts thereof available to aircraft passengers during a flight and includes any product, system, equipment, software, services, and support services related thereto, for entertainment, passenger information, passenger communication and monitoring purposes and designed for use by passengers onboard an aircraft, e.g. screens, audio and video cables, and entertainment storage devices.

"Incorporate" shall mean the inclusion or installation of components as part of a system.

"Shipment" shall mean each sale or shipment, including direct shipments or indirect shipments by or on behalf of Thales of Thales/AES Infringing Assemblies or parts thereof, or parts sold therewith, to a location in Germany or intended for the installation in a passenger seat by German seat vendors or on an aircraft finally assembled in Germany, such as the Airbus A380.

"German Seat Vendor" shall mean a seat vendor having a place of business or manufacturing site in Germany, such as Recaro Aircraft Seating GmbH & Co. KG and ZIM Flugsitz GmbH, including its predecessors and successors.

## Instructions

Thales is requested to produce Documents in the following categories that are in Thales's possession, custody, or control, in their entirety and without redaction or expurgation. "Possession, custody, or control" shall be construed to the fullest extent provided under Federal Rules of Civil Procedure 34 and 45 and shall include those Documents within the United States that Thales has the ability to demand or to gain access to in the ordinary course of business, including from or through its parent(s) and/or subsidiary/ies.

If any Document is withheld based upon a claim of privilege or other protection, provide for each such Document: (i) the date of the Document, (ii) the names of all authors, (iii) the names of all recipients, (iv) the names of all cc and/or bcc recipients, (v) the type of Document, (vi) a description of the Document (vii) an identification of the privilege or protection claimed and (viii) a brief explanation of the basis of your claim of privilege or other protection.

Documents shall not be withheld on the grounds that they contain highly sensitive or confidential information, but instead shall be designated in accordance with the terms of the protective order entered by the Court.

Requests for documents may be limited as to responsive documents regarding installation in Germany, or documents that are otherwise responsive, from December 26, 2003 to May 22, 2018, excluding documents Thales has produced to Lufthansa under the subpoena dated July 8, 2019 or in its June 1, 2022 letter to AES (Reference No. 311 cs 145628. 000019, #2128947).

## Documents Requested

1.    Documents, including but not limited to purchase orders, invoices, shipping documents or offers, sufficient to show, for each year since the first Shipments of Thales Components and for each subsequent Shipment, the order class, the sales code, the sales order line, the customer information, such as the customer number, the name, the city and country code, date added, customer due date, actual shipment date, customer purchase order number, Fac code, part number, part description, quantity of units, unit price, extended price, comp flag, ship-to address, including the ship-to name, city and country code, program number, aircraft type that the part would be installed on, freight carrier, bill of lading, tail number of the aircraft that the parts would be installed on, shipment instructions, the modification level, batch number, whether it was a retrofit or a linefit.

2.    Documents, including but not limited to parts lists, cross reference documents, sufficient to show part numbers and part descriptions for Thales Components and the respective alternative part numbers for Thales Components that Thales used vis-à-vis AES, its customers, seat vendors or aircraft manufactures.

3.    Documents, including but not limited to purchase orders, invoices, shipping documents or offers, sufficient to show, for each year since the first purchases, for each purchase or receipt of Thales Components that were subsequently sold or Shipped according to Request no. 1, the vendor number, vendor name, vendor invoice number and invoice date, purchase order number, line number, packaging slip number, date received, quantity received, purchase order

line unit price or manufacturing cost, purchase order line extended price or other compensation, disposition reference, part description and part class, the modification level and batch number.

Instead of Documents, Thales may provide comprehensive, electronically prepared Excel spreadsheets in response to requests 1 to 3.

4.    Documents, including but not limited to component maintenance manuals, data sheets, declarations of design and performance, equipment specifications, system description documents, cable plans, wiring diagrams, technical drawings sufficient to show how the Thales Components pursuant to Request no. 1 can be Incorporated in a Thales/AES Infringing Assembly.

5.    Documents, including but not limited to initial technical coordination minutes, preliminary design reviews, critical design reviews, first article inspection minutes and system review documents, schedules, such as delivery schedules, shipment schedules or milestone confirmations, or plans, such as electric system architecture plans, cable plans and cable routing plans, sufficient to show for each Thales Component pursuant to request no. 1 how the Thales Components were Incorporated into the Thales/AES Infringing Assembly in Germany, including by Thales, Thales' customers, seat vendors, German Seat Vendors or the aircraft manufacturer or Thales' line support at Airbus's final assembly line in Hamburg, Germany.

6.    Documents, including but not limited to initial technical coordination minutes, preliminary design reviews, critical design reviews, first article inspection minutes and system review documents, schedules, such as delivery schedules, shipment schedules or milestone confirmations, plans, such as electric system architecture plans, cable plans and cable routing plans, training materials, such as PowerPoint presentations, or technical documents, such as component maintenance manuals, user manuals or repair manuals, sufficient to show AES' interactions with Thales to Incorporate the Thales Components as part of the Thales/AES Infringing Assembly in Germany, including the interaction at AES's and Thales' line fit support at Airbus's final assembly line in Hamburg, Germany or AES's at the customers, seat vendors or aircraft manufactures in Germany.

### Rule 30(b)(6) Deposition Notice

PLEASE TAKE NOTICE that, Petitioner Lufthansa Technik, AG ("Lufthansa"), pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, will take the deposition of Thales Avionics, Inc. ("Thales") on the topics listed herein.  The deposition will take place in person at a place and time to be determined by the parties.  The deposition will be taken upon oral examination before a public notary or other person authorized by law to administer oaths.  The deposition may be used for discovery, at the trial of this action, or for any other purposes permitted by the Federal Rules of Civil Procedure.

Please designate a deponent or deponents knowledgeable about each of the following topics to testify on Thales' behalf:

1.    The sales of Thales Components, as defined above, to Germany including the purchase information for such components.

2.    The incorporation of Thales Components, as defined above, with AES Components in a Thales/AES Infringing Assembly in Germany.

3.    The interactions and joint efforts between Thales and AES regarding the incorporation of Thales Components into Thales/AES Infringing Assemblies in Germany.

* * *

Annex A

Part Number

129986; 131581; 131585; 1067844; 1067845; 1067846; 1068855; 1068856; 1068857; 1174801; 1174802; 1174805; 1174812; 1174813; 1174814; 1191805; 1191806; 1191842; 1191847; 1191848; 1191849; 1191853; 1191854; 1191855; 1191871; 1191885; 1191886; 1191887; 1191892; 1191894; 1191899; 1248802; 1248807; 1248813; 1248868; 1248878; 1248879; 1248880; 1248882; 1248883; 1248884; 1248886; 1248887; 1284805; 1291809; 1295829; 1299801; 1299802; 1299804; 1299811; 1299816; 1299820; 1299821; 1299829; 1299830; 1299831; 1299853; 1299858; 1299859; 1299866; 1299867; 1299868; 1299869; 1299875; 1299876; 1299882; 1299886; 1299890; 1299892; 1301804; 1301805; 1301812; 1301813; 1301814; 1301817; 1301829; 1301842; 1301843; 1301844; 1301865; 1301868; 1301869; 1301875; 1301877; 1315811; 1315821; 1315822; 1315823; 1315824; 1315847; 1315851; 1315854; 1315879; 1315883; 12998026; 1067-1; 1067-2; 1067510-1; 1067511-1; 1067801-; 1067802-; 1067806-1-10; 1067806-1-15; 1067806-1-20; 1067806-1-25; 1067806-1-30; 1067806-1-35; 1067806-1-40; 1067806-1-45; 1067806-1-50; 1067806-1-55; 1067806-1-60; 1067807-; 1067809-; 1067810-; 1067814-1-; 1067814-10-; 1067814-2-; 1067814-22-; 1067814-4-; 1067816-; 1067817-; 1067819-; 1067820-; 1067821-; 1067822-; 1067823-; 1067824-; 1067825-; 1067826-; 1067827-; 1067828-; 1067829-; 1067830-; 1067831-; 1067832-; 1067833-; 1067834-; 1067835-; 1067836-; 1067837-; 1067838-; 1067839-; 1067840-; 1067841-; 1067842-; 1067843-; 1067847-; 1067848-; 1067850-; 1067851-; 1067852-; 1068105-; 1068802-; 1068803-; 1068804-; 1068807-; 1068808-; 1068809-; 1068810-; 1068811-; 1068813-; 1068814-; 1068816-; 1068817-; 1068823-; 1068824-; 1068825-; 1068826-; 1068828-; 1068830-; 1068831-; 1068832-; 1068833-; 1068834-; 1068835-; 1068836-; 1068837-; 1068838-; 1068839-; 1068841-; 1068842-; 1068843-; 1068844-; 1068845-; 1068846-; 1068847-; 1068848-; 1068849-; 1068850-; 1068851-; 1068852-; 1068853-; 1068854-; 1068861-; 1068862-; 1068863-; 1068864-; 1068867-; 1068868-; 1068869-; 1068870-; 1068872-; 1068873-; 1068874-; 1068876-; 1068877-; 1068878-; 1068879-; 1068880-; 1068881-; 1089-3-1B; 1089-6-1B; 1091101-2; 1091101-2-1; 1091101-2-2; 1091101-5-1; 1091101-5-2; 1091101-6-1; 1091101-6-2; 1091101-8; 1091101-8-1; 1091101-8-2; 1091102-2; 1091102-2-1; 1091102-2-2; 1091102-2-3; 1091102-5-1; 1091102-5-2; 1091102-5-3; 1091102-6-1; 1091102-6-2; 1091102-6-3; 1091102-8; 1091102-8-1; 1091102-8-2; 1091102-8-3; 1091-2-1B; 1091-2-3B; 1091-2-7; 1091-2-8; 1091-2-9; 1091-3-1; 1091-4-1; 1091-4-10; 1091-4-2; 1091-4-3; 1091-4-4; 1091-8; 1100-1; 1100-2; 1100712-0001; 1100712-0002; 1100712-0003; 1100712-0005; 1100712-0006; 1100712-0007; 1100712-0008; 1100712-0009; 1100712-0010; 1100712-0011; 1100712-0012; 1100712-0013; 1100712-0015; 1100712-0016; 1100712-0017; 1100713-0001; 1100713-0002; 1100713-0003; 1100713-0005; 1100713-0006; 1100713-0007; 1100713-0008; 1100713-0009; 1100713-0010; 1100713-0011; 1100713-0012; 1100713-0013; 1100713-0015; 1100713-0016; 1100801-; 1100802-; 1100803-; 1100804-; 1100805-; 1100806-; 1100807-; 1100808-; 1100809-; 1100810-; 1100811-; 1121401-2; 1140101-6; 1140102-10; 1140103-10; 1140105-10; 1140106-10; 1140111-6; 1140800-1; 1140801-1; 1140803-1; 1140804-1; 1140805-1; 1140806-1; 1140807-1; 115NT000-101; 115NT000-102; 115NT000-111; 115NT000-113; 115NT000-114; 115NT000-115; 115NT000-116; 115NT000-117; 115NT000-201; 115NT000-202; 115NT000-203; 115NT000-204; 115NT000-211; 115NT000-213; 115NT000-214; 115NT000-215; 115NT000-216; 115NT000-217; 1170-1; 1170801-; 1170802-; 1170803-; 1170804-; 1170805-; 1170807-; 1170808-; 1170809-; 1170810-; 1170811-; 1170812-; 1170813-; 1170814-; 1170815-; 1170816-; 1170817-; 1170818-; 1170819-; 1170820-; 1170821-; 1170822-; 1170823-; 1170824-; 1170825-; 1170826-; 1170827-; 1170828-; 1171-1-; 1171-2-; 1172-1; 1172-2; 1172-3; 1172-4; 1172-5; 1172-6; 1174-1; 1174-2; 1174815-; 1175101-1; 1175102-1; 1175103-1; 1175104-1; 1175105-1; 1175106-1; 1175107-1; 1175108-1; 1175109-1; 1175110-1; 1175801-; 1175802-; 1175803-; 1175804-; 1175805-; 1175806-; 1175807-; 1175809-; 1175810-; 1175811-; 1175812-; 1175813-; 1175814-; 1175815-; 1175816-; 1175817-; 1175820-; 1175821-; 1175822-; 1175823-; 1175824-; 1175825-; 1175826-; 1175827-; 1175828-; 1176-1; 1176305-1; 1176701-001; 1176701-002; 1176701-003; 1176701-004; 1176701-005; 1176701-006; 1176701-007; 1176701-008; 1176701-009; 1176701-010; 1176701-011; 1176701-012; 1176701-013; 1176701-014; 1176701-015; 1176701-016; 1176701-017; 1176701-018; 1176701-019; 1176701-020; 1176701-021; 1176701-022; 1176701-023; 1176701-024; 1176701-025; 1176701-026; 1176701-027; 1176701-028; 1176701-029; 1176701-030; 1176701-031; 1176701-032; 1176701-033; 1176701-034; 1176701-035; 1176701-036; 1176701-037; 1176701-038; 1176701-039; 1176701-040; 1176701-041; 1176701-042; 1176701-043; 1176701-044; 1176701-045; 1176701-046; 1176701-047; 1176701-048; 1176701-049; 1176701-050; 1176701-051; 1176701-052; 1176701-053; 1176701-054; 1176701-055; 1176701-056; 1176701-057; 1176701-058; 1176701-059; 1176701-060; 1176701-061; 1176701-062; 1176701-063; 1176701-064; 1176701-065; 1176701-066; 1176701-067; 1176701-068; 1176701-069; 1176701-070; 1176701-071; 1176701-072; 1176701-073; 1176701-074; 1176701-075; 1176701-076; 1176701-077; 1176701-078; 1176701-079; 1176701-080; 1176701-081; 1176701-082; 1176701-083; 1176701-084; 1176701-085; 1176701-086; 1176701-087; 1176701-088; 1176701-089; 1176701-090; 1176701-091; 1176701-092; 1176701-093; 1176701-094; 1176701-095; 1176701-096; 1176701-097; 1176701-098; 1176701-099; 1176701-100; 1176701-101; 1176701-102; 1176701-103; 1176701-104; 1176701-105; 1176701-106; 1176701-107; 1176701-108; 1176701-109; 1176701-110; 1176701-111; 1176701-112; 1176701-113; 1176701-114; 1176701-115; 1176701-116; 1176701-117; 1176701-118; 1176701-119; 1176701-120; 1176701-121; 1176701-122; 1176701-123; 1176701-124; 1176701-125; 1176701-126; 1176701-127; 1176701-128; 1176701-129; 1176701-130; 1176701-131; 1176701-132; 1176701-133; 1176701-134; 1176701-135; 1176701-136; 1176701-137; 1176701-138; 1176701-139; 1176701-140; 1176701-141; 1176701-142; 1176701-143; 1176701-144; 1176701-145; 1176701-146; 1176701-147; 1176701-148; 1176701-149; 1176701-150; 1176701-151; 1176701-152; 1176701-153; 1176701-154; 1176701-155; 1176701-156; 1176701-157; 1176701-158; 1176701-159; 1176701-160; 1176701-161; 1176701-162; 1176701-

163; 1176701-164; 1176701-165; 1176701-166; 1176701-167; 1176701-168; 1176701-169; 1176701-170; 1176701-171; 1176701-172; 1176701-173; 1176701-174; 1176701-175; 1176701-176; 1176701-177; 1176701-178; 1176701-179; 1176701-180; 1176701-181; 1176701-182; 1176701-183; 1176701-184; 1176701-185; 1176701-186; 1176701-187; 1176701-188; 1176701-189; 1176701-190; 1176701-191; 1176701-192; 1176701-193; 1176701-194; 1176701-195; 1176701-196; 1176701-197; 1176701-198; 1176701-199; 1176701-200; 1176701-201; 1176701-202; 1176701-203; 1176701-204; 1176701-205; 1176701-206; 1176701-207; 1176701-208; 1176701-209; 1176701-210; 1176701-211; 1176701-212; 1176701-213; 1176701-214; 1176701-215; 1176701-216; 1176701-217; 1176701-218; 1176701-219; 1176701-220; 1176701-221; 1176701-222; 1176701-223; 1176701-224; 1176701-225; 1176701-226; 1176701-227; 1176701-228; 1176701-229; 1176701-230; 1176701-231; 1176701-232; 1176701-233; 1176701-234; 1176701-235; 1176701-236; 1176701-237; 1176701-238; 1176701-239; 1176701-240; 1176701-241; 1176701-242; 1176701-243; 1176701-244; 1176701-245; 1176701-246; 1176701-247; 1176701-248; 1176701-249; 1176701-250; 1176701-251; 1176701-252; 1176701-253; 1176701-254; 1176701-255; 1176701-256; 1176701-257; 1176701-258; 1176701-259; 1176701-260; 1176701-261; 1176701-262; 1176701-263; 1176701-264; 1176701-265; 1176701-266; 1176701-267; 1176701-268; 1176701-269; 1176701-270; 1176701-271; 1176701-272; 1176701-273; 1176701-274; 1176701-275; 1176701-276; 1176701-277; 1176701-278; 1176701-279; 1176701-280; 1176701-281; 1176701-282; 1176701-283; 1176701-284; 1176701-285; 1176701-286; 1176701-287; 1176701-288; 1176701-289; 1176701-290; 1176701-291; 1176701-292; 1176701-293; 1176701-294; 1176701-295; 1176701-296; 1176701-297; 1176701-298; 1176701-299; 1176701-300; 1176701-301; 1176701-302; 1176701-303; 1176701-304; 1176701-305; 1176701-306; 1176701-307; 1176701-308; 1176701-309; 1176701-310; 1176701-311; 1176701-315; 1176701-316; 1176701-317; 1176701-318; 1176701-319; 1176701-320; 1176701-321; 1176701-322; 1176701-323; 1176701-324; 1176701-325; 1176701-326; 1176701-327; 1176701-328; 1176701-329; 1176701-330; 1176701-331; 1176701-332; 1176701-333; 1176701-334; 1176701-335; 1176701-336; 1176701-337; 1176701-338; 1176701-339; 1176701-340; 1176701-341; 1176701-342; 1176701-343; 1176701-344; 1176701-345; 1176701-346; 1176701-347; 1176701-348; 1176701-349; 1176701-350; 1176701-351; 1176701-352; 1176701-353; 1176701-354; 1176701-355; 1176701-356; 1176701-357; 1176701-358; 1176701-359; 1176701-360; 1176701-361; 1176701-362; 1176701-363; 1176701-364; 1176701-365; 1176701-366; 1176701-367; 1176701-368; 1176701-369; 1176701-370; 1176701-371; 1176701-372; 1176701-373; 1176701-374; 1176701-375; 1176701-376; 1176701-377; 1176701-378; 1176701-379; 1176701-380; 1176701-381; 1176701-382; 1176701-383; 1176701-384; 1176701-385; 1176701-386; 1176701-387; 1176701-388; 1176701-389; 1176701-390; 1176701-391; 1176701-392; 1176701-393; 1176701-394; 1176701-395; 1176701-396; 1176701-397; 1176701-398; 1176701-399; 1176701-400; 1176701-401; 1176701-402; 1176701-403; 1176701-404; 1176701-405; 1176701-406; 1176701-407; 1176701-408; 1176701-409; 1176701-410; 1176701-411; 1176701-412; 1176701-413; 1176701-414; 1176701-415; 1176701-416; 1176701-417; 1176701-418; 1176701-419; 1176701-420; 1176701-421; 1176701-422; 1176701-423; 1176701-424; 1176701-425; 1176701-426; 1176701-427; 1176701-428; 1176701-429; 1176701-430; 1176701-431; 1176701-432; 1176701-433; 1176701-434; 1176701-435; 1176701-436; 1176701-437; 1176701-438; 1176701-439; 1176701-440; 1176701-441; 1176701-442; 1176701-443; 1176701-444; 1176701-445; 1176701-446; 1176701-447; 1176701-448; 1176701-449; 1176701-450; 1176701-451; 1176701-452; 1176701-453; 1176701-454; 1176701-455; 1176701-456; 1176701-457; 1176701-458; 1176701-459; 1176701-460; 1176701-461; 1176701-462; 1176701-463; 1176701-464; 1176701-465; 1176701-466; 1176701-467; 1176701-468; 1176701-469; 1176701-470; 1176701-471; 1176701-472; 1176701-473; 1176701-474; 1176701-475; 1176701-476; 1176701-477; 1176701-478; 1176701-479; 1176701-480; 1176701-481; 1176701-482; 1176701-483; 1176701-484; 1176701-485; 1176701-486; 1176701-487; 1176701-488; 1176701-489; 1176701-490; 1176701-491; 1176701-492; 1176701-493; 1176701-494; 1176701-495; 1176701-496; 1176701-497; 1176701-498; 1176701-499; 1176701-500; 1176701-501; 1176701-502; 1176701-503; 1176701-504; 1176701-505; 1176701-506; 1176701-507; 1176701-508; 1176701-509; 1176701-510; 1176701-511; 1176701-512; 1176701-513; 1176701-514; 1176701-515; 1176701-516; 1176701-517; 1176701-518; 1176701-519; 1176701-520; 1176701-521; 1176701-522; 1176701-523; 1176701-524; 1176701-525; 1176701-526; 1176701-527; 1176701-528; 1176701-529; 1176701-530; 1176701-531; 1176701-532; 1176701-533; 1176701-534; 1176701-535; 1176701-536; 1176701-537; 1176701-538; 1176701-539; 1176701-540; 1176701-541; 1176701-542; 1176701-543; 1176701-544; 1176701-545; 1176701-546; 1176701-547; 1176701-548; 1176701-549; 1176701-550; 1176701-551; 1176701-552; 1176701-553; 1176701-554; 1176701-555; 1176701-556; 1176701-557; 1176701-558; 1176701-559; 1176701-560; 1176701-561; 1176701-562; 1176701-563; 1176701-564; 1176701-565; 1176701-566; 1176701-567; 1176701-568; 1176701-569; 1176701-570; 1176701-571; 1176701-572; 1176701-573; 1176701-574; 1176701-575; 1176701-576; 1176701-577; 1176701-578; 1176701-579; 1176701-580; 1176701-581; 1176701-582; 1176701-583; 1176701-584; 1176701-585; 1176701-586; 1176701-587; 1176701-588; 1176701-589; 1176701-590; 1176701-591; 1176701-592; 1176701-593; 1176701-594; 1176701-595; 1176701-596; 1176701-597; 1176701-598; 1176701-599; 1176701-600; 1176701-601; 1176701-602; 1176701-603; 1176701-604; 1176701-605; 1176701-606; 1176701-607; 1176701-608; 1176701-609; 1176701-610; 1176701-611; 1176701-612; 1176701-613; 1176701-614; 1176701-615; 1176701-616; 1176701-617; 1176701-618; 1176701-619; 1176701-620; 1176701-621; 1176701-622; 1176701-623; 1176701-624; 1176701-625; 1176701-626; 1176701-627; 1176701-628; 1176701-629; 1176701-630; 1176701-631; 1176701-632; 1176701-633; 1176701-634; 1176701-635; 1176701-636; 1176701-637; 1176701-638; 1176701-639; 1176701-640; 1176701-641; 1176701-642; 1176701-643; 1176701-644; 1176701-645; 1176701-646; 1176701-647; 1176701-648; 1176701-649; 1176701-650; 1176701-651; 1176701-652; 1176701-653; 1176701-654; 1176701-655; 1176701-656; 1176701-657; 1176701-658; 1176701-659; 1176701-660; 1176701-661; 1176701-662; 1176701-663; 1176701-664; 1176701-665; 1176701-666; 1176701-667; 1176701-668; 1176701-669; 1176701-670; 1176701-671; 1176701-672; 1176701-673; 1176701-674; 1176701-675; 1176701-676; 1176701-677; 1176701-678; 1176701-679; 1176701-680; 1176701-681; 1176701-682; 1176701-683; 1176701-684; 1176701-685; 1176701-686; 1176701-687; 1176701-688; 1176701-689; 1176701-690; 1176701-691; 1176701-692; 1176701-

693; 1176701-694; 1176701-695; 1176701-696; 1176701-697; 1176701-698; 1176701-699; 1176701-700; 1176701-701; 1176701-702; 1176701-703; 1176701-704; 1176701-705; 1176701-706; 1176701-707; 1176701-708; 1176701-709; 1176701-710; 1176701-711; 1176701-712; 1176701-713; 1176701-714; 1176701-715; 1176701-716; 1176701-717; 1176701-718; 1176701-719; 1176701-720; 1176701-721; 1176701-722; 1176701-723; 1176701-724; 1176701-725; 1176701-726; 1176701-727; 1176701-728; 1176701-729; 1176701-730; 1176701-731; 1176701-732; 1176701-733; 1176701-734; 1176701-735; 1176701-736; 1176701-737; 1176701-738; 1176701-739; 1176701-740; 1176701-741; 1176701-742; 1176701-743; 1176701-744; 1176701-745; 1176701-746; 1176701-747; 1176701-748; 1176701-749; 1176701-750; 1176701-751; 1176701-752; 1176701-753; 1176701-754; 1176701-755; 1176701-756; 1176701-757; 1176701-758; 1176701-759; 1176701-760; 1176701-761; 1176701-762; 1176701-763; 1176701-764; 1176701-765; 1176701-766; 1176701-767; 1176701-768; 1176701-769; 1176701-770; 1176701-771; 1176701-772; 1176701-773; 1176701-774; 1176701-775; 1176701-776; 1176701-777; 1176701-778; 1176701-779; 1176701-780; 1176701-781; 1176701-782; 1176701-783; 1176701-784; 1176701-785; 1176701-786; 1176701-787; 1176701-788; 1176701-789; 1176701-790; 1176701-791; 1176701-792; 1176701-793; 1176701-794; 1176701-795; 1176701-796; 1176701-797; 1176701-798; 1176701-799; 1176701-800; 1176701-801; 1176701-802; 1176701-803; 1176701-804; 1176701-805; 1176701-806; 1176701-807; 1176701-808; 1176701-809; 1176701-810; 1176701-811; 1176701-812; 1176701-813; 1176701-814; 1176701-815; 1176701-816; 1176701-817; 1176701-818; 1176701-819; 1176701-820; 1176701-821; 1176701-822; 1176701-823; 1176701-824; 1176701-825; 1176701-826; 1176701-827; 1176701-828; 1176701-829; 1176701-830; 1176701-831; 1176701-832; 1176701-833; 1176701-834; 1176701-835; 1176701-836; 1176701-837; 1176701-838; 1176701-839; 1176701-840; 1176701-841; 1176701-842; 1176701-843; 1176701-844; 1176701-845; 1176701-846; 1176701-847; 1176701-848; 1176701-849; 1176701-850; 1176701-851; 1176701-852; 1176701-853; 1176701-854; 1176701-855; 1176701-856; 1176701-857; 1176701-858; 1176701-859; 1176701-860; 1176701-861; 1176701-862; 1176701-863; 1176701-864; 1176701-865; 1176701-866; 1176701-867; 1176701-868; 1176701-869; 1176701-870; 1176701-871; 1176701-872; 1176701-873; 1176701-874; 1176701-875; 1176701-876; 1176701-877; 1176701-878; 1176701-879; 1176701-880; 1176701-881; 1176701-882; 1176701-883; 1176701-884; 1176701-885; 1176701-886; 1176701-887; 1176701-888; 1176701-889; 1176701-890; 1176701-891; 1176701-892; 1176701-893; 1176701-894; 1176701-895; 1176701-896; 1176701-897; 1176701-898; 1176701-899; 1176701-900; 1176701-901; 1176701-902; 1176701-903; 1176701-904; 1176701-905; 1176701-906; 1176701-907; 1176701-908; 1176701-909; 1176701-910; 1176701-911; 1176701-912; 1176701-913; 1176701-914; 1176701-915; 1176701-916; 1176701-917; 1176701-918; 1176701-919; 1176701-920; 1176701-921; 1176701-922; 1176701-923; 1176701-924; 1176701-925; 1176701-926; 1176701-927; 1176701-928; 1176701-929; 1176701-930; 1176701-931; 1176701-932; 1176701-933; 1176701-934; 1176701-935; 1176701-936; 1176701-937; 1176701-938; 1176701-939; 1176701-940; 1176701-941; 1176701-942; 1176701-943; 1176701-944; 1176701-945; 1176701-946; 1176701-947; 1176701-948; 1176701-949; 1176701-950; 1176701-951; 1176701-952; 1176701-953; 1176701-954; 1176701-955; 1176701-956; 1176701-957; 1176701-958; 1176701-959; 1176701-960; 1176701-961; 1176701-962; 1176701-963; 1176701-964; 1176701-965; 1176701-966; 1176701-967; 1176701-968; 1176701-969; 1176701-970; 1176701-971; 1176701-972; 1176701-973; 1176701-974; 1176701-975; 1176701-976; 1176701-977; 1176701-978; 1176701-979; 1176701-980; 1176701-981; 1176701-982; 1176701-983; 1176701-984; 1176701-985; 1176701-986; 1176701-987; 1176701-988; 1176701-989; 1176701-990; 1176701-991; 1176701-992; 1176701-993; 1176701-994; 1176701-995; 1176701-996; 1176702-; 1176801-; 1176810-; 1176811-; 1176812-; 1176813-; 1176814-; 117NT000-1; 117NT000-3; 117NT001-1; 117NT001-11; 117NT001-23; 117NT001-27; 117NT001-3; 117NT001-31; 117NT001-33; 117NT001-5; 117NT001-7; 117NT001-9; 117NT002-1; 1191-1; 1191-2; 1191-21; 1191-23; 1191-26; 1191-28; 1191-3; 1191-31; 1191-33; 1191-38; 1191-4; 1191-41; 1191-46; 1191510-; 1191-6; 1191-8; 11918001-; 11918002-; 1191801-1; 1191801-2; 1191802-; 1191803-; 1191804-; 1191807-; 1191808-1; 1191808-2; 1191809-; 1191810-; 1191811-; 1191812-1; 1191812-2; 1191813-; 1191814-; 1191815-; 1191816-1; 1191816-2; 1191817-; 1191818-; 1191819-; 1191820-; 1191821-; 1191822-; 1191823-; 1191824-; 1191825-; 1191826-; 1191827-; 1191828-; 1191829-; 1191830-; 1191831-; 1191832-; 1191833-; 1191834-; 1191835-; 1191836-; 1191837-; 1191838-; 1191839-; 1191840-; 1191841-; 1191843-; 1191844-; 1191845-; 1191846-; 1191850-; 1191851-; 1191852-; 1191856-; 1191857-; 1191858-; 1191859-; 1191860-; 1191861-; 1191862-; 1191863-; 1191864-; 1191865-; 1191866-; 1191867-; 1191868-; 1191869-; 1191870-; 1191872-; 1191873-; 1191874-; 1191875-; 1191876-; 1191877-; 1191878-; 1191879-; 1191880-; 1191881-; 1191882-; 1191883-; 1191884-; 1191888-; 1191889-; 1191890-; 1191891-; 1191893-; 1191895-; 1191896-; 1191897-; 1191898-; 1193-1; 1193-2; 120NT000; 120NT000-1; 120NT000-11; 120NT000-13; 120NT000-17; 120NT000-3; 120NT000-5; 120NT000-7; 120NT000-9; 1215-1; 1215-20; 1215-30; 1235-1-; 1235-2-; 1235-20-; 1235-3-; 1235305-5; 1235-4-; 1235-5-; 1235511-; 1235513-1; 1235512-; 1235512-4; 1235513-; 1235513-1; 1235513-2; 1235-5-14; 1235515-2; 1235517-1; 1235517-2; 1235519-1; 1235520-1; 1235-6-; 1235-7-; 1235-8-; 1235-9-; 1248-10; 1248111-; 1248121-; 1248122-; 1248-20; 1248-21; 1248323-2; 1248323-3; 1248327-; 1248328-; 1248408-1; 1248409-1; 1248423-1; 1248801-; 1248803-; 1248804-; 1248805-; 1248806-; 1248808-; 1248810-; 1248811-; 1248812-; 1248814-; 1248815-; 1248816-; 1248817-; 1248818-; 1248819-; 1248820-; 1248821-; 1248823-; 1248824-; 1248825-; 1248826-; 1248827-; 1248828-; 1248829-; 1248830-; 1248850-; 1248851-; 1248852-; 1248853-; 1248854-; 1248855-; 1248856-; 1248857-; 1248858-; 1248859-; 1248860-; 1248861-; 1248862-; 1248863-; 1248864-; 1248865-; 1248866-; 1248867-; 1248869-; 1248870-; 1248871-; 1248872-; 1248873-; 1248874-; 1248875-; 1248876-; 1248877-; 1248881-; 1248885-; 1248888-; 1248889-; 1248890-; 1248891-; 1248892-; 1248893-; 1248894-; 1248895-; 1249103-1; 1249112-1; 1249113-1; 1249113-2; 1249114-1; 1249115-1; 1281-1; 1284-1; 1284806-; 1284807-; 1284810-; 1284833-; 1285-1; 1285-2; 1285-3; 1285-4; 1285-5; 1285-6; 1291801-; 1291802-; 1291803-; 1291804-; 1291805-; 1291806-; 1291807-; 1291808-; 1291810-; 1291811-; 1291812-; 1291813-; 1291814-; 1291815-; 1291816-; 1291817-; 1291818-; 1291821-; 1291822-; 1291823-; 1291824-; 1291830-; 1291832-; 1291833-; 1291834-; 1291835-; 1291836-; 1291837-; 1291838-; 1291839-; 1291840-; 1291841-; 1291842-;

1291843-; 1291844-; 1291846-; 1291847-; 1291848-; 1291849-; 12918801-; 1292-1-; 1292-10-; 1292-11-; 1292-15-; 1292-16-; 1292-2-; 1292-3-; 1292-4-; 1292-5-; 1292501-; 1292506-; 1292507-1; 1292508-1; 1292-6-; 1292-7-; 1292-8-; 1292805-; 1292806-; 1292824-; 1292825-; 1292826-; 1292827-; 1292-9-; 1294-1-; 1294-2-; 1294-3-; 1294-4-; 1294-5-; 1294501-; 1294801-; 1294802-; 1294803-; 1294804-; 1294805-; 1294806-; 1294807-; 1294808-; 1294809-; 1294810-; 1295-1-; 1295-10-; 1295-11-; 1295-12-105-1; 1295-12-105-2; 1295-12-105-3; 1295-12-105-4; 1295-12-113-1; 1295-12-118-1; 1295-12-127-4; 1295-12-18-1; 1295-2-; 1295-3-; 1295-4-; 1295511-; 1295512-; 1295513-; 1295-8-; 1295825-; 1295826-; 1295827-; 1295828-; 1295-9-; 12998001-; 12998002-; 12998005-; 1299803-; 1299805-; 1299810-; 1299814-; 1299815-; 1299817-; 1299818-; 1299819-; 1299826-; 1299828-; 1299835-; 1299836-; 1299837-; 1299838-; 1299839-; 1299840-; 1299841-; 1299842-; 1299843-; 1299844-; 1299845-; 129985-; 1299851-; 1299852-; 1299854-; 1299855-; 1299856-; 1299857-; 1299860-; 1299861-; 1299862-; 1299863-; 1299864-; 129986-5; 1299870-; 1299871-; 1299872-; 1299873-; 1299874-; 1299877-; 1299878-; 1299879-; 1299880-; 1299881-; 1299883-; 1299884-; 1299885-; 1299888-; 1299889-; 1299893-; 1299894-; 1299895-; 1299896-; 1299897-; 1299898-; 1301-1; 1301-4-; 1301-6; 1301701-023; 1301701-059; 1301701-063; 1301701-067; 1301701-113; 1301701-114; 1301701-145; 1301701-172; 1301701-189; 1301701-222; 1301701-315; 1301701-316; 1301701-317; 1301701-318; 1301701-319; 1301701-320; 1301701-321; 1301701-322; 1301701-343; 1301701-344; 1301701-345; 1301701-373; 1301701-374; 1301701-375; 1301701-378; 1301701-386; 1301701-387; 1301701-388; 1301701-389; 1301701-390; 1301701-392; 1301701-397; 1301701-438; 1301701-450; 1301701-452; 1301701-457; 1301701-464; 1301701-465; 1301701-466; 1301701-467; 1301701-473; 1301701-474; 1301701-484; 1301701-496; 1301701-499; 1301701-501; 1301701-506; 1301701-507; 1301701-508; 1301701-521; 1301701-535; 1301701-558; 1301701-560; 1301701-561; 1301701-562; 1301701-563; 1301701-564; 1301701-565; 1301701-568; 1301701-569; 1301701-570; 1301701-571; 1301701-572; 1301701-600; 1301701-622; 1301701-623; 1301701-624; 1301701-625; 1301701-626; 1301701-627; 1301701-628; 1301701-629; 1301701-630; 1301701-631; 1301701-633; 1301701-661; 1301701-662; 1301701-663; 1301701-664; 1301701-674; 1301701-675; 1301701-738; 1301701-739; 1301701-740; 1301701-807; 1301701-808; 1301701-829; 1301701-830; 1301701-831; 1301701-832; 1301701-833; 1301701-873; 1301701-874; 1301701-875; 1301701-876; 1301701-877; 1301701-878; 1301701-879; 1301701-881; 1301701-891; 1301701-892; 1301701-893; 1301701-894; 1301701-895; 1301701-914; 1301701-915; 1301701-916; 1301701-922; 1301701-923; 1301701-924; 1301701-925; 1301701-943; 1301701-946; 1301701-947; 1301701-960; 1301701-963; 1301-76; 1301-8; 1301801-1; 1301801-2; 1301801-92; 1301802-; 1301803-; 1301806-; 1301807-; 1301808-; 1301809-; 1301810-; 1301811-; 1301815-; 1301816-; 1301818-; 1301819-; 1301820-; 1301821-; 1301822-; 1301823-; 1301824-; 1301825-; 1301826-; 1301827-; 1301828-; 1301830-; 1301831-; 1301832-; 1301833-; 1301834-; 1301835-; 1301836-; 1301837-; 1301838-; 1301839-; 1301840-; 1301841-; 1301845-; 1301846-; 1301847-; 1301848-; 1301849-; 1301850-; 1301851-; 1301-85-1; 1301852-; 1301-85-2; 1301853-; 1301-85-3; 1301854-; 1301-85-4; 1301855-; 1301-85-5; 1301856-; 1301857-; 1301858-; 1301859-; 1301860-; 1301861-; 1301862-; 1301863-; 1301864-; 1301866-; 1301867-; 1301870-; 1301871-; 1301872-; 1301873-; 1301874-; 1301876-; 1301878-; 1301879-; 1301880-; 1301881-; 1301882-; 1301883-; 1301884-; 1301885-; 1301886-; 1301887-; 1301888-; 1301889-; 1301890-; 1301891-; 1301892-; 1301893-; 1301894-; 1301895-; 1301896-; 1301-92-; 1301-93-; 1301-94-; 1301-95-; 1301-96-; 1303-10-; 1303-100-; 1303-101-; 1303-102; 1303-103; 1303-104; 1303-105; 1303-106-; 1303-107-; 1303-108-; 1303-109-; 1303-11-; 1303-110-; 1303-111-; 1303-112-; 1303-113-; 1303-114-; 1303-115-; 1303-116-; 1303-117-; 1303-119-; 1303-12; 1303-120-; 1303-121; 1303-122-; 1303-123-; 1303-124-; 1303-125-; 1303-126-; 1303-127-; 1303-128-; 1303-129-; 1303-13; 1303-130-; 1303-131-; 1303-132-; 1303-133-; 1303-134-; 1303-135-; 1303-136-; 1303-137-; 1303-138; 1303-139-; 1303-14-; 1303-140-; 1303-141-; 1303-142-; 1303-143-; 1303-144-; 1303-145-; 1303-146-; 1303-147-; 1303-148-; 1303-149-; 1303-15-; 1303-150-; 1303-151-; 1303-152-; 1303-153-; 1303-154-; 1303-155-; 1303-156-; 1303-157-; 1303-158-; 1303-159-; 1303-16-; 1303-160; 1303-161-; 1303-162-; 1303-163; 1303-164-; 1303-165-; 1303-166-; 1303-167-; 1303-168-; 1303-169-; 1303-17; 1303-170-; 1303-171-; 1303-172-; 1303-173-; 1303-174-; 1303-175-; 1303-176; 1303-177-; 1303-178-; 1303-179-; 1303-18; 1303-180-; 1303-181-; 1303-182; 1303-183-; 1303-184-; 1303-185-; 1303-186-; 1303-187; 1303-188; 1303-189; 1303-19; 1303-190; 1303-191; 1303-192-; 1303-193-; 1303-194-; 1303-195-; 1303-196-; 1303-197; 1303-198-; 1303-199; 1303-2-; 1303-20; 1303-200; 1303-201; 1303-202; 1303-203; 1303-204-; 1303-205; 1303-206; 1303-207; 1303-209-; 1303-21; 1303-210-; 1303-211-; 1303-212-; 1303-213-; 1303-214-; 1303-215-; 1303-216; 1303-217; 1303-218-; 1303-219-; 1303-22-; 1303-220-; 1303-221-; 1303-222-; 1303-223-; 1303-224-; 1303-225-; 1303-226-; 1303-227-; 1303-228-; 1303-229-; 1303-23-; 1303-230; 1303-231-; 1303-232-; 1303-233; 1303-234-; 1303-235-; 1303-236-; 1303-237-; 1303-238-; 1303-239-; 1303-24-; 1303-240-; 1303-241-; 1303-242-; 1303-243-; 1303-244-; 1303-245-; 1303-246-; 1303-247-; 1303-248-; 1303-249-; 1303-25; 1303-250-; 1303-251-; 1303-252-; 1303-253-; 1303-254-; 1303-255-; 1303-256-; 1303-257; 1303-258; 1303-259-; 1303-26; 1303-260-; 1303-261-; 1303-262-; 1303-263-; 1303-264; 1303-265-; 1303-266-; 1303-267-; 1303-268-; 1303-269; 1303-27-; 1303-270; 1303-271-; 1303-274-; 1303-276-; 1303-277-; 1303-278-; 1303-279-; 1303-28; 1303-280-; 1303-281-; 1303-282-; 1303-283-; 1303-284-; 1303-285-; 1303-286-; 1303-287-; 1303-288-; 1303-289-; 1303-29-; 1303-290-; 1303-291-; 1303-293-; 1303-294-; 1303-295; 1303-296-; 1303-297-; 1303-3-; 1303-30-; 1303-304; 1303-305-; 1303-306-; 1303-307-; 1303-308-; 1303-31-; 1303-315-; 1303-316; 1303-317; 1303-318-; 1303-319; 1303-32-; 1303-320-; 1303-321-; 1303-322; 1303-323-; 1303-324; 1303-325; 1303-326; 1303-327-; 1303-328-; 1303-329-; 1303-33-; 1303-330-; 1303-331-; 1303-332; 1303-333; 1303-334; 1303-336-; 1303-337-; 1303-338-; 1303-339-; 1303-34; 1303-340-; 1303-341-; 1303-342-; 1303-343-; 1303-344-; 1303-345-; 1303-346-; 1303-347-; 1303-348; 1303-349; 1303-35-; 1303-350; 1303-351; 1303-352-; 1303-353-; 1303-354-; 1303-355-; 1303-356-; 1303-357-; 1303-358-; 1303-359-; 1303-36-; 1303-37; 1303-38-; 1303-39-; 1303-4-; 1303-40-; 1303-41-; 1303-42-; 1303-43-; 1303-45-; 1303-46; 1303-47-005; 1303-47-018; 1303-47-045; 1303-47-059; 1303-47-061; 1303-47-064; 1303-47-071; 1303-47-096; 1303-47-112; 1303-47-113; 1303-47-120; 1303-47-121; 1303-47-122; 1303-47-124; 1303-47-125; 1303-47-126; 1303-47-128; 1303-47-138; 1303-47-139; 1303-47-140; 1303-47-141; 1303-47-142; 1303-47-143; 1303-47-144; 1303-47-145; 1303-47-146; 1303-47-147; 1303-47-148;

1303-47-149; 1303-47-150; 1303-47-151; 1303-47-152; 1303-47-153; 1303-47-154; 1303-47-155; 1303-47-156; 1303-47-157;
1303-47-158; 1303-47-159; 1303-47-160; 1303-47-161; 1303-47-162; 1303-47-163; 1303-47-164; 1303-47-165; 1303-47-166;
1303-47-167; 1303-47-168; 1303-47-169; 1303-47-170; 1303-47-171; 1303-47-172; 1303-47-173; 1303-47-174; 1303-47-175;
1303-47-176; 1303-47-177; 1303-47-178; 1303-47-179; 1303-47-180; 1303-47-181; 1303-47-182; 1303-47-184; 1303-47-185;
1303-47-188; 1303-47-189; 1303-47-190; 1303-47-191; 1303-47-192; 1303-47-193; 1303-47-194; 1303-47-197; 1303-47-198;
1303-47-199; 1303-47-200; 1303-47-201; 1303-47-202; 1303-47-203; 1303-47-217; 1303-47-218; 1303-47-219; 1303-47-220;
1303-47-221; 1303-47-222; 1303-47-223; 1303-47-224; 1303-47-226; 1303-47-227; 1303-47-230; 1303-47-231; 1303-47-232;
1303-47-233; 1303-47-234; 1303-47-235; 1303-47-239; 1303-47-240; 1303-47-241; 1303-47-242; 1303-47-243; 1303-47-244;
1303-47-245; 1303-47-246; 1303-47-247; 1303-47-249; 1303-47-250; 1303-47-251; 1303-47-252; 1303-47-253; 1303-47-254;
1303-47-257; 1303-47-261; 1303-47-262; 1303-47-263; 1303-47-264; 1303-47-269; 1303-47-270; 1303-47-279; 1303-47-280;
1303-47-281; 1303-47-282; 1303-47-288; 1303-47-289; 1303-47-317; 1303-47-323; 1303-47-324; 1303-47-325; 1303-47-326;
1303-47-327; 1303-47-328; 1303-47-330; 1303-47-331; 1303-47-332; 1303-47-333; 1303-47-334; 1303-47-335; 1303-47-336;
1303-47-337; 1303-47-338; 1303-47-339; 1303-47-340; 1303-47-346; 1303-47-347; 1303-47-348; 1303-47-349; 1303-47-350;
1303-47-351; 1303-47-352; 1303-47-353; 1303-47-354; 1303-47-355; 1303-47-356; 1303-47-357; 1303-47-358; 1303-47-359;
1303-47-360; 1303-47-361; 1303-47-362; 1303-47-363; 1303-47-364; 1303-47-365; 1303-47-366; 1303-47-367; 1303-47-368;
1303-47-369; 1303-47-370; 1303-47-371; 1303-47-372; 1303-47-376; 1303-47-377; 1303-47-379; 1303-47-380; 1303-47-381;
1303-47-382; 1303-47-383; 1303-47-384; 1303-47-385; 1303-47-387; 1303-47-393; 1303-47-394; 1303-47-395; 1303-47-396;
1303-47-397; 1303-47-398; 1303-47-399; 1303-47-400; 1303-47-401; 1303-47-402; 1303-47-403; 1303-47-404; 1303-47-405;
1303-47-406; 1303-47-407; 1303-47-408; 1303-47-409; 1303-47-410; 1303-47-411; 1303-47-412; 1303-47-413; 1303-47-414;
1303-47-415; 1303-47-416; 1303-47-417; 1303-47-418; 1303-47-419; 1303-47-420; 1303-47-421; 1303-47-422; 1303-47-423;
1303-47-424; 1303-47-425; 1303-47-426; 1303-47-427; 1303-47-431; 1303-47-432; 1303-47-433; 1303-47-434; 1303-47-435;
1303-47-436; 1303-47-437; 1303-47-438; 1303-47-439; 1303-47-440; 1303-47-441; 1303-47-442; 1303-47-443; 1303-47-444;
1303-47-445; 1303-47-446; 1303-47-447; 1303-47-448; 1303-47-449; 1303-47-450; 1303-47-451; 1303-47-452; 1303-47-453;
1303-47-454; 1303-47-456; 1303-47-457; 1303-47-458; 1303-47-459; 1303-47-460; 1303-47-461; 1303-47-462; 1303-47-463;
1303-47-468; 1303-47-469; 1303-47-470; 1303-47-471; 1303-47-472; 1303-47-473; 1303-47-474; 1303-47-475; 1303-47-476;
1303-47-477; 1303-47-478; 1303-47-479; 1303-47-480; 1303-47-481; 1303-47-482; 1303-47-483; 1303-47-484; 1303-47-485;
1303-47-486; 1303-47-487; 1303-47-488; 1303-47-489; 1303-47-490; 1303-47-491; 1303-47-492; 1303-47-493; 1303-47-494;
1303-47-495; 1303-47-496; 1303-47-497; 1303-47-498; 1303-47-502; 1303-47-503; 1303-47-504; 1303-47-505; 1303-47-506;
1303-47-507; 1303-47-508; 1303-47-510; 1303-47-511; 1303-47-512; 1303-47-515; 1303-47-516; 1303-47-517; 1303-47-518;
1303-47-519; 1303-47-521; 1303-47-522; 1303-47-523; 1303-47-526; 1303-47-527; 1303-47-528; 1303-47-529; 1303-47-530;
1303-47-532; 1303-47-533; 1303-47-534; 1303-47-535; 1303-47-536; 1303-47-537; 1303-47-539; 1303-47-540; 1303-47-541;
1303-47-542; 1303-47-543; 1303-47-544; 1303-47-545; 1303-47-546; 1303-47-547; 1303-47-548; 1303-47-549; 1303-47-550;
1303-47-551; 1303-47-552; 1303-47-553; 1303-47-554; 1303-47-555; 1303-47-556; 1303-47-557; 1303-47-559; 1303-47-564;
1303-47-565; 1303-47-567; 1303-47-573; 1303-47-574; 1303-47-575; 1303-47-576; 1303-47-580; 1303-47-581; 1303-47-582;
1303-47-583; 1303-47-584; 1303-47-585; 1303-47-586; 1303-47-587; 1303-47-588; 1303-47-589; 1303-47-590; 1303-47-591;
1303-47-592; 1303-47-593; 1303-47-594; 1303-47-595; 1303-47-596; 1303-47-597; 1303-47-598; 1303-47-599; 1303-47-601;
1303-47-602; 1303-47-603; 1303-47-604; 1303-47-605; 1303-47-606; 1303-47-607; 1303-47-608; 1303-47-609; 1303-47-610;
1303-47-611; 1303-47-612; 1303-47-613; 1303-47-614; 1303-47-615; 1303-47-616; 1303-47-617; 1303-47-618; 1303-47-619;
1303-47-620; 1303-47-621; 1303-47-631; 1303-47-632; 1303-47-635; 1303-47-636; 1303-47-637; 1303-47-638; 1303-47-639;
1303-47-640; 1303-47-641; 1303-47-642; 1303-47-643; 1303-47-644; 1303-47-645; 1303-47-646; 1303-47-647; 1303-47-648;
1303-47-649; 1303-47-650; 1303-47-651; 1303-47-652; 1303-47-653; 1303-47-656; 1303-47-657; 1303-47-658; 1303-47-659;
1303-47-660; 1303-47-665; 1303-47-666; 1303-47-667; 1303-47-668; 1303-47-669; 1303-47-670; 1303-47-671; 1303-47-672;
1303-47-673; 1303-47-676; 1303-47-677; 1303-47-678; 1303-47-679; 1303-47-680; 1303-47-681; 1303-47-687; 1303-47-688;
1303-47-689; 1303-47-690; 1303-47-691; 1303-47-692; 1303-47-693; 1303-47-694; 1303-47-695; 1303-47-696; 1303-47-697;
1303-47-698; 1303-47-699; 1303-47-700; 1303-47-701; 1303-47-702; 1303-47-703; 1303-47-704; 1303-47-705; 1303-47-706;
1303-47-707; 1303-47-708; 1303-47-709; 1303-47-710; 1303-47-712; 1303-47-713; 1303-47-714; 1303-47-715; 1303-47-716;
1303-47-717; 1303-47-718; 1303-47-719; 1303-47-720; 1303-47-721; 1303-47-722; 1303-47-723; 1303-47-724; 1303-47-725;
1303-47-726; 1303-47-727; 1303-47-728; 1303-47-729; 1303-47-730; 1303-47-731; 1303-47-732; 1303-47-733; 1303-47-734;
1303-47-740; 1303-47-741; 1303-47-742; 1303-47-743; 1303-47-744; 1303-47-745; 1303-47-746; 1303-47-753; 1303-47-754;
1303-47-755; 1303-47-756; 1303-47-757; 1303-47-758; 1303-47-759; 1303-47-760; 1303-47-761; 1303-47-762; 1303-47-763;
1303-47-764; 1303-47-765; 1303-47-766; 1303-47-767; 1303-47-768; 1303-47-769; 1303-47-770; 1303-47-771; 1303-47-772;
1303-47-773; 1303-47-774; 1303-47-775; 1303-47-776; 1303-47-777; 1303-47-778; 1303-47-779; 1303-47-780; 1303-47-781;
1303-47-782; 1303-47-783; 1303-47-784; 1303-47-785; 1303-47-786; 1303-47-787; 1303-47-788; 1303-47-789; 1303-47-790;
1303-47-791; 1303-47-792; 1303-47-793; 1303-47-794; 1303-47-795; 1303-47-796; 1303-47-797; 1303-47-798; 1303-47-799;
1303-47-800; 1303-47-801; 1303-47-802; 1303-47-803; 1303-47-804; 1303-47-805; 1303-47-806; 1303-47-807; 1303-47-815;
1303-47-816; 1303-47-817; 1303-47-818; 1303-47-819; 1303-47-820; 1303-47-821; 1303-47-822; 1303-47-823; 1303-47-824;
1303-47-833; 1303-47-834; 1303-47-835; 1303-47-836; 1303-47-837; 1303-47-838; 1303-47-839; 1303-47-840; 1303-47-841;
1303-47-842; 1303-47-843; 1303-47-853; 1303-47-854; 1303-47-855; 1303-47-859; 1303-47-866; 1303-47-867; 1303-47-868;
1303-47-869; 1303-47-870; 1303-47-871; 1303-47-872; 1303-47-880; 1303-47-881; 1303-47-882; 1303-47-883; 1303-47-884;
1303-47-885; 1303-47-886; 1303-47-894; 1303-47-897; 1303-47-898; 1303-47-899; 1303-47-900; 1303-47-901;
1303-47-902; 1303-47-903; 1303-47-904; 1303-47-905; 1303-47-913; 1303-47-917; 1303-47-921; 1303-47-938; 1303-47-943;
1303-47-948; 1303-47-949; 1303-47-950; 1303-47-951; 1303-47-952; 1303-47-953; 1303-47-954; 1303-47-955; 1303-47-956;

1303-47-957; 1303-47-958; 1303-47-964; 1303-47-968; 1303-47-969; 1303-47-970; 1303-47-971; 1303-47-973; 1303-47-979; 1303-47-980; 1303-47-996; 1303-49; 1303-5-; 1303-50; 1303-51; 1303-52; 1303-53; 1303-54; 1303-55; 1303-56; 1303-57-; 1303-58; 1303-59; 1303-6-; 1303-60; 1303-61; 1303-62; 1303-63-; 1303-64-; 1303-65-; 1303-66; 1303-67; 1303-68; 1303-69; 1303-7-; 1303-70; 1303-71; 1303-72; 1303-73-; 1303-74-; 1303-75-; 1303-76; 1303-77; 1303-78-; 1303-79-; 1303-8-; 1303-80-; 1303-81; 1303-82-; 1303-83; 1303-84-; 1303-85-; 1303-86; 1303-87; 1303-88; 1303-89-; 1303-9-; 1303-90-; 1303-91-; 1303-92-; 1303-93-; 1303-94; 1303-95; 1303-96-; 1303-97-; 1303-98-; 1303-99-; 1315-10; 1315-13; 1315-15; 1315-20; 1315-3; 1315-32; 1315801-; 1315812-; 1315813-; 1315814-; 131582-; 1315825-; 1315826-; 131583-; 1315830-; 1315831-; 1315832-; 1315833-; 1315834-; 1315835-; 1315836-; 1315837-; 1315838-; 1315839-; 131584-; 1315840-; 1315841-; 1315842-; 1315843-; 1315844-; 1315845-; 1315846-; 1315848-; 1315849-; 1315850-; 1315851-; 1315852-; 1315853-; 1315855-; 1315856-; 1315857-; 1315858-; 1315859-; 131586-; 1315860-; 1315861-; 1315862-; 1315863-; 1315864-; 1315865-; 1315866-; 1315867-; 1315868-; 1315871-; 1315872-; 1315873-; 1315874-; 1315875-; 1315876-; 1315877-; 1315878-; 1315880-; 1315881-; 1315882-; 1315884-; 1315885-; 1315886-; 1315887-; 1315888-; 1315889-; 1315890-; 1315891-; 1315892-; 1315893-; 1315894-; 1360-1; 1364-1; 1364-10; 1366-1; 1366-103-; 1366-104; 1366-108-; 1366-110-; 1366-111; 1366-112-; 1366-114-; 1366-125-; 1366-135; 1366-145; 1366-146; 1366-152; 1366-154-; 1366-155-; 1366-164; 1366-165; 1366-167; 1366-168-; 1366-26; 1366-28; 1366-31; 1366-33; 1366-36; 1366-38; 1366-46; 1366-67; 1366701-1; 1366701-126; 1366701-397; 1366701-59; 1366-92-; 1366-94-; 1366-95-; 1390-1; 1501-030709; 1501-0715; 1501-101-; 1501-102-; 1501-106-; 1501-107-; 1501-11-; 1501-110-; 1501-111-; 1501-115-; 1501-116-; 1501-118-; 1501-119-; 1501-12-; 1501-120-; 1501-125; 1501-126; 1501-127; 1501-128; 1501-13-; 1501-135-; 1501-136; 1501-139; 1501-141; 1501-145; 1501-148; 1501-15-; 1501-150-; 1501-16-; 1501-196-; 1501-200; 1501-201-; 1501-202-; 1501-203; 1501-204-; 1501-205-; 1501-206-; 1501-207-; 1501-208; 1501-209; 1501-21-; 1501-210-; 1501-211-; 1501-212; 1501-213-; 1501-214-; 1501-215; 1501-216-; 1501-218-; 1501-22-; 1501-25; 1501-26-; 1501-27; 1501-28; 1501-305-; 1501-34; 1501-35; 1501-37; 1501-41; 1501-46; 1501-56; 1501-7-; 1501-92-; 1501-94-1; 1501-94-2; 1501-95; 1503-101-; 1503-103-; 1503-104; 1503-110-; 1503-111-; 1503-112-; 1503-114-; 1503-115-; 1503-118-; 1503-119-; 1503-120-; 1503-123; 1503-125; 1503-126-; 1503-13; 1503-130-; 1503-131-; 1503-132-; 1503-133-; 1503-134-; 1503-140-; 1503-141-; 1503-142-; 1503-171-; 1503-193-; 1503-195-; 1503-2; 1503-201; 1503-202; 1503-211; 1503-212; 1503-221; 1503-222; 1503-223-; 1503-224-; 1503-225-; 1503-226-; 1503-227-; 1503-228-; 1503-229-; 1503-230-; 1503-231-; 1503-232-; 1503-233-; 1503-3-; 1503-307-; 1503-46; 1503-47-059; 1503-47-125; 1503-47-192; 1503-47-225; 1503-47-288; 1503-47-289; 1503-47-333; 1503-47-507; 1503-47-765; 1503-47-766; 1503-47-767; 1503-47-768; 1503-47-769; 1503-47-770; 1503-47-809; 1503-47-810; 1503-47-811; 1503-47-812; 1503-47-813; 1503-47-814; 1503-47-825; 1503-47-826; 1503-47-827; 1503-47-828; 1503-47-846; 1503-47-847; 1503-47-848; 1503-47-849; 1503-47-850; 1503-47-851; 1503-47-852; 1503-47-860; 1503-47-861; 1503-47-862; 1503-47-863; 1503-47-864; 1503-47-865; 1503-47-887; 1503-47-888; 1503-47-889; 1503-47-890; 1503-76; 1503-92-; 1503-94-1; 1503-94-2; 1503-94-3; 1503-95-; 1505-1; 16-50019-006; 180725-; 180729-; 180811-; 180894-101; 180894-102; 180949-; 180950-; 180951-; 180952-; 181114-; 181198-; 181219-; 181220-; 181590-; 181591-; 181609-; 181610-101; 181613-; 181614-; 181615-; 181621-101; 181621-201; 181621-301; 181621-303; 181621-401; 181621-403; 181621-405; 181621-407; 181621-409; 181621-411; 181621-413; 181621-415; 181621-417; 181621-419; 181621-421; 181621-423; 181621-425; 181621-427; 181621-429; 181621-431; 181621-433; 181621-435; 181621-437; 181621-439; 181621-441; 181621-443; 181621-445; 181621-447; 181621-449; 181621-451; 181621-453; 181621-455; 181621-457; 181621-459; 181621-461; 181621-463; 181621-465; 181621-467; 181621-469; 181621-471; 181621-473; 181621-475; 181621-477; 181621-479; 181621-481; 181621-483; 181621-485; 181621-487; 181621-489; 181621-491; 181621-493; 181621-495; 181621-497; 181621-499; 181621-501; 181621-503; 181621-505; 181621-507; 181621-509; 181621-511; 181621-513; 181621-515; 181621-517; 181621-519; 181621-521; 181621-523; 181621-525; 181621-527; 181621-529; 181621-531; 181621-533; 181621-535; 181621-537; 181621-539; 181621-541; 181621-543; 181621-545; 181621-547; 181622-101; 181622-201; 181622-301; 181704-; 181706-; 181718-; 181782-; 181802-; 181877-; 181911-101; 181911-201; 181911-301; 181977-; 182069-; 182070-; 182184-; 182387-; 182728-; 182857-; 182874-; 182876-; 182877-; 182878-; 182879-; 182970-; 183117-; 183166-; 183168-; 183169-; 183170-; 183193-; 183194-; 183254-; 183328-; 183331-; 183594-; 183595-; 183596-; 183597-; 183598-; 183601-; 183778-; 183779-; 183782-; 183887-; 183972-; 184006-; 184053-; 184054-; 184056-; 184057-; 184058-; 184158-; 184255-; 184329-; 184330-; 184331-; 184332-; 184333-; 184334-; 184335-; 184418-; 184419-; 184470-; 184484-; 184488-; 184489-; 184490-; 184572-; 184586-; 184587-; 184653-; 186530-; 18N00004-1; 18N00004-13; 18N00004-19; 18N00004-21; 1NS002-008J050G; 20-00003-005; 20-00003-036; 20-00036-005; 20-00066-002; 20-00073-004; 20-00077-001; 20-00077-002; 20-00077-003; 20-00077-004; 20-00077-005; 20-00081-007; 20-00081-009; 20-00125-017; 20-00137-002; 20-00145-001; 20-00147-001; 21-00024-008; 21-00025-003; 21-00080-041; 21-00080-042; 21-00107-005; 21-00107-006; 21-00107-012; 21-00108-001; 21-00108-002; 21-00108-003; 21-00108-004; 21-00108-005; 21-00108-006; 21-00108-007; 21-00108-008; 21-00108-010; 23-00070-016; 23-00070-027; 23-00074-030; 23-00074-031; 23-00077-002; 23-00078-003; 23-00078-010; 23-00078-012; 23-00078-024; 23-00090-016; 23-00090-018; 24-00100-006; 24-00088-016; 24-00095-027; 24-00110-002; 24-00110-003; 24-00110-004; 25-00043-003; 30-00041-001; 30-00041-002; 30-00041-003; 311122-51; 311158-226; 319007-11; 32-00029-002; 32-00029-024; 39-00018-011; 40N00030-1; 40N00030-11; 40N00030-13; 40N00030-15; 40N00030-17; 40N00030-19; 40N00030-3; 40N00030-5; 40N00030-7; 40N00030-9; 40N00055-1; 40N00056-1; 40N00056-3; 40N00056-5; 41-00121-007; 41-00121-009; 41-00264-006; 41-00281-018; 41-00300-018; 41-00322-016; 41-00371-003; 41-00376-002; 41-00376-003; 41-00385-004; 41-00392-001; 41-00406-003; 45-00407-005; 45-00407-006; 45-00408-004; 45-00408-006; 45-00440-002; 46-00004-005; 46-00009-011; 46-00009-012; 46-00062-002; 46-00062-003; 46-00062-004; 46-00062-005; 46-00062-006; 46-00062-007; 46-00062-008; 46-00062-009; 46-00062-010; 46-00062-011; 46-00062-012; 46-00062-013; 46-00062-015; 46-00062-016; 46-00062-019; 46-00065-001; 46-00065-006; 46-00065-007; 48-00400-001; 48-00500-001; 49-00161-013; 49-00161-014; 49-00161-015; 49-00161-017; 49-00161-019; 49-00161-021; 49-00161-022; 49-00197-007; 49-00202-006; 49-00202-009; 49-00202-010; 49-

00205-001; 49-00228-002; 51-00323-004; 51-50016-002; 59-00027-001; 72-00364-006; 81000-1; 90-00068-028; 90-00109-007; 90-00109-035; 90-00120-001; 90-00123-025; AF1504-605; AN960C10L; AN960D10L; AN960JD10L; AN960JD4L; BACN10YC3-10; CDWG-IS61233; D38999/20MD5SN; D38999/26MD35PN; D38999/26MD5SN; EAD22-0202-00; EAD22-0203-00; EAD22-0204-00; EAD22-0205-00; EAD22-0206-00; EAD22-0207-00; IS60293-01; IS60293-04; IS60293-07; IS60293-10; IS60293-16; IS60341-01; IS60341-04; IS60341-07; IS60341-12; IS60468-04; IS60468-08; IS60631-03; IS60631-06; IS60631-09; IS60631-12; IS60631-15; IS60685-04; IS60685-05; IS61076-09; IS61233-104; IS61233-105; IS61233-110; IS61233-111; IS61233-115; IW70007-03; IW70007-05; IW70007-08; IW70033; IW70033-06; KT1067103-2; KT1067104-2; KT1067-2; KT1067844; KT1067845; KT1067847; KT1089103-22; KT1089-22; KT1089-9-4; KT1089-9-5; KT1091-10-1; KT1091101-8-1; KT1091101-8-2A; KT1091101-8-2B; KT1091101-8-2C; KT1091101-8-2D; KT1091101-9-1; KT1091101-9-2A; KT1091101-9-2B; KT1091101-9-2C; KT1091101-9-2D; KT1091-10-2; KT1091102-8-1; KT1091102-8-2A; KT1091102-8-2B; KT1091102-8-3; KT1091102-9-1; KT1091102-9-2A; KT1091102-9-2B; KT1091102-9-3; KT1091-10-3; KT1091-10-4; KT1091-10-5; KT1091-10-6; KT1091-11-1; KT1091-11-2; KT1091-11-3; KT1091-11-4; KT1091-11-5; KT1091-12-1; KT1091-12-2; KT1091-14-1; KT1091-14-2; KT1091-20-1; KT1091-20-2; KT1091-20-3; KT1091-4-21; KT1091-4-22; KT1091-4-30; KT1091-4-31; KT1091-5-1; KT1091-5-2; KT1091-6-1; KT1092-1-5; KT1092-1-6; KT1092-20-02; KT1092-20-03; KT1092-20-1; KT1092-20-2; KT1092-20-3; KT1092-4-21; KT1092-4-22; KT1092-4-5; KT1092-4-7; KT1092-4-8; KT1092-4-9; KT1092-5-1; KT1092-6-1; KT1092-6-2; KT1092-6-3; KT1121-1; KT1121-2; KT1121-3; KT1121-4; KT1121-5; KT1121-6; KT1122-1; KT1122-10-1; KT1122-10-2; KT1122-10-4; KT1122-1-1; KT1122-1-2; KT1122-1-3; KT1122-2; KT1122-22; KT1122-3; KT1122-4; KT1133-1; KT1133-2; KT1133-3; KT1133-4; KT1139-1; KT1140-10-1; KT1140-10-11; KT1140-10-20; KT1140-10-21; KT1140-19-1; KT1140-20-1; KT1140-20-2; KT1140-20-3; KT1140-20-4; KT1140-21-1; KT1140-21-2; KT1140-21-3; KT1140-21-4; KT1140-5-1; KT1140-5-11; KT1140-5-12; KT1140-5-13; KT1140-5-14; KT1140-5-15; KT1140-5-16; KT1140-5-20; KT1140-5-21; KT1140-5-22; KT1140-6-1; KT1140-6-13; KT1140-6-14; KT1140-6-16; KT1140-6-2; KT1140-7-1; KT1140-7-11; KT1140-7-12; KT1140-7-13; KT1140-7-14; KT1140-7-15; KT1140-9-1; KT1140-9-11; KT1140-9-12; KT1140-140-9-2; KT1140-9-20; KT1140-9-3; KT1141-1; KT1144-1; KT1150-1; KT1150-20; KT1150-30; KT1150-4; KT1150-50; KT1150-60; KT1150-7; KT1151-100; KT1151-101; KT1153-1; KT1153-10; KT1153-2; KT1153-20; KT1153-3; KT1153-30; KT1153-40; KT1153-50; KT1154-1; KT1154-30; KT1154-4; KT1154-50; KT1154-60; KT1154-70; KT1155-1; KT1155-2; KT1155-3; KT1155-30; KT1155-31; KT1155-4; KT1155-5; KT1155-50; KT1155-6; KT1155-60; KT1156-1; KT1156-10; KT1156-100; KT1156-130; KT1156-131; KT1156-140; KT1156-141; KT1156-150; KT1156-3; KT1156-30; KT1156-4; KT1156-50; KT1156-60; KT1156-70; KT1170808; KT1170808-24; KT1170809; KT1170809-99; KT1170810; KT1170810-99; KT1170811; KT1170811-138; KT1170811-157; KT1170811-28; KT1175-1; KT1175-2; KT1175-3; KT1175-4; KT1175-744KIT1RETRO; KT1175-744KIT2RETRO; KT1175-744KIT3RETRO; KT1175-744KIT4RETRO; KT1175-KIT1LY777RETRO; KT1175-KIT2LY777RETRO; KT1175-KIT3LY777RETRO; KT1175-KIT4LY777RETRO; KT1175-LY767RETRO-EAK; KT1177-1; KT1177-1; KT1190-1; KT1190-2; KT1191-10-1; KT1191-10-2; KT1191-10-3; KT1191-10-4; KT1191-10-5; KT1191330-1; KT1191800-1; KT1191-815-1; KT1191-815-2; KT1191-815-3; KT1191-841; KT1191-9-1; KT1191-9-2; KT1191-9-3; KT1191-9-4; KT1191-9-5; KT1191-9-6; KT1191-9-7; KT1191-9-8; KT1194-1; KT1215-1; KT1215-2; KT1215-3; KT1215-3-1; KT1235-3; KT1235305-2; KT1235305-3; KT1235305-4; KT1235305-5; KT1247-1; KT1249-1; KT1249-1-11; KT1249-1-21; KT1249-1-31; KT1249-1-41; KT1249-2; KT1249-3; KT1249-3-11; KT1249-3-21; KT1249-3-31; KT1249-3-41; KT1249-3-51; KT1250-1; KT1260-10; KT1260-11; KT1260-1-1; KT1260-12; KT1260-1-2; KT1260-13; KT1260-1-3; KT1260-14; KT1260-16; KT1260-20; KT1260-21; KT1260-2-1; KT1260-2-2; KT1260-2-3; KT1260-3-2; KT1260-3-3; KT1260-4-1; KT1260-4-2; KT1260-4-3; KT1260-5; KT1280-1; KT1280-11; KT1280-2; KT1280-3; KT1280-4; KT1280-5; KT1280-6; KT1280-7; KT1290-1-1; KT1290-2-1; KT1290-2-1-1; KT1290-3-1; KT1290-3-1-1; KT1290-3-2; KT1290-3-2-1; KT1290-4-1; KT1290-4-1-1; KT1290-5-1; KT1290-6-1; KT1290-6-1-1; KT1290-7-1; KT1290-8-1; KT1290-8-1-1; KT1291-10-1; KT1291-10-10; KT1291-10-2; KT1291-1-1; KT1291-1-10; KT1291-1-2; KT1291-2-1; KT1291-2-10; KT1291-2-2; KT1291-2-3; KT1291-3-1; KT1291-3-10; KT1291-3-2; KT1291-4-1; KT1291-4-10; KT1291-4-2; KT1291-4-20; KT1291-4-3; KT1291-5-1; KT1291-5-10; KT1291-5-2; KT1291-5-20; KT1291-5-3; KT1291-6-1; KT1291-6-10; KT1291-6-2; KT1291-6-20; KT1291-7-1; KT1291-7-10; KT1291-7-2; KT1291-7-20; KT1291-8-1; KT1291-8-10; KT1291-8-2; KT1291-8-20; KT1291-9-1; KT1291-9-10; KT1291-9-2; KT1292501; KT1292501-1; KT1292506-1-10; KT1292506-1-11; KT1292506-1-12; KT1292506-1-13; KT1292506-1-14; KT1292506-1-15; KT1292506-1-16; KT1292506-1-17; KT1292506-1-18; KT1292506-1-19; KT1292506-1-2; KT1292506-1-3; KT1292506-1-4; KT1292506-1-5; KT1292506-1-6; KT1292506-1-7; KT1292506-1-8; KT1292506-1-9; KT1294-2-1; KT1294-2-2; KT1295-1; KT1295305-1; KT1295513; KT1295519; KT1295-8; KT1296-1-1; KT1296-1-2; KT1296-1-3; KT1296-2; KT1296-3; KT1296-4; KT1299-1; KT1299-2; KT1299-3; KT1299-4; KT1299-5; KT1299-6; KT1299-7; KT1300-1-1; KT1300-1-2; KT1300-1-3; KT1300-1-4; KT1300-1-5; KT1300-2-1; KT1300-2-2; KT1300-2-3; KT1300-2-30; KT1300-2-31; KT1300-2-4; KT1300-2-41; KT1300-2-42; KT1300-2-5; KT1300-3-1; KT1300-3-10; KT1300-3-3; KT1300-3-30; KT1300-3-31; KT1300-3-4; KT1300-3-5; KT1300-4-1; KT1300-4-2; KT1300-4-3; KT1300-4-4; KT1300-4-5; KT1302-1-1; KT1302-1-2; KT1302-1-3; KT1302-2-1; KT1303-12-1; KT1303-166-1; KT1303-166-2; KT1303-61; KT1310-1-1; KT1310-1-2; KT1310-1-3; KT1310-2-1; KT1310-2-2; KT1310-2-3; KT1311-1; KT1311-3; KT1311-4; KT1311-5; KT1315501-1; KT1319-1-1; KT1319-1-2; KT1319-1-3; KT1319-2-1; KT1319-2-2; KT1319-2-3; KT1319-3-1; KT1319-3-2; KT1319-3-3; KT1319-4-1; KT1319-4-2; KT1319-4-3; KT1319-5-1; KT1319-5-2; KT1319-6-1; KT1319-6-2; KT1319-6-3; KT1319-6-4; KT1319-6-5; KT1325-21-1; KT1327501; KT1327531; KT1518-1; KT1518-10; KT1518-11; KT1518-2; KT1518-3; KT1518-4; KT1518-5; KT1518-6; KT1518-7; KT1518-8; KT1518-9; KT1527301-1; M22759/34-22-0; M83723/60-214AN; M85528/2-12-A; MS20426AD3-4; MS20470AD4-6; MS20470AD5-7; MS20470D6-11; MS20470D6-7; MS20470D6-9; MS20470D8-12; MS21042L04; MS21042L08; MS21042L3; MS21059L3; MS24693-C27; MS3367-4-9; MS3367-7-2; MS3367-7-5; MS3367-7-6; MS3367-7-9; MS3476L12-10SW; MS35338-43; MS35650-305T;

MS51957-17; NAS1149D0316H; NAS1149D0332J; NAS1149D0332K; NAS1149DN432K; NAS1149DN816H; NAS1149DN832J; NAS1801-04-6; NAS1801-08-7; NAS1801-3-10; NAS1801-3-6; NAS1801-3-7; NAS1801-3-9; NAS1836-3-11; NAS514P1032-7P; NAS602-8P; NAS623-2-2; RD-FA3621-01; RD-FA3622-01; RD-FA3622-02; RD-FA3622-03; RD-FA3632-01; RD-FA3652-01; RD-KM6097-; RD-KM6100-; RD-KM6101-; RD-KM6188-; RD-KM6325-; RD-KM6326-

* * *

1
2
3
4
5
6
7                UNITED STATES DISTRICT COURT
8            CENTRAL DISTRICT OF CALIFORNIA

9  In the Matter of the Application of   )
10 LUFTHANSA TECHNIK, Petitioner, for )
   an Order Pursuant to 28 U.S.C. § 1782 to )
11 Take Discovery, Pursuant to the Federal )  DECLARATION OF GERD JAEKEL
   Rules of Civil Procedure, of Respondent )
12 Thales Avionics Corp. for Use in Foreign )
   Proceedings.               )
13                             )
14                             )
15 _____ )

16       1.    My name is Gerd Jaekel and I am a partner at Jones Day and am

17 registered and in good standing as an attorney at law with the Munich Bar in

18 Germany. I am principal counsel for Lufthansa Technik AG ("Lufthansa" or

19 "LHT") in the patent litigation proceedings in Germany against Astronics

20 Advanced Electronics Systems ("AES") and am fully informed about the status of

21 the other parallel proceedings in Europe, notably in the UK and France. Those

22 proceedings are ongoing. I make this declaration in support of Lufthansa's

23 Application for Discovery Pursuant to 28 U.S.C. § 1782 against Thales ("2023

24 Subpoena"). Unless otherwise stated, I have personal knowledge of all the facts

25 stated herein and if called as a witness would testify consistent with these facts. To

26

DECLARATION OF GERD JAEKEL - 1

the extent relevant, I relied on the definitions from Lufthansa's proposed 2023 Subpoena.

2.     Lufthansa has obtained final and legally binding judgments on the infringement of the German part of the European Patent No. EP 881 145 B1 (the "German Patent") as well as the UK part of the same European Patent. On this basis, Lufthansa is currently pursuing its damages as well as infringement based on indirect shipments, contributory infringement and joint actions with IFE-vendors against AES in Germany. In parallel, Lufthansa is currently enforcing judgments of the Mannheim District Court against AES.

3.     As a consequence of that enforcement, AES recently forwarded a letter from Thales dated June 1, 2022 (the "June Letter") to Lufthansa. The June Letter contained, inter alia, the information that Thales did not only sell AES Components as such, but also sold Thales Components that incorporate AES Components to form infringing systems ("Thales/AES Infringing Systems").

4.     Before that letter, Lufthansa was only aware that Thales' IFE-Systems were powered by the infringing AES systems, but was unaware of the incorporation of Thales Components as part of the infringing systems. Lufthansa is therefore now seeking evidence about these Thales Components and their functional incorporation into the infringing systems, as well as Thales' installations of such Thales Components in Germany and Thales' joint efforts with AES regarding the installation of Thales Components within the infringing systems.

5.     Lufthansa filed a prior subpoena directed to Thales in 2019 ("2019 Subpoena" – Case 8:19-mc-00016-UA-KES). The 2019 Subpoena targeted parts "*that were offered, imported, owned, sold or brought into circulation by AES,*" *i.e.* only AES Components. In contrast, the 2023 Subpoena concerns only the Thales Components that are incorporated with AES Components as part of an infringing

system by Thales regarding Germany. Lufthansa is not seeking information that was subject to the 2019 Subpoena or information that Thales provided in its June Letter:

i.   **Request 1 – Information on Shipments of Thales Components to Germany**. Lufthansa is seeking information about Thales' shipments of Thales Components to Germany. As discussed below, Thales Components are subject to Lufthansa's damages claims in Germany and Lufthansa is dependent on evidence about such shipments to Germany to substantiate its claims in the German proceedings. AES Components,  Thales' IFE systems, and parts thereof are expressly excluded from the definition of Thales Components and not subject to the subpoena. In an effort to ease Thales' burden, Lufthansa also noted that Thales may choose to provide electronically prepared Excel spreadsheets in response to Request 1. The relevant sales information should be readily available within Thales' sales system: the categories of the information listed within Request 1 are contained in the spreadsheets Thales previously produced under the 2019 Subpoena (for different parts) and are therefore available to Thales. Based on my experience with such cases, extracting sales data from an electronic database is not difficult and should take only a few hours.

ii.  **Request 2 – Information on part numbers for Thales Components**. Request 2 can also be satisfied by providing electronically prepared Excel spreadsheets. Request 2 is also limited to Thales Components and targets the part numbers and part descriptions of the Thales Components, as well as alternative part numbers for those Thales Components. Based on Lufthansa's

DECLARATION OF GERD JAEKEL - 3

understanding, there may be multiple part numbers for the same part, *i.e.* alternative part numbers. Such alternative part numbers are typically a result of a different numbering system that either the supplier of such parts, the customer, or Thales uses. Therefore, the particular transaction or recipient of the parts may dictate which part numbers are, in fact, used. In order to identify each part accurately, Lufthansa therefore requires knowledge about the alternative part numbers as well. Based on Thales' previous productions, Lufthansa understands that such alternative part numbers are also electronically available or listed on so-called cross reference lists. Providing this information would therefore not be burdensome for Thales.

iii.   **Request 3 – Information on purchases of Thales Components.** Request 3 concerns information on Thales purchases of Thales Components that it shipped to Germany, which is necessary to substantiate and determine Lufthansa's damages. That information should also be readily available in Thales' sales systems, as Thales already provided similar information for the AES Components. Preparing such information should therefore not take more than a few hours and thus is not burdensome. As before, Thales may provide electronically prepared Excel spreadsheets instead of documents.

iv.   **Request 4 – Information on Incorporation of Thales Components within the Infringing Systems.** Request 4 concerns information on how the Thales Components shipped to Germany can be Incorporated with AES Components in an infringing system. Based on Thales' June Letter, a Thales Assembly is any assembly or parts thereof sold, offered for sale, imported, owned, or brought into circulation by

DECLARATION OF GERD JAEKEL - 4

Thales until May 21, 2018, providing an alternating current (A/C) supply with 110V or more that incorporates one or more AES Components (referred to herein and in the subpoena as a "Thales/AES Infringing Assembly"). This information is crucial in determining the technical and functional Incorporation of the Thales Components with AES Components within the Thales/AES Infringing Assembly and therefore is critical for determining the infringement and Lufthansa's damages claims. This information should also be readily available for Thales. Thales has to provide its customers as well as its seat vendors and aircraft manufactures the necessary information on how to Incorporate the components supplied by Thales. Providing such information should therefore not be burdensome.

v. **Request 5 – Information on the Incorporation of Thales Components in Thales/AES Infringing Assemblies in Germany.**

Request 5 concerns information on how the Thales Components were actually incorporated into the Thales/AES Infringing Assemblies in Germany. Such information is required for substantiating Lufthansa's damages claims, and because damages for the infringement of Lufthansa's German Patent depend on, in part, the sales of Incorporated Thales Components. Again, such information should be readily available. As explained in more detail below, Thales makes detailed plans concerning the Incorporation of its supplied components with its customers, seat vendors and aircraft manufactures. Each relevant project can be readily identified and respective documentation can be provided without substantial burden.

DECLARATION OF GERD JAEKEL - 5

vi.  **Request 6 – Information on AES's and Thales' joint efforts to Incorporate the Thales Components as part of the Thales/AES Infringing Assembly in Germany.** Request 6 concerns Thales' and AES's joint efforts leading to the infringement of Lufthansa's German Patent. Thales participates in meetings with its customers, seat vendors and aircraft manufactures to plan the installation and Incorporation of the components supplied by Thales in Thales/AES Infringing Assemblies. Depending on the particular project, AES also participates in such meetings, *e.g.* if AES supplies a part of the AES Components directly, or if there are technical issues concerning the Thales/AES Infringing Assemblies. Furthermore, Thales and AES both maintain linefit support at Airbus' facility in Hamburg to directly assist their customers, seat vendors, and aircraft manufacturers if there are technical difficulties. Any such joint actions would lead to liability in Germany for both AES and Thales. Obtaining information about such joint actions is necessary to substantiate Lufthansa's damages claims. This information can be expected to be readily available from Thales.

6.  By way of background, I describe the essential facts of the case and German litigation below:

A.  **The Parties involved**

7.  Lufthansa is one of the leading manufacturers and independent providers of maintenance, repair, overhaul, and modification services in the civil aviation industry. With tailored maintenance programs and state-of-the-art repair methods, Lufthansa ensures the unbroken reliability and availability of its

DECLARATION OF GERD JAEKEL - 6

customers' fleets. Lufthansa is an international organization involved in maintenance, production, and development.

8.      AES manufactures and sells power supplies for use in the passenger cabin to the airline industry under the trade name "EmPower.", including to Thales. The EmPower-System makes use of the German Patent and UK patent. The EmPower system is sold as individual components that can be assembled in an infringing way in many different configurations to fit the needs of the individual aircraft on which the system is eventually installed.

9.      Thales is a Delaware corporation, headquartered in Virginia, that has a corporate office in Irvine, California, from which it has been known to ship infringing units to Germany. Thales is a subsidiary of Thales USA Inc., which is, in turn, the principal North American subsidiary of Thales Group.  Among other things, Thales designs, engineers, sells, and installs in-flight entertainment and communications solutions to airlines worldwide for both commercial and private aircraft. Thales has been known to ship AES Components from this facility to Germany.

10.     Accordingly, the documentation Lufthansa is seeking from Thales with the 2023 Subpoena, should be located at the Irvine, California, facility or otherwise in the custody and control of Thales and its employees in that facility.

**B.      Lufthansa's German Patent**

11.     The German Patent, entitled "Electrical Power Supply Device," issued on November 26, 2003. The patent claimed technology that, as I understand it, for the first time enabled a standard household voltage supply to be provided in the cabin of an aircraft to supply electricity to passengers so they can use their laptops or electronic entertainment devices in flight. Before the patented invention,

DECLARATION OF GERD JAEKEL - 7

aviation authorities took the view that placing a plug socket in the armrest of a passenger seat, for example, posed a safety risk because there was a risk that the passenger might inadvertently insert conductive material into the socket and receive an electric shock. The risk was particularly acute for young travelers, who might insert sharp objects into the plug socket.

12.    The technology in the German Patent incorporates safety features to prevent the possibility of electrical shock. In particular, in accordance with the German part of the German Patent and in accordance with a dependent claim of the other family members of the German Patent, the patented technology ensures that power is supplied to a plug socket only if both pins are inserted into the socket at or almost at the same time. In short, only when two pins are detected in the socket within a predetermined maximum time (such as 300 milliseconds) will the power supply switch the power on. Thus, if, for example, a child inserted a needle into only one side of the plug socket, the power would not be switched on. Indeed, even if a child inserted a second needle into the second pole, no power would be switched on, because the two pins would not be detected within the predetermined maximum time.

## C.    **German Proceedings**

13.    Lufthansa filed actions in Germany against AES regarding the infringement the German Patent. There are currently two main actions pending. One action is for damages attributed to direct shipments to Germany and one is for damages because of contributory infringement, indirect shipments to Germany, providing an affirmation and AES's joint liability for actions of IFE-vendors. The 2023 subpoena relates to evidence of sales and parts for establishing damages in both German actions.

DECLARATION OF GERD JAEKEL - 8

14.   **Infringement Liability For Direct Shipments To Germany**: On December 29, 2010, Lufthansa initiated infringement proceedings in the District Court in Mannheim, Germany, to stop AES from infringing Lufthansa's German Patent. Lufthansa sought an injunction to stop any further harm from AES's infringement and to obtain damages to compensate it for AES's past infringement as of December 26, 2003 as well as accompanying claims for the rending of accounts. The Mannheim Court and the Karlsruhe Court of Appeal granted Lufthansa's claims to an injunction, damages and accounting in their judgments of February 2, 2015 and November 9, 2016. On April 18, 2018 and March 26, 2019, the German Federal Supreme Court found AES liable to Lufthansa for patent infringement based on AES's direct shipments of an infringing system from the United States to Germany since December 26, 2003.

15.   In the decisive judgement regarding the damages, the Karlsruhe Court of Appeals held in its final and legally binding judgment, dated November 9, 2016:

> "*It is found that defendant is required to compensate plaintiff for <u>all damages</u> incurred by plaintiff due to the actions committed since 26 Dec 2003 as itemized in subparagraph 1 [i.e. the features of Lufthansa's patent], wherein the claim for actions under subparagraph 1 committed prior to 01 Jan 2007 is limited to the restitution of that which defendant has acquired through these actions, in accordance with the regulations governing restitution of an unjustified enrichment*"

16.   **Validity Proceedings in Germany**: German patent cases are typically bifurcated so that infringement issues and invalidity issues are decided by different courts. On June 17, 2011, AES initiated nullity proceedings challenging the validity of the EP'145 Patent in the Federal Patent Court.

17.   On December 18, 2013, the Federal Patent Court decided mostly in Lufthansa's favor. In particular, it held that a combination of the challenged claims

DECLARATION OF GERD JAEKEL - 9

regarding the EP'145 Patent was valid. On November 9, 2016, AES withdrew its appeal, so that the decision as to validity became final.

18.    **Damages For Direct Shipments To Germany**: On July 26, 2017, Lufthansa filed an action for its damages on the basis of AES's accounting for AES's direct shipments to Germany. The Mannheim District Court granted Lufthansa damages on December 6, 2019 (docket no. 7 O 137/17). Lufthansa enforced the judgement against AES.

19.    That judgment is on appeal before the Karlsruhe Court of Appeals (docket no. 6 U 128/19). Following an oral hearing on April 12, 2023, the Karlsruhe court declared that it will hand down a decision on June 28, 2023.

20.    In these proceedings, AES objects to the damages asserted by Lufthansa and argues that Lufthansa must provide evidence on each act of infringement, including evidence that shows the assembly of the infringing system in Germany. Therefore, the German Court has to rely on sec. 287 of the German Code of Civil Procedure to determine the damages: "If it is disputed between the parties whether a damage has occurred and how much the damage or the interest to be compensated amounts to, the court shall decide on this in its own discretion, taking into account all the circumstances." The discretion of the court depends on the circumstances Lufthansa can present regarding the assembly of the parts. Because AES additionally requests evidence of the assembly of its individual components as an infringing system, Lufthansa has been seeking additional information to substantiate its claims for damages. To this end, Lufthansa is relying on documents that AES produced pursuant to proceedings under 28 U.S.C. § 1782 against AES.

21.    **Motion To Compel For Direct Shipments**: Because AES provided different information on its infringement in Germany in 2015, 2017 and 2021,

DECLARATION OF GERD JAEKEL - 10

1  Lufthansa filed a request for a motion to compel with the Mannheim District Court
2  on October 6, 2021 (docket no. 7 O 289/10 ZV I). That request is still pending.

3    22.    **AES's Damages Liability For Indirect Shipments, Contributory**
4  **Infringement, Affirmation And Joint Liability**: On December 29, 2017,
5  Lufthansa filed another action against AES. In that action, Lufthansa claimed
6  damages from AES for the sales of AES's customers to Germany because AES
7  infringed Lufthansa's German Patent by supplying infringing systems to customers
8  outside of Germany, like Thales, while knowing that these systems would
9  eventually be sold by AES's downstream customers in Germany and thereby
10 infringe Lufthansa's German patent (indirect shipments). The Mannheim Court
11 held AES liable for all damages incurred as a result of the infringement:

13 *It is found that the defendant* [AES] *is under an obligation to compensate*
14 *the applicant* [Lufthansa] *for* <u>*all the damage*</u> *suffered by it as a result of the*
   *defendant having, since 29 December 2007,*

16 *Voltage supply devices for providing a supply voltage for electrical devices*
17 *in an aircraft cabin with a socket to which a device with a plug can be*
   *connected and to which a supply voltage can be connected, the socket*
18 *having a plug detector which detects the presence of a plug inserted into the*
   *socket and a supply device which is arranged remotely from the socket and*
19 *which is connected to the socket via a signal line and via a supply line for*
   *the supply voltage, the supply device connecting the supply voltage to the*
20 *socket, when the plug detector reports the presence of the plug to the supply*
21 *unit via the signal line, wherein the plug detector is designed in such a way*
   *that it detects the presence of two contact pins of the plug in the socket and*
22 *the supply unit switches the supply voltage on to the socket only if the*
23 *presence of two contact pins of the plug is detected simultaneously, where*
   *the supply unit switches on the supply voltage only if a maximum contact*
24 *time is not exceeded between the detection of the first and the second contact*
25 *pin of the stretcher;*

DECLARATION OF GERD JAEKEL - 11

*sold to third parties abroad, whereby these third parties and/or their
customers offer such power supply devices in the Federal Republic of
Germany without the consent of the plaintiff and/or bring them into
circulation and/or use them and/or import them or use them for the
aforementioned purposes*" (emphasis added)

23.    In addition, AES is also liable for damages if AES only provided some
Components. In this case AES is liable for contributory patent infringement and
Lufthansa entitled to damages if Lufthansa can show that the respective
components supplied by AES were subsequently Incorporated in Thales/AES
Infringing Assemblies, *e.g.* if AES Components and Thales Components were
supplied separately to a seat vendor in Germany that assembled the components as
an infringing system.

24.    In a December 6, 2019 judgment (docket no. 7 O 1/18), the Mannheim
District Court granted Lufthansa's claims for damages and accounting concerning
AES's indirect shipments and AES's contributory infringement by supplying parts
of its system to directly and indirectly to Germany. In addition, the court granted
Lufthansa's request for an affirmation because the court suspected AES's German
accounting for its direct shipments to be incorrect and incomplete.

25.    In its appeal, AES asserted (docket no. 6 U 129/19) that it has no
knowledge that its customers and further downstream customers would (i) supply
its parts to Germany or (ii) combine the parts as an infringing system in Germany.
In two decisions, the Karlsruhe Court rejected AES's requests to suspend the
preliminary enforcement of the December 6, 2019 decision and emphasized that
AES is liable for any and all parts shipped to IFE-manufacturers, including Thales,
distributors or intermediaries that were eventually installed at Airbus in Hamburg
or the German seat manufacturers, Recaro and ZIM and that AES is obligated to
provide an affirmation because of the inconsistencies in AES's accounting.

DECLARATION OF GERD JAEKEL - 12

26.    In these proceedings, Lufthansa is also relying on documents from proceedings pursuant to sec. 28 U.S.C. § 1782.

27.  In its appeal, Lufthansa also relies on claims for damages from AES based on joint liability because AES collaborated with its downstream customers to commit patent infringement in Germany. This includes damages claims against AES for collaborating with Thales, which result from the fact that AES provided line fit support for its customers at Airbus's premises in Hamburg Germany and also participated in system planning coordination meetings with customers, the aircraft manufactures and seat vendors to plan the installation and configuration of the infringing system in Germany. These meetings typically start with an Initial Technical Coordination Meeting ("ITCM") wherein the general parameters of the project are discussed, i.e. what type of power supply will be installed in the seats and how will the seats be assembled. After that the respective parties meet again for a Preliminary Design Review ("PDR") to set relevant parameters for the project on a preliminary basis, e.g. determine the angle of the in-seat-harness or the location of an outlet unit. Following this, a Critical Design Review ("CDR") takes place to define all final parameters for the production. The respective seats are then manufactured by the seat vendors and equipped with AES's system according to these parameters. Finally, the parties meet for a last time before the production begins to do a Frist Article Inspection ("FAI") for a final review of samples seats, e.g. to look at and review a single row of seats manufactured pursuant to the CDR. Since these documents are decisive for setting the contractual and safety parameters for each system and project, maintaining these protocols is critical for any entity involved, including AES. Furthermore, the required cable lengths to install the system are discussed during these meetings and typically result in cable plans or routing plans for cables. Additionally, the parties to each project exchange

DECLARATION OF GERD JAEKEL - 13

delivery or shipment schedules to align the shipment and installation process and provide technical support in case there are installation issues. These documents likely provide conclusive evidence of the extent to which AES collaborated with Thales and vice versa.

28.    **Motion To Compel For Information And Accounting Claims in Germany:** Lufthansa enforced the December 6, 2019 judgment against AES, but after Lufthansa granted several extensions to AES, AES refused to comply with the judgment. The District Court ordered the maximum fine allowable under German law (i.e. 25.000 EUR) against AES in its decision on September 7, 2020. AES's appeal was dismissed by the Karlsruhe Court of Appeals on December 14, 2020 (docket no. 6 W 52/20). After payment of the fine, AES continued to refuse production. The Mannheim District Court granted Lufthansa's request for a second motion to compel on March 8, 2021 and ordered the maximum fee for a second time and the Karlsruhe Court of Appeals dismissed AES's appeal on October 20, 2021 (docket no. 6 W 6/21). In that decision the Karlsruhe Court also confirmed that all parts of the infringing system or sold with the infringing system are subject to the December 6, 2019 judgment:

> "*ii.    Furthermore, contrary to the debtor's* [AES's] *view, the accounting must also include the connecting cables that supply the ISPS with voltage and connect it either to another ISPS or to the MCU (so-called Seat-to-Seat Cable e.g. 1170824- X, 1170803X, 1068825-1-X, 1068803-2-X). It is undisputed that the debtor's components are not only assembled in isolation to form individual voltage supply devices that are used independently of one another, but are also used – at least also – **as part of an overall system**, as shown, for example, in the figure on p. 8 of the district court's judgment or in Figure 2.1 in the creditor's brief of 1 March 2021 on p. 16.*
>
> *It is apparent that this entire system was the subject of the judgment to be enforced (see LGU p. 7). **If an entire system is the subject-matter, then, in addition to the parts mentioned in the patent claim, all other components***

DECLARATION OF GERD JAEKEL - 14

***indispensable for the proper functioning as well as all further elements belonging to the product put on the market are to be included****. It is irrelevant whether the infringer charges his customer for the delivered unit at a total price or broken down into its individual elements (Düsseldorf Court of Appeals, judgement of 15.02.2007 – I-2 U 71/05, Heavy load shelf, marginal no. 32).*" (emphasis added)

29.    Thus, AES Components as well as Thales Components that are part of or sold with an infringing system and shipped to or installed in Germany, e.g. at Airbus in Hamburg or at the German seat vendors Recaro and ZIM, Lufthansa is entitled to damages in Germany.

30.    Because AES refused the payment of the court ordered fine, Lufthansa seized AES's German Patents. AES then paid the fine, but continued to ignore what the court had ordered and Lufthansa's deadlines, which resulted in Lufthansa's third request for a motion to compel on November 12, 2021. Thereafter, AES supplemented its accounting several times because of inconsistencies that Lufthansa had indicated to the German court. However, the accounting remained incomplete and the German Court ordered the maximum fine against AES in another order to compel dated October 17, 2022. This resulted in AES providing yet another version of its accounting on January 13, 2023 and again on January 27, 2023. Despite these revisions, Lufthansa still identified multiple deficiencies and pursued its request for an order to compel. These proceedings are still pending.

31.    **Motion To Compel Regarding Affirmation**: AES also refused to provide the court ordered affirmation regarding the accuracy of its accounting for direct sales and filed yet another motion to compel. After AES ignored two court-ordered dates to provide the required affirmation, the Mannheim Local Court ordered the maximum fine allowable under German law on February 17, 2021 (docket no. 655 M 1449/20). AES's appeal was dismissed on June 2, 2021 (docket

no. 1 T 42/21). Again, AES refused to pay the respective fine and Lufthansa had to seize AES's German patents enforcing the court order. Because AES still refused to provide the affirmation, Lufthansa filed a second request for a motion to compel on July 12, 2021. AES then provided new accounting adding shipments worth hundreds of thousands of dollars, which was still insufficient. Lufthansa therefore requested a further order to compel. Those proceedings are still pending.

### D.    AES Components

32.    As discussed above, AES is liable for its direct shipments as well as its indirect shipments to Germany. Lufthansa is therefore also entitled to damages in Germany if AES Components are purchased by customers outside of Germany, such as Thales, if such components are subsequently supplied to Germany and assembled as an infringing system by the respective customer or the customer's customer. This includes all Thales/AES Infringing Assemblies that are Shipped to and Incorporated at Airbus' linefit assembly line in Hamburg as well as Thales/AES Infringing Assemblies supplied to seat vendors and incorporated in Germany, such as Recaro and ZIM.

33.    Based on the information available to Lufthansa, the AES System is distributed under the trademark name "EmPower" and may consist of many different AES Components that can be configured in different ways to create an infringing system.

34.    For example, AES offers In-Seat-Power-Supply units ("ISPS") as well as In Seat Power Modules ("SPM") or In-Seat Power Boxes ("SPB") in various configurations to its customers that power the components connected to this unit, for example outlet units for personal end devices of the passengers or in-use-lights. The ISPS, SPM or SPB are in turn powered by an Master Control Unit ("MCU"), Advanced Master Control Unit ("AMCU") or Enhanced Master Control

Unit ("EMCU"), which are connected via a large number of different associated cables and harnesses. For illustration purposes, I include diagrams of different iterations of AES's system below:



Block Diagram – EmPower® 110VAC + USB In-Seat Power System

35.    Based on Lufthansa's understanding, Thales purchases and sells AES Components in the U.S. that Thales then supplies to its downstream customers on a large scale, including to downstream customers in Germany. On occasion, Thales also asks AES to directly ship the parts to its customers in the respective countries worldwide.

**E.    IFE System**

36.    Lufthansa also understands that the AES Components purchased by Thales from AES could optionally also be combined with Thales' in-flight-entertainment systems (IFE-System), such as the TopSeries system, which is powered by the AES Components, for example by an In-Seat-Power Module.

DECLARATION OF GERD JAEKEL - 17

37. To illustrate that I include a diagram for AES' Empower system below that depicts an integrated IFE-System on the right side labeled "*4x DC Power for Customer IFE-Equipment*":



Block Diagram – EmPower® IFE Integrated Seat Power System

38. As explained above, Lufthansa is not seeking information on the IFE-System.

**F.    Thales Assemblies and Thales Components**

39. In addition to the AES Components and the IFE-System, Thales also provides Thales Components that incorporate one or more of the AES Components.

40. This critical circumstance was first disclosed in Thales' June Letter that Thales sent to AES in response to AES's inquiry regarding Thales's sales of infringing systems to Germany (which AES later forwarded to Lufthansa). Prior to this letter, Lufthansa was unaware of the incorporation of Thales Components into AES' EmPower System, but instead merely understood that Thales combined AES Components into Thales IFE-Systems.

DECLARATION OF GERD JAEKEL - 18

41.   Critically, Lufthansa is entitled to damages if Thales Components were part of an infringing system in which they were incorporated with AES Components in Germany or if the infringement is a result of AES's and Thales' joint efforts.

42.   In the June Letter, which I attach as **Exhibit A** to my declaration, Thales provided an Appendix 1 that also lists the shipment of Thales Components. Thales also referenced "Thales assemblies that incorporate one or more of the AES parts listed on Annex 1a" [Annex 1a incorporates AES's parts list that is included as Annex A to the 2023 Subpoena] (letter at p. 1 para. 2; emphasis added):

> "*Accompanying this letter is an Excel spreadsheet, Appendix 1, containing the responsive information using the parts attached as Annex 1a to your February 8 correspondence. Consistent with our understanding of the request, we have included information for those **Thales assemblies that incorporate one or more of the AES parts listed on Annex 1a**. As a result, the spreadsheet includes two worksheets. The first worksheet, astronics_parts_shipment, lists responsive shipments of parts listed on Annex 1a. **The second worksheet, astronics_component_shipment, lists responsive shipments of <u>Thales components that incorporate one or more of the parts listed on Annex 1a</u>**.*"

Here, we see that in addition to "Thales assemblies," which incorporate AES parts, there also exist "shipments of Thales components that incorporate one or more of the [AES] parts listed on Annex 1a."  Thus, there exist Thales/AES Infringing Assemblies that incorporate both AES and Thales Components to form an infringing system, and it is the information about the Thales Components of such Thales/AES Infringing Assemblies that Lufthansa is now seeking.

43.   The information that Thales provided in its June Letter is, however, incomplete and fragmentary and further information is needed to determine and calculate Lufthansa's damages.

DECLARATION OF GERD JAEKEL - 19

44.    The available information on Thales Components (i) does not cover the entire period that is subject to Lufthansa's damages claims, but merely covers the period from 2015 to 2018, (ii) only includes information on part numbers that cannot be decoded without further information from Thales, (iii) does not explain what Thales defined as incorporation with AES Components, (iv) relies on an inaccurate parts list from AES that was replaced in the German proceedings and therefore either is either inaccurate or incomplete as to relevant Thales Components, (v) relies on an incomplete parts list from AES and therefore does not include all relevant Thales Components, and (vi) does not disclose equivalent part numbers used by Thales vis-à-vis its downstream customers. In detail:

45.    *First*, the production in the letter about Thales Components is limited to the years 2015 to 2018 and therefore does not cover the years from 2003 to 2014. These years are the most relevant because AES introduced a modified system in 2014 that does not infringe the German Patent (although it infringes the UK Patent).

46.    *Second*, the excel spreadsheet Thales provided merely identifies the AES Components and Thales Components based on part numbers, e.g. "180949-090611", "180949-090610", "180949-101104", "180894-102," etc. The technical features and configuration options of these numbers are, however, not disclosed in Thales's spreadsheets and therefore remain unknown to Lufthansa. Without the corresponding technical documents or other documentation that explain what part the listed part number stands for and what technical features the listed part number possesses, Lufthansa does not know whether the respective part is relevant to the Thales/AES Infringing Assembly or how it can be incorporated within the Thales/AES Infringing Assembly. Those details are critically important to determine and claim damages. In the same way, it is unknown how these parts are

DECLARATION OF GERD JAEKEL - 20

incorporated and function with the AES Components, which is again relevant to claim damages. Again this requires knowledge of the technical features and configurations of these parts that Lufthansa does not have and that the information set forth in Thales's June Letter does not provide.

47. *Third*, it remains unknown on what basis Thales determined whether a Thales Component is capable of being incorporated into the Thales/AES Infringing Assembly . Thales did not provide any definition in its June Letter about this, and Lufthansa cannot derive that information from the mere indication of part numbers listed on excel spreadsheets that do not disclose the technical features and their possible configurations or incorporation with other components.

48. *Fourth*, Thales relied on Annex 1a as provided in AES's November 30, 2021 and February 8, 2022 letters as the basis for Thales' June Letter. Annex 1a is a list of AES Components that is incomplete and was replaced by AES on August 15, 2022 with Annex 1e in the German proceedings. Annex 1e adds and removes AES Components from the list in Annex 1a. The parts list from Annex 1e is the basis for the part numbers listed in Annex A to the proposed 2023 Subpoena.

49. *Fifth*, the parts list provided by AES as Annex 1a that is the basis of Thales's June Letter is also incomplete because it does not include all part numbers for all AES Components. For instance, USB-outlet units that can be powered in parallel to 110V-AC Outlet Units and Test Equipment are not included in the parts list provided by AES.

50. *Sixth*, according to Lufthansa's knowledge, suppliers of in seat power systems, like Thales, use sometimes equivalent part numbers for their product to account for customer-specific part numbers. If this is the case, there are two or more part numbers identifying the same part that are used by Thales dependent on the particular shipment or customer. Knowing these alternative part numbers is

DECLARATION OF GERD JAEKEL - 21

crucial in identifying the particular part that is subject to damages claims, as
technical, shipping, and other documents refer to the part mainly based on part
numbers.

### G.    Assembly of the system

51.    By way of background, the Incorporation and market for the infringing
system can be summarized as follows: The customer, *e.g.* an airline or aircraft
leasing company, decides on which electronic systems it wants in its passenger
seats. The customer then selects the supplier of such electronic parts and designates
the seat vendor that will eventually install such components in the aircraft. The seat
vendor then receives the respective parts from the respective suppliers of electronic
systems for installation in passenger seats and subsequent shipment of such seats to
the aircraft manufacturer for the final assembly of the passenger cabin, *e.g.* at the
final assembly line of Airbus in Hamburg.

52.    With respect to the infringing system, the customer may choose to
order Thales/AES Infringing Assemblies, including AES Components previously
purchased by Thales from AES, or may choose to order AES Components and
Thales Components separately, so that the components can be combined into an
infringing system at the seat vendors' facilities or aircraft manufacturers' final
assembly line.

### H.    Relevance and use of documents in German proceedings

53.    Civil procedure in the German courts is governed by the German Code
on Civil Procedure ("Zivilprozessordung" or "ZPO"). The ZPO does not prohibit
the use of evidence obtained in ways other than those provided by German law or
even in violation thereof. Indeed, I am aware of several cases where German courts

have either accepted or indicated a willingness to accept evidence produced from the United States or other countries. Thus, the Mannheim District Court has relied on several documents obtained through the U.S. discovery proceedings in its judgments against AES.

54.    Nevertheless, while the ZPO does not prohibit the use of evidence obtained by other means, such as through discovery actions in the United States under Section 1782, the ZPO does not provide a formalized means to request and subsequently obtain information from the other party in the German proceeding. There is no mechanism for pre-trial discovery in German civil practice.

55.    Section 142 ZPO merely provides that a party may request that the other party or a third party be ordered to present a certain, specifically identified document. This request, however, not enforceable and the ordered party can refuse the production despite the court order. The court may only weigh the refusal against the refusing party when assessing the facts of the case. An order is also limited to documents the party can specifically identify and is entitled to receive—*e.g.*, documents belonging to the party or documents (invoices, etc.) which would be requested in an action for accounting.

56.    There are no procedural means in a German patent infringement case to seek general discovery of the internal documents of the other party to be used as evidence in litigation. Therefore, if information is uniquely within the knowledge and possession of the other party in a German proceeding, there is no mechanism to obtain it under German civil procedure rules.

57.    In addition, documents located in the United States are outside the jurisdictional reach of the German courts. While Section 810 BGB (German Civil Code) or Sec. 140c of the German Patent Act provides that parties may have to produce a certain document, these sections are simply not applicable to documents

DECLARATION OF GERD JAEKEL - 23

located outside Germany. Similarly, Section 809 BGB, which provides that certain items may be inspected, is applicable only for specifically identified items that are located in Germany.

58.    Finally, if a party or nonparty chooses not to produce documents requested from the German Court pursuant to Section 142 ZPO, the German court may consider the party's noncompliance in rendering its decision. It cannot, however, compel production. Indeed, there is no means for it to do so.

59.    As a general matter, the German legal literature holds that there are no objections against the use of evidence in German civil proceedings that was obtained by United States discovery procedures. (*See* Eschenfelder, RIW 2006, p. 443; Eschenfelder, IPRax 2006, p. 89; Kraayvanger, RIW 2007, p. 177, p. 183).

60.    In general, civil courts admit evidence without regard to its origin, how it was obtained, or whether it was obtained in line with the ZPO. The Higher Regional Court (Oberlandesgericht) Brandenburg ruled that the actual truth is more important than the correct handling of the ZPO (*see* NJW-RR 2001, 1727).

61.    Regarding the protection of the confidentiality of certain documents to be disclosed under the requested discovery and potentially used in the German Action, it is highly unlikely that the documents would be made accessible to anyone other than the court, the parties directly involved in the litigation, and the respective counsel.

62.    Documents submitted to the German court as evidence in civil litigation will become a part of the court file. Court files are not publicly accessible. Under the ZPO, the direct access to the court files is limited to the court and the parties of the litigation. Section 299 ZPO, the provision relating to the access of files, provides that third parties shall be granted the right to inspect the court files by the President of the court only if they are able to demonstrate that

they have a legitimate interest. A mere economic or social interest is not sufficient. Rather, the applicant must be able to show that his interest pertains to the matter in suit—*e.g.*, if he needs to evaluate the files to decide whether to join in the litigation. Significantly, it is not sufficient if the applicant merely desires to access the files to facilitate a suit that does not directly relate to the subject matter in the pending suit or for mere curiosity.

63.    If a request to access the court files is filed by a third party, the court will carefully examine the request. Usually, the parties to the litigation will be heard on the request. The court will then balance the interests of the parties and decide whether to permit access. The court also can limit the access of the third party to certain parts of the files. In addition, both parties may request that the public be excluded from the hearing when confidential information is discussed (Section 172 No. 2 the German Courts Constitution Act - "Gerichtsverfassungsgesetz" or "GVG") and that respective content of the court docket shall be excluded from any later file inspection. The access of a third party seeking file inspection can be further restricted by requesting a confidentiality order pursuant to sec. 16 of the Trade Secrets Act which applies respectively pursuant to sec. 145a of the German Patent Act.

64.    Further, because Lufthansa is a party to the Section 1782 proceedings in the United States, it can obligate itself by the terms of a protective order, issued by the United States court, to refrain from seeking direct access to these records and to limit its access to any allegedly confidential information provided by Thales to outside counsel's and outside experts'/consultants' eyes only.

65.    Lufthansa has previously presented material from discovery in the United States as part of the German proceedings, and AES did not have any

DECLARATION OF GERD JAEKEL - 25

problems with the way the German court handled the confidentiality of those materials.

      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: April 21, 2023

_____

Gerd Jaekel

DECLARATION OF GERD JAEKEL - 26

# EXHIBIT A

**EVERSHEDS SUTHERLAND**

Eversheds Sutherland (US) LLP
700 Sixth Street, NW, Suite 700
Washington, DC  20001-3980

D: +1 202.220.8348
F: +1 202.637.3593

danielmorris@
eversheds-sutherland.com

June 1, 2022

**Via E-Mail**
Christian Stoll
Hogan Lovells International LLP
Alstertor 21
20095 Hamburg
christian.stoll@hoganlovells.com

**Re:    AES Request for Support in German Litigation,
       Reference No. 311 cs 145628. 000019, #2128947**

Dear Mr. Stoll:

I write in response to your letters of November 30, 2021 and February 8, 2022, requesting information from Thales Avionics, Inc. ("Thales") about certain parts and assemblies as they relate to Germany.

Accompanying this letter is an Excel spreadsheet, Appendix 1, containing the responsive information using the parts attached as Annex 1a to your February 8 correspondence. Consistent with our understanding of the request, we have included information for those Thales assemblies that incorporate one or more of the AES parts listed on Annex 1a. As a result, the spreadsheet includes two worksheets. The first worksheet, astronics_parts_shipment, lists responsive shipments of parts listed on Annex 1a. The second worksheet, astronics_component_shipment, lists responsive shipments of Thales components that incorporate one or more of the parts listed on Annex 1a.

Please note however that Thales has not provided the identity of the customer to whom the parts were sold to protect the privacy of Thales customers.

The attached spreadsheet contains the information from August 1, 2015 through May 22, 2018.

Thales declines to produce information prior to August 1, 2015 responsive to Annex 1a because of the unreasonable burden such production would require. Thales migrated its database to a new platform in the summer of 2015. As a result, information from before August 1, 2015 would be accessible only on a legacy database platform. As a result of the normal turnover of staff as well as reductions in response to the extraordinary prevailing market conditions, current Thales staff lack sufficient familiarity with the legacy database platform, which I would note includes only information that is seven years old or older at this point. Retrieving the information you seek for before August 1, 2015 would require an unreasonably burdensome diversion of resources into further development of an unneeded competency for current staff or the costly retention of outside consultants as well as the diversion of internal resources to equip those outside consultants with the company and industry knowledge required to complete the task. The request for the earlier information is therefore not practicable.

However, Thales is able to provide a second Excel spreadsheet, Appendix 2, with some of the responsive information. Appendix 2 is a list prepared using the parts list that accompanied your May 21, 2021 letter and was drawn from the legacy database platform. It therefore provides information from before August 1, 2015. This information was later overtaken by the subsequent

Eversheds Sutherland (US) LLP is part of a global legal practice, operating through various separate and distinct legal entities, under Eversheds Sutherland.  For a full description of the structure and a list of offices, please visit www.eversheds-sutherland.com.

Christian Stoll
Hogan Lovells International LLP
June 1, 2022
Page 2

instructions we understand you to have received in the German proceedings. Nonetheless, we attach it here in the event that it is helpful to you and the Court.

We further note that Lufthansa Technik AG ("Lufthansa"), which we understand is your counterparty in the German litigation, compelled Thales to produce substantial information about these parts and the Thales assemblies that incorporate them as they relate to Germany. Providing this information was a substantial burden to Thales, made more so by Lufthansa's initial resistance to specifically identifying the AES parts for which it was seeking information. For the final iteration of that exercise, however, Thales used a list of parts prepared by Lufthansa. Your US counsel, as well as Lufthansa, already have received that information, which included information relating to before August 1, 2015.[1]

Finally, please note that even with customer information removed, this information is highly confidential and includes business competitive information that could damage Thales if shared with Thales competitors or disclosed publicly. As a result, Thales provides this information on the understanding that this information will be disclosed to Lufthansa only upon Lufthansa agreeing to treat the information as subject to the terms of the September 23, 2019 Revised Protective Order [ECF Doc. No. 59] entered by the U.S. District Court for the Central District of California in *In re Lufthansa Technik AG*, case number 8:19-mc-00016, as modified by the May 13, 2021 Stipulation and Order Modifying Protective Order [ECF Doc. No. 127] and that, further, AES will request that the German court take all appropriate steps to prevent its disclosure beyond that required for purposes of the court proceedings.

Sincerely,

*/s/ Daniel Morris*

---

[1] At the time, Thales had the benefit of staff experienced with the legacy database system, which staff have since separated from Thales.