UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUFTHANSA TECHNIK AG,<br><br>Petitioner,<br><br>v.<br><br>THALES AVIONICS, INC.,<br><br>Respondent. | Case No. 8:22-mc-00034-JVS-KES<br><br>REPORT AND RECOMMENDATION<br>OF UNITED STATES<br>MAGISTRATE JUDGE |

This Report and Recommendation ("R&R") is submitted to the Honorable James V. Selna, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.

## INTRODUCTION

This R&R concerns an amended application by Petitioner LUFTHANSA TECHNIK AG ("Lufthansa") for an order under 28 U.S.C. § 1782 authorizing its attorneys to issue a third-party subpoena pursuant to Federal Rule of Civil Procedure 45 on Respondent THALES AVIONICS, INC. ("Thales") to produce

documents and to provide testimony for use in pending patent infringement

litigation in Germany against ASTRONICS ADVANCED ELECTRONIC

SYSTEMS ("AES").  The German lawsuit alleges that AES infringed Lufthansa's

European Patent No. EP 881 145 B1 by selling 110-volt in-seat power systems for

use in commercial aircraft.[1]  Some of AES's power systems were sold to Thales for

incorporation into Thales's in-flight entertainment ("IFE") units that Thales then

sold to airlines worldwide.  (Dkt. 1 at 1-2.[2])

In 2019, Lufthansa filed a prior action under § 1782 seeking evidence related

to the same German patent lawsuit as well as several other foreign patent lawsuits.

See In Re the Application of Lufthansa Technik AG, Petitioner, for an Order

Pursuant to 28 U.S.C. 1782, No. 8:19-mc-00016-JVS-KES (the "2019 Case").

Throughout many months of negotiation and hearings, Thales produced documents

and provided deposition testimony.  In September 2020, the Court largely denied

Lufthansa's motion to compel further production.  (2019 Case, Dkt. 107.)

In December 2022, Lufthansa filed this second action under § 1782.  (Dkt. 1

(the "December 2022 Application").)  The Court denied Lufthansa's December

2022 Application without prejudice.  (Dkt. 41 (R&R), Dkt. 50 (order accepting

R&R).)  Lufthansa then filed an amended application in April 2023.  (Dkt. 45 (the

---

[1] According to Lufthansa's German counsel, the patented technology "for the first
time enabled a standard household voltage supply to be provided in the cabin of an
aircraft to supply electricity to passengers so they can use their laptops or
electronic entertainment devices in flight.  Before the patented invention, aviation
authorities took the view that placing a plug socket in the armrest of a passenger
seat, for example, posed a safety risk because there was a risk the passenger"—
especially young passengers—"might inadvertently insert conductive material into
the socket and receive an electric shock. … [T]he patented technology ensures that
power is supplied to a plug socket only if both pins are inserted into the socket at
or almost at the same time," thereby "prevent[ing] the possibility of electrical
shock."  (Dkt. 45 at 40-41 ¶¶ 11-12 (Jaekel Decl. dated 04/21/23).)

[2] Page cites refer to the pagination imposed by the Court's e-filing system.

"April 2023 Application").)  After a hearing with the Magistrate Judge, Lufthansa filed a revised proposed subpoena in October 2023.  (Dkt. 85 (the "October 2023 Subpoena").)

For the reasons discussed below, the undersigned Magistrate Judge recommends that the Amended Application be GRANTED in part and DENIED in part.  Because the October 2023 Subpoena is unduly burdensome on Thales, a non-party to the German litigation, the Court should amend the subpoena's definitions and document requests as described in this R&R and Exhibit A of this R&R (a redlined version of the October 2023 Subpoena).  Additionally, Lufthansa should be ordered to pay some of Thales's costs of responding to the subpoena.

## II.

## LEGAL STANDARD

28 U.S.C. § 1782 authorizes this Court to order any person in the Central District of California to give testimony and produce documents for use in a foreign proceeding upon the application of any person with an interest in that proceeding. Specifically, § 1782(a) provides in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.  The order may be made … upon the application of any interested person and … [t]o the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).

To obtain discovery in aid of foreign litigation, a petitioner must show that: (a) the person to provide discovery resides or is found in the district where the

application is made; (b) the information sought is "for use in a proceeding in a foreign or international tribunal"; and (c) the petitioner is an "interested person" in the foreign proceeding.  28 U.S.C. § 1782(a); Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 246 (2004).

Upon finding the three statutory factors satisfied, the district court still has discretion to deny the requested discovery.  Intel Corp., 542 U.S. at 264.  In exercising this discretion, caselaw suggests four non-exclusive factors for consideration: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding" such that the "foreign tribunal has jurisdiction over [it]"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the requests are "unduly intrusive or burdensome."  Intel Corp., 542 U.S. at 264-65; see also United States v. Global Fishing, Inc. (In re Premises Located at 840 140th Ave. NE, Bellevue), 634 F.3d 557, 563 (9th Cir. 2011).

## III.

## PROCEDURAL BACKGROUND

### A.    Lufthansa's First § 1782 Application in the 2019 Case.

In June 2019, Lufthansa initiated a 28 U.S.C. § 1782 action in the Central District of California for discovery in aid of foreign proceedings in France, Germany, and the UK, and contemplated proceedings in Japan and Spain.  These foreign proceedings involved allegations of patent infringement for the same patent and the same 100-volt in-seat power system.  (2019 Case, Dkt. 1.)  Before the 2019 Case began, "Lufthansa's patent had already been held *valid and infringed* in Germany, entitling Lufthansa to damages from Thales's supplier, [AES], dating back to December 2003."  (2019 Case, Dkt. 100 at 3.)

4

The proposed 2019 subpoena to Thales sought twelve categories of documents to assist Lufthansa in proving its damages.  For the relevant years, Lufthansa sought records reflecting all Thales's purchases of AES's "110V in-seat power systems or parts thereof" for eventual installation in German and UK aircraft along with numerous data points about those purchases, including part numbers, dates received, prices paid, invoice numbers, ship-to addresses, aircraft in which the parts were installed, repairs, returns, statements of work, etc.[3]  (2019 Case, Dkt. 1-4.)  It also asked for the contracts between Thales and AES and documents showing that AES knew where its 100-volt in-power seat systems would eventually be installed.  (Id.)

The Court granted the 2019 application, allowing Lufthansa to serve the subpoena on Thales.  The Court, however, noted, "If Thales or any other appropriate party serves objections or moves to quash or modify the subpoena, then the Court will hold a hearing as warranted."  (Id., Dkt. 11 at 6.)  The Court granted AES's motion to intervene, set a hearing on Thales's motion for reconsideration, and instructed the parties to meet and confer about narrowing the document requests.  (Id., Dkt. 34, 38 at 32-33 ("The Court is not inclined to go an all-or-nothing path.  It does seem pretty clear … that Thales has relevant information and that Lufthansa is entitled to discover it.  It's a matter of trying to figure out … how to do that without creating unnecessary burdens.").)

Between August 2019 and August 2020, the parties filed numerous status reports and conducted conferences with the Court describing their discovery

---

[3] The 2019 subpoena defined the term "110V In-Seat Power Systems" as all the components of the system for supplying 110-volt power in the passenger cabin of an aircraft, including "outlet sockets, power supplies, master control units, electronic controls such as in-seat power supplies or seat power boxes and other electronic parts, connections, and/or spare parts," that were "offered, imported, owned, sold, or brought into circulation by AES."  (2019 Case, Dkt. 1-4 at 4.)  This definition excludes components made by Thales.

efforts.  Thales provided, among other discovery, several iterations of extensive
spreadsheet-style reports with many of the data points requested by Lufthansa,
including details for thousands of sale transactions.  Thales also provided
testimony explaining the reports in three depositions and multiple declarations.
(Dkt. 21-3 (2019 Case motion describing Thales's discovery responses).)

During the 2019 Case, one complexity discussed was that Thales did not buy
in-seat power systems from AES and simply pass them on to Thales's aircraft
customers using one AES part number.  Rather, the AES power systems comprised
of multiple AES components that were then incorporated into assemblies, such as
IFE units, made and sold by Thales.  As explained by counsel for Thales at a 2019
discovery conference:

> It becomes increasingly difficult with the more [AES] parts that are
> involved …. What happens, is we have to look at each AES part and
> then individually track in the system into which Thales Avionics
> assemblies, or sub-assemblies, it might be incorporated.  And only
> then after building out the list, and there are, I'm told there are
> thousands of Avionics sub-assemblies and assemblies.  And only
> after that search is concluded can we then actually start doing the
> aggregation regarding the prices paid to [Thales] for our assemblies
> and sub-assemblies in Germany

(Dkt. 21-5 (9/27/19 transcript) at 12:4-19 (emphasis added).)  In a September 2019
declaration, Thales employee Kam Mohager explained, "Thales purchases parts
from many vendors, including [AES] to be incorporated into Thales's IFEs.
Among other things, Thales purchases AES's Outlet Units, ISPS, Seat Power
Boxes and harnesses for both AC and DC systems."  (2019 Case, Dkt. 110-3 at
¶ 4.)  Indeed, one topic about which Lufthansa sought deposition testimony in the
2019 Case was Thales's "sales practices and procedures for selling 110V In-Seat
Power Systems *or Thales Avionics's assemblies incorporating 110V In-Seat*

***Power Systems*** delivered to or installed in the United Kingdom, France, or Germany." (Dkt. 21-3 at 42, topic 5 (emphasis added).)

The 2019 Case culminated when Lufthansa moved to compel full compliance with the subpoena and obtain additional deposition testimony from Thales. Consistent with the Court's Local Rules, the motion was filed in the form of a joint stipulation, in which Thales asked for a protective order excusing full compliance. (Dkt. 21-3; see also 2019 Case, Dkt. 100.) The Magistrate Judge granted the motion to compel in part and denied it in part, directing Thales to provide additional sales information via spreadsheet for Northern Ireland, because those sales related to Lufthansa's damages calculations in the UK litigation. (2019 Case, Dkt. 107.) In that Order, the Magistrate Judge summarized Thales's provision of discovery over the preceding year and the parties' representations and agreements that Thales would prepare and produce spreadsheets (which Thales did) in lieu of producing all documents responsive to the 2019 subpoena. (Id.)

Lufthansa moved for review of the Magistrate Judge's Order, which the District Court denied. (2019 Case, Dkt. 122.) Lufthansa then appealed the decision to the Ninth Circuit, which affirmed it in a memorandum opinion. (Id., Dkt. 129 (case no. 20-56293).) Mandate issued on February 11, 2022. (2019 Case, Dkt. 130.)

**B.    The June 2022 Letter.**

On June 1, 2022, Thales sent AES a letter responding to AES's requests for information in connection with the German litigation. (Dkt. 1 at 53 (the "June 2022 Letter").) The June 2022 Letter transmitted a spreadsheet with information from August 1, 2005, through May 22, 2018, that Thales described as follows:

Accompanying this letter is an Excel spreadsheet, Appendix 1, containing the responsive information using the [AES] parts attached as Annex 1a to your February 8 correspondence. Consistent with our understanding of the request, we have included information for those

1  ***Thales assemblies that incorporate one or more of the AES parts***

2  ***listed on Annex 1a.***  As a result, the spreadsheet includes two

3  worksheets.  The first worksheet, astronics_parts_shipment, lists

4  responsive shipments of parts listed on Annex 1a.  The second

5  worksheet, astronics_component_shipment, lists responsive

6  shipments of Thales Components that incorporate one or more of the

7  parts listed on Annex 1a.

8  (Id.) (emphasis added).

9  Lufthansa contends that upon seeing this letter, it realized for the first time

10  that Thales Components were "incorporate[ed] … as part of" the infringing AES

11  power systems, rather than Thales's IFE Systems simply being "powered by" the

12  infringing AES systems.  (Dkt. 45 at 35 ¶ 4 (Jaekel Decl. dated 04/21/23).)

13  **C.    The December 2022 Application.**

14  On December 30, 2022, Lufthansa filed this second action for an order under

15  28 U.S.C. § 1782 to authorize its attorneys to issue a third-party subpoena to

16  Thales seeking documents and testimony for use in pending patent infringement

17  litigation in Germany and the UK against AES.  (Dkt. 1 (the "December 2022

18  Application").)  The December 2022 Application was supported by a declaration

19  form Lufthansa's German counsel, Gerd Jaekel, describing the patented technology

20  and the procedural history of the foreign litigation.  (Dkt. 1 at 20-51.)

21  **1.    Proposed Subpoena and Written Briefing.**

22  When Thales appeared, it filed a Notice of Related Case identifying this

23  action as related to the 2019 Case.  (Dkt. 11.)  Lufthansa objected that the two

24  cases are "materially different."  (Dkt. 13 at 2.)  According to Lufthansa, the 2019

25  Case sought information about "components manufactured or supplied" ***by AES*** to

26  Thales, whereas this instant action "seeks information related to components

27  manufactured or supplied ***by Thales*** …, e.g., cables, seat electronic boxes,

28  termination caps etc. manufactured by Thales itself."  (Id.) (emphasis added).  The

8

Court determined that the cases are related and transferred the instant action to the same judges who presided over the 2019 Case.  (Dkt. 14.)

Through the December 2022 Application, Lufthansa sought to subpoena documents from Thales responsive to eight topics.  (Dkt. 1 at 59-65.)  The covered time period for German-related documents was about fifteen years (i.e., December 26, 2003 to May 2, 2018).  (Id. at 63.)

The December 2022 Application used the defined term "In-Seat Power-System," which it defined as a system "that incorporate[d] or were offered, imported, owned, sold or brought into circulation with one or more AES Components."  (Id. at 62.)  An "AES Component," in turn, was defined as a 110-volt power supply system licensed for use in the passenger cabin of an aircraft that made use of features claimed by the relevant Lufthansa patent, and everything sold with it or later modifying it.  (Id. at 62.)  Based on these definitions, "In-Seat Power-Systems" included all the AES parts that were the subject of the 2019 subpoena plus any Thales-made parts sold with the power system, such as connecting cables or the components of Thales's IFE units.

The December 2022 Application's eight document requests are summarized as follows:

(1) Topic One – Part Numbers: All part numbers (and corresponding part descriptions) used by Thales, AES, and Thales's airline customers for all components of In-Seat Power-Systems.

(2) Topic Two – Shipping Documents: Shipping documents for every "Shipment" during the covered time periods including shipping instructions and other data points about each shipment.  A "Shipment" was defined as every sale of an In-Seat Power-System "or parts thereof" to a location in Germany or the UK, or to any other location but intended for installation in an aircraft that would be finally assembled in Germany or the UK.  (Id. at 62-64.)  Again, because of the broad definition of "In-Seat Power-System," topic two was as broad as topic one.

(3) <u>Topic Three - Purchase Documents:</u> Documents, such as purchase orders and invoices, sufficient to show approximately thirty data points for each Shipment, including the order date, shipping date, customer, price, part number, batch number, etc.  (<u>Id.</u> at 64.)

(4) <u>Topic Four – Modification Level/Batch Number:</u> The modification level and batch number "for each purchase or receipt of an In-Seat Power-System or part thereof that was subsequently sold or shipped according to Request no. 2 by Thales."  (<u>Id.</u>)

(5) <u>Topic Five – More Purchase Documents:</u> Documents, such as purchase orders and invoices, sufficient to show approximately twenty data points "for each purchase or receipt of an In-Seat Power-System or part thereof that was subsequently sold or shipped according to Request no. 3 by Thales."  (<u>Id.</u>)

(6) <u>Topic Six – Incorporation Documents:</u> Technical documents, such as maintenance manuals, data sheets, and equipment specifications, "sufficient to show how the components of an In-Seat-Power-System pursuant to Request no. 2 can be incorporated in the In-Seat-Power-System."  (<u>Id.</u>)

(7) <u>Topic Seven – Manufacturing Documents:</u> Manufacturing records, such as design reviews, inspection minutes, plans, and delivery schedules, sufficient to show the installation in Germany or the UK of each In-Seat Power-System identified in response to Request no. 2.  (<u>Id.</u>)

(8) <u>Topic Eight – Communications:</u> Documents "sufficient to show AES's interaction with Thales concerning the installation of the In-Seat-Power-System in Germany and/or the UK."  (<u>Id.</u> at 64-65.)  This appears to encompass the same contracts and communications reflecting AES's "knowledge" that were subpoenaed in 2019.  (<u>Compare</u>, 2019 Case, Dkt. 1-4 at 6-7, topics 6, 10, and 11.)

AES intervened, and the parties stipulated to a briefing schedule.  (Dkt. 18, 19, and 23.)  Following that schedule, Thales and AES opposed the Application.  (Dkt. 21, 22.)  AES's opposition was supported in part by a declaration from its

German counsel, Christian Stoll, disputing Mr. Jaekel's description of the German litigation.  (Dkt. 22-1 (Stoll Decl. dated 02/08/23).)  Lufthansa replied to both oppositions (Dkt. 28, 29) and filed a second declaration from Mr. Jaekel (Dkt. 30 (Jaekel Decl. dated 02/17/23)).

### 2.    Hearing on March 7, 2023.

The Magistrate Judge conducted a hearing on March 7, 2023.  (Dkt. 37, Dkt. 39 (transcript).)  Lufthansa asserted that it was only interested in Thales components that were incorporated into AES's In-Seat Power-System, not Thales components that made up Thales's IFE system.  (Id. at 9.)  However, AES's In-Seat Power-System and Thales's IFE system are linked and are often sold together.  (Id. at 9, 16.)  There was confusion and disagreement about which components are part of which system.

Lufthansa asserted that, based on the June 2022 Letter and "information we've gotten from some of these other parties in Europe recently," Lufthansa now believed there "were Thales components actually ***as part of*** the power system."  (Id. at 38, 17 (emphasis added).)  Thales agreed that there were Thales components "connected to" the AES power systems, but Thales argued that these were part of Thales's IFE system and that they "didn't integrate into or materially change the [AES] power system."  (Id. at 53-54; see also id. at 60-61 (AES's counsel noted "confusion about Thales components being integrated … as part of the AES in-seat power supply, as distinct from … AES components that are then purchased by Thales and integrated into Thales's [IFE] system").)  At the hearing, Lufthansa introduced the following demonstrative diagram of how the AES power system

and Thales IFE system intersect:



Block Diagram – EmPower® IFE Integrated Seat Power System

(Dkt. 43 at 5.)

### 3.    R&R Issued on March 31, 2023.

On March 31, 2023, the Magistrate Judge issued an R&R recommending that the December 2022 Application be denied without prejudice.  (Dkt. 41.)  The Magistrate Judge found that, contrary to Lufthansa's arguments, its requests were not "narrowly tailored to seek information concerning the Thales Components referred to in" the June 2022 Letter, noting, "The Proposed Subpoena refers neither to the June 2022 Letter nor the parts listed in its attachments."  (Id. at 16.)  The Magistrate Judge found that the subpoena's defined terms made the requests "extremely overbroad," and that they "overlap[ped] substantially with the information Lufthansa subpoenaed in 2019."  (Id.)  The Magistrate Judge explained:

For example, topic one relies on the defined term "In-Seat Power-System," which, in turn, relies on the defined term "AES Component." (Dkt. 1 at 62-63.)  As a result, the requested part numbers include the components of Thales'[s] IFE units, just like the 2019 subpoena.

. . .

Topic two relies on the defined term "Shipment" which means all sales of "In-Seat Power-Systems" or "parts thereof."  (Dkt. 1 at 62-64.)  If, for example, Thales made a product (like a power cord, connecting cable, bolt, etc.) that it sold with its IFE units (which include AES's infringing power system), the inclusion of that product in an order would bring the order within the definition of "Shipment."  This would broaden the Proposed Subpoena's scope to sales of Thales assemblies unrelated to AES's power system but that include such a product.  And because the subsequent topics refer to topics one and two, if topics one and two are overbroad, then the entire Proposed Subpoena is overbroad.

(Id. at 16-17.)

Ultimately, because these definitions were so broad, the Magistrate Judge did not attempt to resolve the parties' dispute over what components are part of Thales's IFE system versus AES's power system.  The Magistrate Judge did point out, "While Lufthansa represents that it only wants information about Thales's components *integrated into* the AES power system, … no one is aware of any such Thales components other than potentially some connecting cords and cables, part numbers already identified in Thales's June 2022 Letter."  (Id. at 18 (emphasis added).)

The Magistrate Judge declined to re-write the subpoena, noting, "If Lufthansa is truly only interested in sales information for a handful of Thales's

cords and cables, then it can draft a subpoena that says so clearly." (Id. at 19.) The Magistrate Judge recommended denying the December 2022 Application "without prejudice to the Court's consideration of any future § 1782 application(s) drafted with clearly defined terms to avoid re-subpoenaing documents subpoenaed in 2019 and minimize the need for extensive negotiations or judicial intervention to target new information actually relevant to Lufthansa's damages." (Id. at 19-20.)

On May 19, 2023, the District Judge accepted that R&R. (Dkt. 50.)

**D.    The April 2023 Application.**

**1.    Proposed Subpoena and Written Briefing.**

On April 21, 2023, Lufthansa filed an amended application with a revised proposed subpoena. (Dkt. 45 (the "April 2023 Application").) The April 2023 Application sought discovery for use in the German litigation only.[4] The April 2023 Application was supported by a third declaration from Lufthansa's German counsel, Mr. Jaekel. (Dkt. 45 at 41 (Jaekel Decl. dated 04/21/23).)

Lufthansa significantly altered the definitions used in the proposed subpoena, which can be summarized as follows:

- Instead of using the term "In-Seat Power-System," using the term "Thales/AES Infringing Assemblies." (Id. at 22.)
- Thales/AES Infringing Assemblies: defined as assemblies "incorporate[ing]" one or more AES Components, but also contained the

---

[4] In the March 31, 2023 R&R, the Magistrate Judge expressed skepticism about Lufthansa's proposed uses for the discovery in the UK proceedings. (Dkt. 41 at 12-13.) Although the first page of the April 2023 Application stated that Lufthansa was seeking evidence "for use in currently pending patent infringement proceedings in Germany *and the United Kingdom*" (Dkt. 45 at 1 (emphasis added)), the application only discussed German proceedings (id. at 3-5) and the language in the proposed subpoena was modified to include only German sales (id. at 22-24). At the June 29, 2023 hearing, Lufthansa's counsel briefly noted, "we've taken the U.K. out of this." (Dkt. 65 at 25-26.)

following limitations: (a) sold by Thales (not AES); (b) "until May 21, 2018"; and (c) providing an alternating current ("AC") power supply with 110V or more.  (Id.)

- AES Component: limited to components listed on Annex A of the subpoena, but also included the "respective test equipment" for the Annex A components and parts "comprising of the same functionality" as the Annex A components.  (Id.)

- Thales Components: parts of Thales/AES Infringing Assemblies, expressly excluding (a) AES Components, and (b) components of IFE-Systems, which Lufthansa separately defined.  (Id.)

- Shipment: limited to those "by or on behalf of Thales," but otherwise remained similar to the prior definition, meaning it included shipments of Thales/AES Infringing Assemblies "or parts sold therewith…."  (Id.)

Thales opposed the April 2023 Application, arguing that the revised proposed subpoena was still redundant and unfocused.  (Dkt. 51.)  AES joined Thales's opposition.  (Dkt. 52.)  Lufthansa replied.  (Dkt. 53.)

**2.    Hearing on June 29, 2023.**

On June 29, 2023, the Magistrate Judge conducted another hearing.  (Dkt. 57; Dkt 65 (transcript).)

Lufthansa stated that its new term, "Thales/AES Infringing Assemblies," was meant to cover "basically the power supply … and the cables in the power supply and cables going out of the power supply."  (Id. at 9.)  Lufthansa stated its intent was to have Thales to produce a worksheet similar to the one attached to the June 2022 Letter, but "based on [a] revised AES parts list" and "going back to 2003."  (Id. at 8.)

The Magistrate Judge expressed concern that the subpoena remained overbroad, pointing out that, because "Shipment" was defined to include Thales/AES Infringing Assemblies "or parts sold therewith," it appeared to cover

shipments of IFE-System components as well, even though Lufthansa had
previously stated it was not interested in those.  (Id. at 13.)

The parties continued to disagree on which components were part of AES's
power system and which were part of Thales's IFE system.  (See id. at 24 (when
asked whether "a cable that connects the in-seat power system to the IFE system"
was "part of the in-seat power system," Lufthansa responded, "[I]t could
potentially be both or either … Because of the way damages are defined in
Germany, we think there's at least a good argument that those connective cables
are included"); id. at 36 (when asked if there are cables or connectors between the
IFE and the power supply about which the parties might reasonably disagree,
Thales responded, "Thales doesn't sell cables to anyone…. They would purchase
them and provide them in … part of the … IFE System").)  AES commented that
the new definitions were "creating confusion" because, once AES Components and
IFE System components were excluded, there appeared to be "nothing left" within
the definition of Thales Components.  (Id. at 42.)  The Magistrate Judge
summarized:

> [W]hat everyone is struggling with here is, if we credit Lufthansa for
> only trying to find discovery about Thales Components, how do we
> define that in an objective way that someone can actually go back and
> find information about that that is not completely repetitive of what
> was done before or overly broad, expanding into matters that can't
> possibly be relevant to the damages in the German litigation.
>
> … But as I look at these definitions, it just seems that they are crafted
> far more broadly and confusingly and don't really aim at getting to
> those .. connector power cords, and maybe part of it is that Lufthansa
> continues to think that there may be more things out there that they're
> not aware of…. [B]ut … after we've discuss this all quite a lot, no
> one seems to be able to come up with any example of how a Thales

16

Component would be incorporated into some infringing AES
assembly and not be part of the [IFE] system and still be, potentially,
subject to damages.  The one example anyone's been able to come up
with is this connecting power cord.

(Id. at 49-50.)

In addition the above discussion, Lufthansa also argued that, although
Thales's briefing asserted that the subpoena was overly burdensome, it had not
attached "a supporting declaration or any supporting evidence" of burden.  (Id. at
27.)

### 3.    Court's Supplemental Briefing Order with Working Definitions.

After the hearing, on July 10, 2023, the Magistrate Judge requested
supplemental briefing from Thales in support of its "burden" argument.  (Dkt. 58.)
The Court noted, "Per Lufthansa's arguments at the hearing, Lufthansa wants to …
obtain information only about THALES COMPONENTS.  Per the arguments of
Thales and AES, it is unclear how many THALES COMPONENTS exist and what
burden is associated with providing the requested information about them."  (Id. at
3.)  The Court asked Thales to respond to specific questions about these issues.
(Id.)

In that request, the Court re-wrote some of the definitions for terms defined
in the April 2023 Application, "consistent with the Court's understanding of
Lufthansa's intended meaning based on the [June 29, 2023] hearing."    (Id. at 2.)
The Court's re-written definitions can be summarized as follows:

- AES Component: limited to components listed on Annex A of the
  subpoena, excluding language about the "respective test equipment for
  such parts" and parts "comprising of the same functionality."  (Id.)

- IFE-System Component: for purposes of assessing burden, the parties
  were ordered to assess connecting cables or cords as follows: "if a cable,
  cord, connector, or other type of part directly connects an IFE-SYSTEM

17

COMPONENT to an infringing [110v[5]] power supply, then that
connecting part is ***not*** an IFE-SYSTEM COMPONENT." (Id.)

**4.      Supplemental Briefing Regarding Burden and New Decision by
German Court.**

a.      Thales Briefing About Burden.

Thales responded to the Court's order on August 10, 2023.  (Dkt. 60.)
Thales's response included sworn declarations from several of its employees:
Kevin Judd, Product Director and Senior Product Line Manager (Dkt. 60-1); John
Ray Sy Quimsiam, Director of  Aircraft Engineering (Dkt. 60-2); and Roboam
Solis, Inventory and Demand Optimization Manager (Dkt. 60-3).

Thales stated, "Applying the Court's definitions, the only apparent THALES
COMPONENTS would be certain cable assemblies, primarily linking the AES in-
seat power unit to electrical outlets." (Dkt. 60 at 2.)  Thales went on to explain that
it would have considered these assemblies part of the IFE system (and thus not
within the scope of the proposed subpoena) but for the Court's instruction that for
purposes of its response, "if a cable, cord, connector, or other type of part directly
connects an IFE-SYSTEM COMPONENT to an infringing [110v] power supply,
then that connecting part is not an IFE-SYSTEM COMPONENT." (Id. n.1.)

Thales explained that it had excluded cable assemblies that (a) did not draw
a 60 Hz power supply, as this was "the power supply needed for passengers to
power and charge their electrical devices"; (b) used DC power as opposed to AC
power; and (c) were "applications relying on the aircraft's power supply (as
opposed to relying on the AES in-seat power system's supply)." (Id. at 3.)  Thales
noted that "Thales'[s] seatback entertainment screens and the cable assemblies
supplying power to them"—presumably IFE Systems Components—were

---

[5] The order stated "100v" power supply instead of "110v," which appears to have
been a typographical error.

excluded because they "draw power from a DC (direct current) power supply."
(Id.)  In the April 2023 Application, Lufthansa had defined Thales Components as
any part of a Thales/Infringing Assembly, which was in turn defined as "providing
an [AC] power supply with 110V or more…."  (Dkt. 45 at 22 (April 2023
Application); Dkt. 58 at 2 (order for supplemental briefing).)

Between approximately 2008 and 2014, Thales stated, these cables were
sourced from AES, making them AES Components and therefore not Thales
Components (as defined in the order and the April 2023 Application); however,
between approximately 2014 and 2018, they were sourced from two other vendors
(Carlisle and Latecoere).  (Dkt. 60 at 3.)  Thales identified approximately 200 part
numbers for these later, non-AES cables shipped into Germany, explaining that a
new Thales part number was assigned "for each different length of the cable" and
"if they were sourced from different vendors."  (Id. at 2.)

Thales asserted that information for shipments prior to August 2015 was
"not readily accessible," because Thales had transitioned to a new database
platform.  (Id. at 5.)  However, Thales argued that information prior to this date
was largely irrelevant anyway because, as noted above, prior to 2014, "Thales
sourced the relevant cable assemblies from AES…."  (Id. at 4.)

Thales estimated that "constructing the appropriate [database] queries" to
respond to requests 1 and 3 of the proposed subpoena "would be an iterative
process likely requiring a week's worth of time of Thales IT staff."  (Id. at 6.)
Thales estimated that responding to requests 4, 5, and 6 of the proposed subpoena
would take an additional week and "requir[e] the diversion of engineers or
program managers to identify the potentially responsive documents," which could
not be identified using "a word search of a common database…."  (Id. at 6-7.)

b.    AES Briefing About New German Court Decision.

AES also moved to file a supplemental brief (Dkt. 61) which Court allowed
(Dkt. 62.)  In that brief, AES argued that a recent ruling by the German court made

the discovery sought no longer useful.  (Dkt. 63.)  AES asserted that the July 12, 2023 ruling by a German appellate court "specifie[d] and limit[ed] the peripheral parts that are relevant to Lufthansa's claims in Germany, the peripheral parts that AES must include in its accounting."  (Id. at 3)  AES filed a second declaration from its German counsel, Mr. Stoll, interpreting the decision.  (Dkt. 61-1 (Stoll Decl. dated 08/10/23).)

Lufthansa filed a reply addressing both August filings (Dkt. 68) and another declaration from Mr. Jaekel disputing Mr. Stoll's interpretation of the German proceedings (Dkt. 70-1 (Jaekel Decl. dated 08/30/23)).  Thales and AES both filed sur-replies (Dkt. 73, 74), and AES filed another declaration from Mr. Stoll (Dkt. 74-1 (Stoll Decl. dated 09/06/23)).

### 5.    Hearing on October 12, 2023.

In September 2023, Lufthansa requested another hearing (Dkt. 75) which the Court scheduled (Dkt. 76).  Lufthansa also filed a fifth declaration from Mr. Jaekel. (Dkt. 77 at 7 (Jaekel Decl. dated 09/20/23).)  AES filed a response to the Jaekel declaration (Dkt. 79), including a fourth declaration Mr. Stoll (Dkt. 79-1 (Stoll Decl. dated 10/06/23)).

On October 12, 2023, the Magistrate Judge held another hearing on the April 2023 Application.  (Dkt. 80; Dkt. 83 (transcript).)  Lufthansa and AES argued extensively over the effect of the July 12, 2023 decision from the German court of appeals.  (See, e.g., id. at 4-11, 15-16, 20-22.)

The Court asked Lufthansa whether it was still interested in cables connecting AES's power supply to Thales's IFE System, given that Thales's August 2023 briefing had primarily discussed cables linking the AES in-seat power unit to electrical outlets (rather than to the IFE System).  (Id. at 11.)  Lufthansa admitted that the "cables connecting the ISPS to the outlet unit" were "far more important," because Lufthansa could argue that they were "within AES's infringing system"; however, Lufthansa refused to "rul[e] … out" cables

connecting to the IFE System.  (Id. at 12-14; see also id. at 20-21.)

The Court asked Lufthansa if it wanted to proceed with the proposed subpoena as drafted, or if it wanted to revise the proposed subpoena in light of (1) the different definitions and (2) Thales's August 2023 response identifying specific cable assemblies.  (Id. at 36.)  The Court ultimately stated it would delay ruling on the April 2023 Application to give Lufthansa time to submit a proposed subpoena, if it desired.  (Id. at 45.)

**E.     The October 2023 Subpoena.**

On October 25, 2023, Lufthansa filed a Notice of Revised Subpoena. ("October 2023 Subpoena" at Dkt. 85.)  The October 2023 Subpoena largely adopted the Court's working definitions from the July 2023 supplemental briefing order.  However, the change Lufthansa did make was to introduce two new terms. "Thales Components" were now defined as specifically including (but not limited to) both "In-Seat-Cables" and "ISPS-to-IFE Cables."  (Id. at 8.)  These new terms were defined by referring Thales's supplemental brief, as follows:

- In-Seat-Cables: "cables, wires, cords and connectors, including extensions, connecting a 110V in-seat power supply with an outlet unit of the Thales/AES Infringing Assemblies, including, but not limited to, [a] the cables referenced in Annex A to Mr. Roboam Solis's declaration dated August 9, 2023 (Reference No. Case 8:22-mc-00034-JVS-KES, Dkt. No. 60-3 at pp. 4 f.) and [b] cable assemblies connecting the AES in-seat power system to outlets using raw wires (as identified on p. 3 of Thales's Response, Dkt. No. 60)."  (Id. at 8.)

- ISPS-to-IFE-Cables: "cables, wires, cords and connectors, including extensions, that connect a 110V in-seat power supply of a Thales/AES Infringing Assembly with an IFE-System Component."  (Id. at 9.)

Again, both AES and Thales filed oppositions.  (Dkt. 88, 89.)  Lufthansa replied.  (Dkt. 93, 94.)

21

1    **IV.**

2    **DISCUSSION**

3    **A.    <u>The Statutory Requirements of § 1782 Are Met.</u>**

4    The parties do not dispute that two of the three factors are satisfied.  Thales

5    resides in the Central District of California, and Lufthansa is an interested party in

6    the German litigation.  The parties dispute, however, whether the information

7    requested in the October 2023 Subpoena is really "for use" in the German

8    litigation.

9    **1.    Legal Standard.**

10    In <u>Intel</u>, the Supreme Court held that § 1782 does not "impose a blanket

11    foreign-discoverability rule," i.e., it does not "categorically bar a district court from

12    ordering a production of documents when the foreign tribunal or 'interested

13    person' would not be able to obtain the documents if they were located in the

14    foreign jurisdiction[.]"  542 U.S. at 259-60.  Additionally, a § 1782 application

15    need not "show that United States law would allow discovery in domestic litigation

16    analogous to the foreign proceeding."  <u>Id.</u> at 263.  However, a district court may

17    "consider whether the § 1782(a) request conceals an attempt to circumvent foreign

18    proof-gathering restrictions or other policies of a foreign country or the United

19    States," and that "unduly intrusive or burdensome requests may be rejected or

20    trimmed."  <u>Id.</u> at 265.

21    Some courts have held that a "request for discovery under § 1782 that is

22    ***plainly irrelevant*** to the foreign proceeding will fail to meet the statutory 'for use'

23    requirement[.]"  <u>In re Schlich</u>, 893 F.3d 40, 52 (1st Cir. 2018) (emphasis added);

24    <u>see also</u> <u>Mees v. Buiter</u>, 793 F.3d 291, 299 (2d Cir. 2015) (A "request that fails to

25    show that the materials sought will be of any use in the foreign proceeding would

26    not satisfy the 'for use' requirement.").  For example, in <u>Schlich</u>, the First Circuit

27    affirmed the district court's finding that "limitations on the [foreign tribunal's]

28    jurisdiction to consider inventorship" of the patent at issue, as opposed to

1  entitlement, "rendered [the discovery] irrelevant."  893 F.3d at 52.  Cf. Siemens

2  AG v. W. Digital Corp., No. 13-CV-01407-CAS, 2013 WL 5947973 at *3-4 (C.D.

3  Cal. Nov. 4, 2013) (partially denying § 1782 discovery related to damages,

4  allowing only discovery related to liability, because "German law bifurcates patent

5  infringement actions into a liability stage and a damages stage," and "require[s]

6  that a plaintiff prove liability before seeking damages discovery"; finding this was

7  a "'foreign proof-gathering restriction[]' contemplated by Intel").

8       The Second Circuit, in contrast, has held that the "discoverability of

9  requested material under foreign law is simply one factor that a district judge may

10  consider in the exercise of his or her discretion," and cautioned against litigation

11  become "a battle-by-affidavit of international legal experts, … result[ing] in …

12  'superficial' ruling[s] on" foreign law.  Euromepa S.A. v. R. Esmerian, Inc., 51

13  F.3d 1095, 1098-100 (2d Cir. 1995).  To avoid this, the Second Circuit has

14  instructed, "a district court's inquiry into the discoverability of requested materials

15  should consider only ***authoritative proof*** that a foreign tribunal would reject

16  evidence obtained with the aid of section 1782."  Id. at 1100 (emphasis added).

17       **2.    Analysis.**

18       The briefing on the April 2023 Application and October 2023 Subpoena

19  present exactly the "battle-by-affidavit" discussed in Euromepa.  Lufthansa and

20  AES have submitted multiple, opposing declarations from counsel representing

21  them in the German litigation.  (See Dkt. 1 at 20-51 (First Jaekel Decl. dated

22  12/30/22); Dkt. 22-1 (First Stoll Decl. dated 02/08/23); Dkt. 30 (Second Jaekel

23  Decl. dated 02/17/23); Dkt. 45 at 41 (Third Jaekel Decl. dated 04/21/23); Dkt. 61-1

24  (Second Stoll Decl. dated 08/10/23); Dkt. 70-1 (Fourth Jaekel Decl. dated

25  08/30/23); Dkt. 74-1 (Third Stoll Decl. dated 09/06/23); Dkt. 77 at 7 (Fifth Jaekel

26  Decl. dated 09/20/23); Dkt. 79-1 (Fourth Stoll Decl. dated 10/06/23); Dkt. 93

27  (Sixth Jaekel Decl. dated 03/22/24).)

28       Review of these declarations reveals that the German litigation involves

multiple cases in multiple courts—including multiple appeals—that began as early
as 2010.  Some of these proceedings relate to liability and some to damages.  The
proceedings are complex, dynamic, and ongoing.  The parties disagree about the
meaning and scope of many of the German courts' rulings, even going so far as
parsing the correct German-to-English translation of a single word in one of the
appellate decisions.  (See, e.g., Dkt. 74 at 6 (AES brief accusing Lufthansa's
counsel of offering a "misleading characterization of the German court's
judgment" and noting, "[a]s is made clear by [an attached] certified translation, the
use of the word 'namely' (German expression '*und zwar*') limits the scope of
AES's accounting obligations."); Dkt. 83 at 52 (argument at the 10/12/23 hearing:
"[AES's Counsel:] [The German court] use[s] the word 'namely,' and that doesn't
require, you know, a Ph.D. in English literature to know what namely means.  It's
a limit – limitation. … [Lufthansa's counsel:] Except we translated it differently
and translated [it] as ['in any case,['] and it's not exclusive.").  Whether the
discovery Lufthansa seeks in this § 1782 action would be relevant and admissible
in those proceedings is clearly a heavily disputed issue in both this proceeding and
in the German proceedings.

The record does not contain definitive proof that the discovery Lufthansa
seeks is plainly irrelevant or categorically inadmissible in the German proceedings.
It would be inappropriate for this Court to attempt to dive into the intricacies of
German law on these issues and/or offer a legal interpretation of the German
courts' decisions, particularly since the litigation remains ongoing.  The Court
finds that, for purposes of the October 2023 Subpoena, the "for use" factor is
satisfied.

**B.**    **Under the Discretionary Factors, the April 2023 Application Should be
Granted in Part and Denied in Part, Because the October 2023
Subpoena Is Unduly Burdensome.**

   **1.    Whether Discovery is Sought from a Participant in the Foreign
   Proceedings.**

   If the person from whom discovery is sought is a participant in the foreign
proceedings, then the need for § 1782 aid is not as readily apparent.  Intel Corp.,
542 U.S. at 264.  In that instance, the foreign tribunal would have jurisdiction over
those appearing before it and could itself order them to produce evidence.  Id.

   Thales is not a party to the German proceedings.  Thales has, however,
already provided extensive information intended to aid in the UK and German
proceedings in response to the 2019 subpoena.  Thales has also continued to
provide information voluntarily, such as the information attached to the June 2022
Letter.  This factor, therefore, weighs in favor of allowing the discovery, but not
strongly so.

   **2.    The Nature of the Foreign Tribunal and Character of the
   Proceedings.**

   Discovery in aid of foreign proceedings may be denied where it would not
serve due process and the interests of justice.  See, e.g., In re JSC United Chem.
Co. Uralchem, Civ. A. 20-3651, 2020 U.S. Dist. LEXIS 131492, at *19 (D.N.J.
July 24, 2020) (declining to authorize discovery in aid of Russian proceedings
where the proceedings were "subject to undue governmental influence").

   Here, the Court has no reason to doubt that the foreign proceedings comport
with notions of fairness and due process.

   **3.    Whether the Request Attempts to Circumvent Policies of a
   Foreign Country or the United States.**

   The parties' briefing identifies no German policy that would be defeated by
authorizing the proposed subpoena.

1    The only U.S. policy that the parties have identified is avoiding burdens on

2    non-parties to litigation, such as Thales.  See generally Fed. R. Civ. P. 45(d)(1) ("A

3    party or attorney responsible for issuing and serving a subpoena must take

4    reasonable steps to avoid imposing undue burden or expense on a person subject to

5    the subpoena.").  The Court considers this issue below, under the fourth Intel factor

6    of whether the request is unduly burdensome.

7        **4.    Whether the Request Is Unduly Burdensome.**

8        As noted above, the October 2023 Subpoena defines the term "Thales

9    Components" as specifically including "In-Seat Cables" and "ISPS-to-IFE

10   Cables."  (Dkt. 85 at 8.)  The Court considers the burden on Thales with regard to

11   each of these categories in turn.  For the reasons stated below, the definitions must

12   be modified to ensure that the October 2023 Subpoena does not pose an undue

13   burden on Thales.[6]

14        a.    In-Seat Cables.

15       The October 2023 Subpoena defines In-Seat Cables as including both parts

16   specifically identified by Thales, as well as "raw wires" that perform a similar

17   function.  (Dkt. 85 at 8.)

18       With regard to the approximately 200 parts identified in Thales's August

19   2023 briefing (see Dkt. 60-2 at 4 ¶ 20 (Sy Quimsiam Decl.); id. at 7-8 (Ex. 1 listing

20   the parts)), the October 2023 Subpoena is not unduly burdensome, particularly

21   with the cost-sharing measures discussed below in section IV.C.  However, the

22   definition shall be limited to the parts already identified by Thales.  Lufthansa has

23   not given the Court any reason to believe that other parts exist, and requiring

24   Thales to do another search for responsive parts would be unduly burdensome.

25   The definition of Thales Components shall therefore be modified to mean only In-

26   Seat Cables.

27   
─────────────────

28   [6] A redline version of the proposed subpoena is attached to this R&R as Exhibit A.

With regard to the "raw wires," Thales has sufficiently shown that

Lufthansa's requests are unduly burdensome.  These wires were first mentioned in

Thales's August 2023 briefing about burden, in which Thales noted:

> There are potentially other responsive cable assemblies, including
>
> cable assemblies connecting the AES in-seat power system to outlets
>
> using ***raw wire*** not standardly used by Thales or described/
>
> categorized incorrectly during the cable's development. … However,
>
> identifying these examples is not possible based on a categorical
>
> basis and would likely require identification of every customer
>
> program incorporating an AES in-seat power system during the
>
> relevant time period and then design review of the specific
>
> documents for each potentially relevant application to make a
>
> determination as to whether or not the cable assembly constituted a
>
> THALES COMPONENT.

(Dkt. 60 at 3 (citing Sy Quimsiam Decl. at ¶ 21) (emphasis added).)  Lufthansa

submitted a declaration from its German counsel, Gerd Jaekel, proposing that

Thales look for the wires by referencing its prior productions and using a "filtering

process" that Mr. Jaekel characterizes as "straightforward" and "done

electronically within minutes…."  (Dkt. 69-2 at 13 ¶ 25 (Jaekel Decl. dated

08/30/23).)  However, as Thales points out, nothing in the declaration establishes

that Mr. Jaekel has personal knowledge of Thales's record-keeping systems or is

more qualified than Thales's declarant, Thales's Director of Aircraft Engineering,

to opine on these subjects.  (<u>See</u> Dkt. 73 (Thales's reply).)

Accordingly, the proposed subpoena should be modified by striking the

language referring to "raw wires" from the definition of "In-Seat Cables."

          b.    <u>ISPS-to-IFE Cables.</u>

The October 2023 Subpoena defines "ISPS-to-IFE Cables" as "cables, wires,

cords and connectors, including extensions, that connect a 110V in-seat power

supply of a Thales/AES Infringing Assembly with an IFE-System Component."
(Dkt. 85 at 9.)[7]  Because ISPS-to-IFE Cables are defined as one type of "Thales
Component," the definition of that term is also relevant.  A Thales Component is
defined "any part of Thales/AES Infringing Assemblies," which are in turn defined
as assemblies that "provid[e] an alternating current ["AC"] supply with 110V or
more…."  (Id. at 8.)

Thales has not identified any parts that fit within Lufthansa's definition of
ISPS-to-IFE Cables.  This appears to be because, pursuant to the above definitions,
Thales's August 2023 search excluded "DC and 100MHz applications," as well as
"applications relying on the aircraft's power supply (as opposed to those relying on
the AES in-seat power system's supply)."  (Dkt. 60 at 3.)  This appears to have
resulted in the exclusion of many parts of the IFE System because, as Thales
explained, "Thales['s] seatback entertainment screens and cable assemblies
supplying power to them draw power from a DC (direct current) power supply, not
from an AC power supply[,]" and the "wireless internet system draws its power
from a cabin distribution power supply or directly from aircraft power in the
aircraft power panel, not from an AES in-seat power supply system."  (Id.; see also
Dkt. 62-2 at ¶ 16 (Sy Quimsiam Decl.).)

At the October 2023 hearing, the Court asked Lufthansa's counsel whether it
was still interested in ISPS-to-IFE Cables; Lufthansa's counsel admitted that
Thales had not identified any and stated, "[W]e're not ruling those out, but they're
not the main focus."  (Dkt. 83 at 12-13.)  Lufthansa's counsel stated that the In-
Seat Cables were "far more important" (id. at 14), because they are "within AES's
infringing system" (id. at 12).[8]

---

[7] IFE-System Components themselves are excluded from the definition of "Thales
Components."  (Dkt. 85 at 8.)

[8] Although the Court is not attempting to resolve definitively the parties' dispute
about what evidence is relevant in the German litigation, for the reasons discussed

The Court pointed out that it appeared Thales had not identified any ISPS-
to-IFE Cables because of the definitional limitations, e.g., excluding parts that used
DC power.  (Id. at 39.)  The Court asked Lufthansa's counsel if it "agreed that if
there's a part that works with [DC], that it can't be part of an infringing system
because the infringing systems are based on" AC power.  (Id. at 46.)  Lufthansa's
counsel responded that there were "parts that run on [DC] that are part of the
infringing system," such as "the in-use lights."  (Id. at 46.)  Lufthansa's counsel
asked Thales's counsel whether there were "cables that connect the IFE to the in-
seat power supply that wouldn't satisfy the definition[.]"  (Id. at 49.)  Thales's
counsel responded that he did not know, because Thales had simply used the
definitions provided.  (Id. at 49.)  Lufthansa's counsel stated that "these criteria
would probably cover a cable connecting this power supply to the IFE," but that he
would talk to his client about that issue.  (Id.)

Lufthansa later submitted the October 2023 Subpoena without changing the
definitions' references to AC or 110V power.  (Dkt. 85.)  Lufthansa's subsequent
briefing does not suggest any other way of identifying parts that would fit into its
definition of ISPS-to-IFE Cables.  (See Dkt. 93, 94.)  Requiring Thales to again
search for parts responsive to this definition would be unduly burdensome.

Accordingly, the proposed subpoena should be modified by striking the
language about ISPS-to-IFE Cables.

c.      Other Thales Components.

The October 2023 Subpoena defines "Thales Components" as "any part of
Thales/AES Infringing Assemblies, but excluding any part that is (1) an AES

---

above in Section IV.A., the parties appear to agree that the In-Seat Cables'
potential relevance is stronger than the ISPS-to-IFE Cables', because the former
cables are more arguably part of the "core components" of AES's infringing power
system.  Throughout this case, Lufthansa has taken the position that IFE
Components are not part of that infringing system.

Component; or (2) an IFE-System Component.  In-Seat Cables and ISPS-to-IFE Cables … both qualify as 'Thales Components'…."  (Dkt. 85 at 8.)

To the extent this definition could be interpreted as requiring Thales to search for Thales Components that are not In-Seat Cables or ISPS-to-IFE Cables, this request is unduly burdensome.  Despite the lengthy procedural history of this case, including many hearings and rounds of briefing, Lufthansa has not offered any reason to think that there are Thales Components beyond these two categories. Requiring Thales to do another search for additional Thales Components would be unduly burdensome.

Accordingly, the proposed subpoena's definition of "Thales Components" should be modified to include only In-Seat Cables and exclude AES Components and IFE-System Components.

### d.    Time Period.

In its August 2023 briefing regarding burden, Thales stated, "Information for shipments prior to approximately August 2015 is not readily accessible to Thales," because around that time, "Thales transitioned from the [Manage 2000 or] M2K database platform to its current SAP platform."  (Dkt. 60 at 5; Dkt. 60-3 ¶ 5 (Solis Decl.); see also Dkt. 1 at 53 (June 2022 Letter from Thales, stating that Thales "decline[d] to produce information prior to August 1, 2015" because it "migrated its database to a new platform in the summer of 2015").)  Thales's declaration from Mr. Solis, Inventory and Demand Optimization Manager, states that he and three other employees have "some experience working with the M2K database," but that due to the lapse of almost 10 years, they would have to "re-learn[] how to use M2K generally and regain familiarity with the underlying data tables, relearn how they were used in Thales's M2K database, and research what peculiar limitations the inputted data might have."  (Dkt. 60-3 ¶¶ 6-7 (Solis Decl.).)  Mr. Solis notes, "Even an outside vendor who was an M2K expert would have the same challenge of learning the specifics of Thales's M2K database."  (Id. at ¶ 6.)  Although

Lufthansa submitted a competing declaration from Mr. Jaekel asserting that "extracting such data from the M2K system should not be difficult" (Dkt. 69 at 25-26 ¶ 42 (Jaekel Decl. dated 08/30/23)), that declaration is unpersuasive, because it does not establish Mr. Jaekel's personal knowledge of M2K systems in general or Thales's M2K system in particular.

Additionally, Thales's declaration from Mr. Sy Quimsiam, Director of Aircraft Engineering, explains that, prior to 2014, Thales purchased the In-Seat Cables from AES. (Dkt. 60-2 at 3 ¶ 15 (Sy Quimsiam Decl.).) Lufthansa has not explained why it cannot get information about these pre-2014 In-Seat Cables from AES, who is a party to the actions in Germany, rather than seeking the information from Thales, a non-party, via subpoena.

Accordingly, the October 2023 Subpoena should be modified to limit the requests to information dated after August 1, 2015.

> e.      Rule 30(b)(6) Deposition Notice.

The October 2023 Subpoena includes a notice for a Rule 30(b)(6) deposition with a Thales representative knowledgeable about (1) the "sales of Thales Components … to Germany, including the purchase information for such components"; (2) the "incorporation of Thales Components … with AES Components in a Thales/AES Infringing Assembly in Germany"; and (3) the "interactions and joint efforts between Thales and AES regarding the incorporation of Thales Components into Thales/AES Infringing Assemblies in Germany." (Dkt. 85 at 11.)

This deposition request has not been extensively discussed in the parties' briefing. In the April 2023 Application, Lufthansa stated the deposition was needed "to determine the precise universe of documents that could be implicated by the subpoena before the parties engage in the document production process." (Dkt. 45 at 15-16 ¶¶ 41, 45.) However, due to the parties' extensive briefing and hearings since then—in particular Thales's August 2023 investigation that led to

Thales identifying the approximately 200 In-Seat Cables—the universe of documents implicated by the subpoena has already been sufficiently defined. Lufthansa has not shown that a Rule 30(b)(6) deposition is needed at this time, and the Court finds that ordering one would be unduly burdensome on Thales.

Accordingly, the language noticing this deposition should be struck from the October 2023 Subpoena.

## C.    Cost-Shifting Under FRCP 45 is Appropriate.

### 1.    Legal Standard.

"District courts may allocate the expenses of a non-party's compliance with subpoenas served pursuant to § 1782." In re Alpine Partners, (BVI) L.P., 635 F. Supp. 3d 900, 915 (N.D. Cal. 2022). "In determining the appropriate allocation, the Court may look to cases that decided similar issues under Federal Rule of Civil Procedure 45." Id.; see also Kwong Mei Lan Mirana v. Battery Tai-Shing Corp., No. 08-mc-80142, 2009 WL 290459 at *3 (N.D. Cal. Feb. 5, 2009) (declining to shift costs because respondents had not submitted sufficient evidence, but noting they were "not foreclosed from requesting by motion reimbursement in the event that significant costs are incurred in complying with the subpoenas"); In re Kingstown Partners Master Ltd., No. 21-mc-691, 2022 WL 1081333 at *7 (S.D.N.Y. Apr. 8, 2022) ("an obligation on the part of Kingstown to bear one-half of each Respondent's costs incurred from this date forward will strike an appropriate balance between the liberal discovery frameworks of section 1782 and Rule 26 and the need to protect third parties from incurring undue burden and expense").

Federal Rule of Civil Procedure 45(d)(2)(B)(ii) states that, "when a court orders compliance with a subpoena over an objection, 'the order must protect a person who is neither a party nor a party's officer from *significant expense* resulting from compliance.'" Legal Voice v. Stormans Inc., 738 F.3d 1178, 1184 (9th Cir. 2013) (emphasis added; quoting Rule 45(d)(2)(B)(ii)). The rule is

"mandatory" and "requires the district court to shift a non-party's costs of
compliance with a subpoena, if those costs are significant." Id.  "Thus, when
discovery is ordered against a non-party, the only question before the court in
considering whether to shift costs is whether the subpoena imposes significant
expense on the non-party.  If so, the district court must order the party seeking
discovery to bear at least enough of the cost of compliance to render the remainder
'non-significant.'" Id.

"[T]he analysis is not mechanical; neither the Federal Rules nor the Ninth
Circuit has defined 'significant expenses,' which is a term that readily lends itself
to myriad interpretations depending on the circumstances of a particular case."
United States v. McGraw-Hill Companies, Inc., 302 F.R.D. 532, 536 (C.D. Cal.
2014).  For example, courts may "consider the ability of the producing non-party to
bear the costs of production," since "an expense might be 'significant' … to a
small family-run business, while being 'insignificant' to a global financial
institution." Id.  Courts may also consider "whether the nonparty has an interest in
the outcome of the underlying case." Alpine Partners, 635 F. Supp. 3d at 915.

## 2.    Analysis.

As discussed above in Section IV.B.4., the Magistrate Judge is
recommending that the October 2023 Subpoena be amended to limit it to
(a) information about Thales Components, defined as In-Seat Cables only,
(b) information about sales after August 1, 2015, and (c) document production
only, rather than a Rule 30(b)(6) deposition.

The proposed subpoena contains five document requests about the Thales
Components, including information about purchases and shipments (request nos. 1-
and 3),[9] as well as information about the design, installation, and maintenance of

---

[9] Request no. 2 seeks "documents … sufficient to show part numbers and part
descriptions for Thales Components…."  (Dkt. 85 at 10.)  Thales has functionally

33

those components (request nos. 4-6).  Thales's August 2023 briefing sufficiently demonstrates that responding to these requests would impose a significant expense.

Regarding the burden of providing database reports responsive to request nos. 1 through 3, Thales states that "constructing the appropriate queries would be an iterative process likely requiring a week's worth of time of Thales IT staff," noting that "Thales does not prepare such reports in the ordinary course of business."  (Dkt. 60 at 6 (citing Solis Decl. ¶ 10).)  Regarding providing documents sufficient to show the technical data described in Requests 4, 5, and 6, Thales's Director of Aircraft Engineer Mr. Sy Quimsiam describes the burden as follows:

> I know of no reasonably efficient way to identify the documents…. A significant challenge is that it would require some level of design or project management expertise to review documents to determine whether a given document provides the information requested.
>
> [¶] In addition, documents that might contain the information are not stored in a manner that facilitates such a search.  There is no word-searchable central database of these documents.
>
> [¶] I believe the task would require first identifying the potentially relevant customer programs, then analyzing the design documents to determine which specific applications are at issue, then attempting to identify what documents or combination of documents in the categories specified in the Requests provides the requested information.  Only select program managers and engineers would be able to review the design drawings to identify the specific parts in relation to the drawings.  Thus, this document review process cannot be easily automated or done by someone who does not have the relevant expertise.  Attempting to gather the documents requested

already responded to request no. 2 by submitting the August 2023 briefing.

34

could require up to a week per program for Thales design and project
management professionals.

(Dkt. 60-2 at 5 ¶ 22 (Sy Quimsiam Decl.).)

As discussed above, the Court has discretion to shift costs to avoid imposing
a "significant" expense on a non-party. Although what is "significant" is not well-
defined, it can be informed by the parties' prior conduct and expenses. Thales has
already expended a significant amount of time and effort in producing discovery in
the 2019 Case, without any cost-shifting. The present case has involved lengthy
briefing and multiple hearings before the Magistrate Judge, largely because
Lufthansa refused to draft appropriate definitions and required the Court to modify
them. Requiring Thales to respond to the present subpoena, even as modified by
this R&R, would impose a significant expense.

Additionally, Lufthansa claims that "millions of dollars in damages for the
infringing systems hang in balance for Lufthansa based on the requested
information." (Dkt. 77 at 14 ¶ 17 (Jaekel Decl. dated 09/20/23).) If that is the
case, it is even more equitable for Lufthansa to bear some of the costs of obtaining
the requested information.

At present, it is unclear what the precise monetary amount of complying
with the subpoena would be, given that (a) the Court has changed and narrowed
some of the definitions, and (b) Thales's briefing about burden discussed employee
time and resources rather than monetary amounts. However, Lufthansa should
bear 50% of Thales's reasonable costs in complying with the revised subpoena.
Requiring Lufthansa and Thales to bear the costs equally will incentivize both
parties to behave reasonably, neither demanding more than what is truly useful nor
expending excessive time to find and produce documents. This matter should be
referred back to the Magistrate Judge to determine an appropriate amount of cost-
shifting in the event Lufthansa and Thales cannot agree on a reasonable amount.

# V.

## CONCLUSION

IT IS THEREFORE RECOMMENDED that the District Court issue an Order: (1) approving and accepting this R&R; (2) granting in part and denying in part Lufthansa's application (Dkt. 45); (3) authorizing Lufthansa to issue the subpoena modified by the Court and attached to this R&R in redline form as Exhibit A, with a 60-day deadline for compliance[10]; (4) finding that Lufthansa and Thales should each bear 50% of the reasonable costs of complying with the subpoena; and (5) referring the amount of cost-shifting back to the Magistrate Judge to decide as a non-dispositive, pretrial matter under 28 U.S.C. § 636(b)(1).

DATED:  August 2, 2024                    _Karen E. Scott_
                                          KAREN E. SCOTT
                                          UNITED STATES MAGISTRATE JUDGE

## **NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals but are subject to the right of any party to timely file objections as provided in the Federal Rules of Civil Procedure and the instructions attached to this Report.  This Report and any objections will be reviewed by the District Judge whose initials appear in the case docket number.

---

[10] This would not prevent the parties from stipulating to reasonable extensions of time.  Additionally, if Lufthansa appeals any order ruling on this R&R, Thales's obligation to respond should be stayed.

# EXHIBIT A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | | |
|---|---|---|
| Lufthansa Technik AG | ) | |
| *Plaintiff* | ) | Civil Action No.   8:22-mc-00034-JVS-KES |
| v. | ) | |
| Thales Avionics, Inc. | ) | |
| | ) | |
| *Defendant* | ) | |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                    Thales Avionics, Inc.
_____

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:See Attached List.

| Place: | Date and Time: |
|---|---|
| | |
| | |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _____

                    *CLERK OF COURT*
                                                          OR
         _____          _____
            *Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
_____ , who issues or requests this subpoena, are:

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   8:22-mc-00034-JVS-KES

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**Exhibit A to Subpoena Directed to Thales**

**Definitions**

"Thales" or "You" shall mean Thales Avionics Inc., located at 58 Discovery, Irvine, CA 92618, and all predecessors, successors in interest, assignees; and all directors, officers, employees, agents, representatives, and/or partners of the aforementioned entity.

"Astronics" or "AES" shall mean Astronics Advanced Electronic Systems, located at 12950 Willows Road, NE, Kirkland, WA 98034, and all predecessors, successors in interest, assignees; and all directors, officers, employees, agents, representatives, and/or partners of the aforementioned entity.

"Document(s)" shall be defined to the fullest extent permitted by Federal Rule Civil Procedure 34 and case law interpreting it.

The words "and," "or" and "and/or" shall be construed conjunctively or disjunctively as is necessary to make the request inclusive rather than exclusive.

"Thales/AES Infringing Assemblies" shall mean any assemblies or parts thereof sold, offered for sale, imported, owned, or brought into circulation by Thales ~~until~~ between August 1, 2015 and May 21, 2018 providing an alternating current supply with 110V or more that incorporate one or more AES Components.

"Thales Components" shall mean ~~any part of Thales/AES Infringing Assemblies, but excluding any part that is (1) an AES Component; or (2) an IFE-System Component.~~ In-Seat-Cables ~~and ISPS to IFE Cables~~, as defined below, ~~both qualify as "Thales Components" under the meaning of this Subpoena.~~ and shall exclude AES Components and IFE-System Components.

"AES Components" shall mean any part (1) sold, offered for sale, imported, owned, or brought into circulation by AES ~~until~~ between August 1, 2015 and May 21, 2018; and (2) listed on the parts list attached to the Subpoena as Annex A.

"IFE-System Components" shall mean in-flight entertainment systems, or parts thereof, available to aircraft passengers during a flight and includes any product, system, equipment, software, services, and support services related thereto, for entertainment, passenger information, passenger communication and monitoring purposes and designed for use by passengers onboard an aircraft, e.g. screens, audio and video cables, and entertainment storage devices.  If a cable, cord, connector, or other type of part directly connects an IFE-System Component to a 110V power supply, then that connecting part is not an IFE-System Component.

"In-Seat-Cables" means ~~cables, wires, cords and connectors, including extensions, connecting a 110V in-seat power supply with an outlet unit of the Thales/AES Infringing Assemblies, including, but not limited to,~~ the cables referenced in Annex A to Mr. Roboam Solis's declaration dated August 9, 2023 (Reference No. Case 8:22-mc-00034-JVS-KES, Dkt. No. 60-3 at pp. 4 f.) ~~and cable assemblies connecting the AES in-seat power system to outlets using raw wires (as identified on p. 3 of Thales's Response, Dkt. No. 60)~~.

~~"ISPS-to-IFE-Cables" means cables, wires, cords and connectors, including extensions, that connect a 110V in-seat power supply of a Thales/AES Infringing Assembly with an IFE System Component.~~

"Incorporate" shall mean the inclusion or installation of components as part of a system.

"Shipment" shall mean each sale or shipment, including direct shipments or indirect shipments by or on behalf of Thales of Thales/AES Infringing Assemblies ~~or parts thereof, or parts sold therewith~~, to a location in Germany or intended for the installation in a passenger seat by German seat vendors or on an aircraft finally assembled in Germany, such as the Airbus A380.

"German Seat Vendor" shall mean a seat vendor having a place of business or manufacturing site in Germany, such as Recaro Aircraft Seating GmbH & Co. KG and ZIM Flugsitz GmbH, including its predecessors and successors.

**Instructions**

Thales is requested to produce Documents in the following categories that are in Thales's possession, custody, or control, in their entirety and without redaction or expurgation. "Possession, custody, or control" shall be construed to the fullest extent provided under Federal Rules of Civil Procedure 34 and 45 and shall include those Documents within the United States that Thales has the ability to demand or to gain access to in the ordinary course of business, including from or through its parent(s) and/or subsidiary/ies.

If any Document is withheld based upon a claim of privilege or other protection, provide for each such Document: (i) the date of the Document, (ii) the names of all authors, (iii) the names of all recipients, (iv) the names of all cc and/or bcc recipients, (v) the type of Document, (vi) a description of the Document (vii) an identification of the privilege or protection claimed and (viii) a brief explanation of the basis of your claim of privilege or other protection.

Documents shall not be withheld on the grounds that they contain highly sensitive or confidential information, but instead shall be designated in accordance with the terms of the protective order entered by the Court.

Requests for documents may be limited as to responsive documents regarding installation in Germany, or documents that are otherwise responsive, from ~~December 26, 2003~~ August 1, 2015 to May 22, 2018, excluding documents Thales has produced to Lufthansa under the subpoena dated July 8, 2019 or in its June 1, 2022 letter to AES (Reference No. 311 cs 145628. 000019, #2128947).

**Documents Requested**

1.    Documents, including but not limited to purchase orders, invoices, shipping documents or offers, sufficient to show, for each year since the first Shipments of Thales Components and for each subsequent Shipment, the order class, the sales code, the sales order line, the customer information, such as the customer number, the name, the city and country code, date added, customer due date, actual shipment date, customer purchase order number, Fac code, part number, part description, quantity of units, unit price, extended price, comp flag, ship-

to address, including the ship-to name, city and country code, program number, aircraft type that the part would be installed on, freight carrier, bill of lading, tail number of the aircraft that the parts would be installed on, shipment instructions, the modification level, batch number, whether it was a retrofit or a linefit.

2.    Documents, including but not limited to parts lists, cross reference documents, sufficient to show part numbers and part descriptions for Thales Components and the respective alternative part numbers for Thales Components that Thales used vis-à-vis AES, its customers, seat vendors or aircraft manufactures.

3.    Documents, including but not limited to purchase orders, invoices, shipping documents or offers, sufficient to show, for each year since the first purchases, for each purchase or receipt of Thales Components that were subsequently sold or Shipped according to Request no. 1, the vendor number, vendor name, vendor invoice number and invoice date, purchase order number, line number, packaging slip number, date received, quantity received, purchase order line unit price or manufacturing cost, purchase order line extended price or other compensation, disposition reference, part description and part class, the modification level and batch number.

Instead of Documents, Thales may provide comprehensive, electronically prepared Excel spreadsheets in response to requests 1 to 3.

4.    Documents, including but not limited to component maintenance manuals, data sheets, declarations of design and performance, equipment specifications, system description documents, cable plans, wiring diagrams, technical drawings sufficient to show how the Thales Components pursuant to Request no. 1 ~~can be~~ were Incorporated in a Thales/AES Infringing Assembly.

5.    Documents, including but not limited to initial technical coordination minutes, preliminary design reviews, critical design reviews, first article inspection minutes and system review documents, schedules, such as delivery schedules, shipment schedules or milestone confirmations, or plans, such as electric system architecture plans, cable plans and cable routing plans, sufficient to show for each Thales Component pursuant to request no. 1 how the Thales Components were Incorporated into the Thales/AES Infringing Assembly in Germany, including by Thales, Thales' customers, seat vendors, German Seat Vendors or the aircraft manufacturer or Thales' line support at Airbus's final assembly line in Hamburg, Germany.

6.    Documents, including but not limited to initial technical coordination minutes, preliminary design reviews, critical design reviews, first article inspection minutes and system review documents, schedules, such as delivery schedules, shipment schedules or milestone confirmations, plans, such as electric system architecture plans, cable plans and cable routing plans, training materials, such as PowerPoint presentations, or technical documents, such as component maintenance manuals, user manuals or repair manuals, sufficient to show AES's interactions with Thales to Incorporate the Thales Components as part of the Thales/AES Infringing Assembly in Germany, including the interaction at AES's and Thales' line fit support at Airbus's final assembly line in Hamburg, Germany or AES's at the customers, seat vendors or aircraft manufactures in Germany.

**Rule 30(b)(6) Deposition Notice**

PLEASE TAKE NOTICE that, Petitioner Lufthansa Technik, AG ("Lufthansa"), pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, will take the deposition of Thales Avionics, Inc. ("Thales") on the topics listed herein. The deposition will take place in person at a place and time to be determined by the parties. The deposition will be taken upon oral examination before a public notary or other person authorized by law to administer oaths. The deposition may be used for discovery, at the trial of this action, or for any other purposes permitted by the Federal Rules of Civil Procedure.

Please designate a deponent or deponents knowledgeable about each of the following topics to testify on Thales' behalf:

1.    The sales of Thales Components as defined above, to Germany including the purchase information for such components.

2.    The incorporation of Thales Components as defined above, with AES Components in a Thales/AES Infringing Assembly in Germany.

3.    The interactions and joint efforts between Thales and AES regarding the incorporation of Thales Components into Thales/AES Infringing Assemblies in Germany.

\* \* \*

Annex A

Part Number

129986; 131581; 131585; 1067844; 1067845; 1067846; 1068855; 1068856; 1068857; 1174801; 1174802; 1174805; 1174812; 1174813; 1174814; 1191805; 1191806; 1191842; 1191847; 1191848; 1191849; 1191853; 1191854; 1191855; 1191871; 1191885; 1191886; 1191887; 1191892; 1191894; 1191899; 1248802; 1248807; 1248813; 1248868; 1248878; 1248879; 1248880; 1248882; 1248883; 1248884; 1248886; 1248887; 1284805; 1291809; 1295829; 1299801; 1299802; 1299804; 1299811; 1299816; 1299820; 1299821; 1299829; 1299830; 1299831; 1299853; 1299858; 1299859; 1299866; 1299867; 1299868; 1299869; 1299875; 1299876; 1299882; 1299886; 1299890; 1299892; 1301804; 1301805; 1301812; 1301813; 1301814; 1301817; 1301829; 1301842; 1301843; 1301844; 1301865; 1301868; 1301869; 1301875; 1301877; 1315811; 1315821; 1315822; 1315823; 1315824; 1315847; 1315851; 1315854; 1315879; 1315883; 12998026; 1067-1; 1067-2; 1067510-1; 1067511-1; 1067801-; 1067802-; 1067806-1-10; 1067806-1-15; 1067806-1-20; 1067806-1-25; 1067806-1-30; 1067806-1-35; 1067806-1-40; 1067806-1-45; 1067806-1-50; 1067806-1-55; 1067806-1-60; 1067807-; 1067809-; 1067810-; 1067814-1-; 1067814-10-; 1067814-2-; 1067814-22-; 1067814-4-; 1067816-; 1067817-; 1067819-; 1067820-; 1067821-; 1067822-; 1067823-; 1067824-; 1067825-; 1067826-; 1067827-; 1067828-; 1067829-; 1067830-; 1067831-; 1067832-; 1067833-; 1067834-; 1067835-; 1067836-; 1067837-; 1067838-; 1067839-; 1067840-; 1067841-; 1067842-; 1067843-; 1067847-; 1067848-; 1067850-; 1067851-; 1067852-; 1068105-; 1068802-; 1068803-; 1068804-; 1068807-; 1068808-; 1068809-; 1068810-; 1068811-; 1068813-; 1068814-; 1068816-; 1068817-; 1068823-; 1068824-; 1068825-; 1068826-; 1068828-; 1068830-; 1068831-; 1068832-; 1068833-; 1068834-; 1068835-; 1068836-; 1068837-; 1068838-; 1068839-; 1068841-; 1068842-; 1068843-; 1068844-; 1068845-; 1068846-; 1068847-; 1068848-; 1068849-; 1068850-; 1068851-; 1068852-; 1068853-; 1068854-; 1068861-; 1068862-; 1068863-; 1068864-; 1068867-; 1068868-; 1068869-; 1068870-; 1068872-; 1068873-; 1068876-; 1068877-; 1068878-; 1068879-; 1068880-; 1068881-; 1089-3-1B; 1089-6-1B; 1091101-2; 1091101-2-1; 1091101-2-2; 1091101-5-1; 1091101-5-2; 1091101-6-1; 1091101-6-2; 1091101-8; 1091101-8-1; 1091101-8-2; 1091102-2; 1091102-2-1; 1091102-2-2; 1091102-2-3; 1091102-5-1; 1091102-5-2; 1091102-5-3; 1091102-6-1; 1091102-6-2; 1091102-6-3; 1091102-8; 1091102-8-1; 1091102-8-2; 1091102-8-3; 1091-2-1B; 1091-2-3B; 1091-2-7; 1091-2-8; 1091-2-9; 1091-3-1; 1091-4-1; 1091-4-10; 1091-4-2; 1091-4-3; 1091-4-4; 1091-8; 1100-1; 1100-2; 1100712-0001; 1100712-0002; 1100712-0003; 1100712-0005; 1100712-0006; 1100712-0007; 1100712-0008; 1100712-0009; 1100712-0010; 1100712-0011; 1100712-0012; 1100712-0013; 1100712-0015; 1100712-0016; 1100712-0017; 1100713-0001; 1100713-0002; 1100713-0003; 1100713-0005; 1100713-0006; 1100713-0007; 1100713-0008; 1100713-0009; 1100713-0010; 1100713-0011; 1100713-0012; 1100713-0013; 1100713-0015; 1100713-0016; 1100801-; 1100802-; 1100803-; 1100804-; 1100805-; 1100806-; 1100807-; 1100808-; 1100809-; 1100810-; 1100811-; 1121401-2; 1140101-6; 1140102-10; 1140103-10; 1140105-10; 1140106-10; 1140111-6; 1140800-1; 1140801-1; 1140802-1; 1140804-1; 1140805-1; 1140806-1; 1140807-1; 115NT000-101; 115NT000-102; 115NT000-111; 115NT000-113; 115NT000-114; 115NT000-115; 115NT000-116; 115NT000-117; 115NT000-201; 115NT000-202; 115NT000-203; 115NT000-204; 115NT000-211; 115NT000-213; 115NT000-214; 115NT000-215; 115NT000-216; 115NT000-217; 1170-1; 1170801-; 1170802-; 1170803-; 1170804-; 1170805-; 1170807-; 1170808-; 1170809-; 1170810-; 1170811-; 1170812-; 1170813-; 1170814-; 1170815-; 1170816-; 1170817-; 1170818-; 1170819-; 1170820-; 1170821-; 1170822-; 1170823-; 1170824-; 1170825-; 1170826-; 1170827-; 1170828-; 1171-1-; 1171-2-; 1172-1; 1172-2; 1172-3; 1172-4; 1172-5; 1172-6; 1174-1; 1174-2; 1174815-; 1175101-1; 1175102-1; 1175103-1; 1175104-1; 1175105-1; 1175106-1; 1175107-1; 1175108-1; 1175109-1; 1175110-1; 1175801-; 1175802-; 1175803-; 1175804-; 1175806-; 1175807-; 1175809-; 1175810-; 1175811-; 1175812-; 1175813-; 1175814-; 1175815-; 1175816-; 1175817-; 1175820-; 1175821-; 1175822-; 1175823-; 1175824-; 1175825-; 1175826-; 1175827-; 1175828-; 1176-1; 1176305-1; 1176701-001; 1176701-002; 1176701-003; 1176701-004; 1176701-005; 1176701-006; 1176701-007; 1176701-008; 1176701-009; 1176701-010; 1176701-011; 1176701-012; 1176701-013; 1176701-014; 1176701-015; 1176701-016; 1176701-017; 1176701-018; 1176701-019; 1176701-020; 1176701-021; 1176701-022; 1176701-023; 1176701-024; 1176701-025; 1176701-026; 1176701-027; 1176701-028; 1176701-029; 1176701-030; 1176701-031; 1176701-032; 1176701-033; 1176701-034; 1176701-035; 1176701-036; 1176701-037; 1176701-038; 1176701-039; 1176701-040; 1176701-041; 1176701-042; 1176701-043; 1176701-044; 1176701-045; 1176701-046; 1176701-047; 1176701-048; 1176701-049; 1176701-050; 1176701-051; 1176701-052; 1176701-053; 1176701-054; 1176701-055; 1176701-056; 1176701-057; 1176701-058; 1176701-059; 1176701-060; 1176701-061; 1176701-062; 1176701-063; 1176701-064; 1176701-065; 1176701-066; 1176701-067; 1176701-068; 1176701-069; 1176701-070; 1176701-071; 1176701-072; 1176701-073; 1176701-074; 1176701-075; 1176701-076; 1176701-077; 1176701-078; 1176701-079; 1176701-080; 1176701-081; 1176701-082; 1176701-083; 1176701-084; 1176701-085; 1176701-086; 1176701-087; 1176701-088; 1176701-089; 1176701-090; 1176701-091; 1176701-092; 1176701-093; 1176701-094; 1176701-095; 1176701-096; 1176701-097; 1176701-098; 1176701-099; 1176701-100; 1176701-101; 1176701-102; 1176701-103; 1176701-104; 1176701-105; 1176701-106; 1176701-107; 1176701-108; 1176701-109; 1176701-110; 1176701-111; 1176701-112; 1176701-113; 1176701-114; 1176701-115; 1176701-116; 1176701-117; 1176701-118; 1176701-119; 1176701-120; 1176701-121; 1176701-122; 1176701-123; 1176701-124; 1176701-125; 1176701-126; 1176701-127; 1176701-128; 1176701-129; 1176701-130; 1176701-131; 1176701-132; 1176701-133; 1176701-134; 1176701-135; 1176701-136; 1176701-137; 1176701-138; 1176701-139; 1176701-140; 1176701-141; 1176701-142; 1176701-143; 1176701-144; 1176701-145; 1176701-146; 1176701-147; 1176701-148; 1176701-149; 1176701-150; 1176701-151; 1176701-152; 1176701-153; 1176701-154; 1176701-155; 1176701-156; 1176701-157; 1176701-158; 1176701-159; 1176701-160; 1176701-161; 1176701-162; 1176701-

163; 1176701-164; 1176701-165; 1176701-166; 1176701-167; 1176701-168; 1176701-169; 1176701-170; 1176701-171;
1176701-172; 1176701-173; 1176701-174; 1176701-175; 1176701-176; 1176701-177; 1176701-178; 1176701-179; 1176701-
180; 1176701-181; 1176701-182; 1176701-183; 1176701-184; 1176701-185; 1176701-186; 1176701-187; 1176701-188;
1176701-189; 1176701-190; 1176701-191; 1176701-192; 1176701-193; 1176701-194; 1176701-195; 1176701-196; 1176701-
197; 1176701-198; 1176701-199; 1176701-200; 1176701-201; 1176701-202; 1176701-203; 1176701-204; 1176701-205;
1176701-206; 1176701-207; 1176701-208; 1176701-209; 1176701-210; 1176701-211; 1176701-212; 1176701-213; 1176701-
214; 1176701-215; 1176701-216; 1176701-217; 1176701-218; 1176701-219; 1176701-220; 1176701-221; 1176701-222;
1176701-223; 1176701-224; 1176701-225; 1176701-226; 1176701-227; 1176701-228; 1176701-229; 1176701-230; 1176701-
231; 1176701-232; 1176701-233; 1176701-234; 1176701-235; 1176701-236; 1176701-237; 1176701-238; 1176701-239;
1176701-240; 1176701-241; 1176701-242; 1176701-243; 1176701-244; 1176701-245; 1176701-246; 1176701-247; 1176701-
248; 1176701-249; 1176701-250; 1176701-251; 1176701-252; 1176701-253; 1176701-254; 1176701-255; 1176701-256;
1176701-257; 1176701-258; 1176701-259; 1176701-260; 1176701-261; 1176701-262; 1176701-263; 1176701-264; 1176701-
265; 1176701-266; 1176701-267; 1176701-268; 1176701-269; 1176701-270; 1176701-271; 1176701-272; 1176701-273;
1176701-274; 1176701-275; 1176701-276; 1176701-277; 1176701-278; 1176701-279; 1176701-280; 1176701-281; 1176701-
282; 1176701-283; 1176701-284; 1176701-285; 1176701-286; 1176701-287; 1176701-288; 1176701-289; 1176701-290;
1176701-291; 1176701-292; 1176701-293; 1176701-294; 1176701-295; 1176701-296; 1176701-297; 1176701-298; 1176701-
299; 1176701-300; 1176701-301; 1176701-302; 1176701-303; 1176701-304; 1176701-305; 1176701-306; 1176701-307;
1176701-308; 1176701-309; 1176701-310; 1176701-311; 1176701-315; 1176701-316; 1176701-317; 1176701-318; 1176701-
319; 1176701-320; 1176701-321; 1176701-322; 1176701-323; 1176701-324; 1176701-325; 1176701-326; 1176701-327;
1176701-328; 1176701-329; 1176701-330; 1176701-331; 1176701-332; 1176701-333; 1176701-334; 1176701-335; 1176701-
336; 1176701-337; 1176701-338; 1176701-339; 1176701-340; 1176701-341; 1176701-342; 1176701-343; 1176701-344;
1176701-345; 1176701-346; 1176701-347; 1176701-348; 1176701-349; 1176701-350; 1176701-351; 1176701-352; 1176701-
353; 1176701-354; 1176701-355; 1176701-356; 1176701-357; 1176701-358; 1176701-359; 1176701-360; 1176701-361;
1176701-362; 1176701-363; 1176701-364; 1176701-365; 1176701-366; 1176701-367; 1176701-368; 1176701-369; 1176701-
370; 1176701-371; 1176701-372; 1176701-373; 1176701-374; 1176701-375; 1176701-376; 1176701-377; 1176701-378;
1176701-379; 1176701-380; 1176701-381; 1176701-382; 1176701-383; 1176701-384; 1176701-385; 1176701-386; 1176701-
387; 1176701-388; 1176701-389; 1176701-390; 1176701-391; 1176701-392; 1176701-393; 1176701-394; 1176701-395;
1176701-396; 1176701-397; 1176701-398; 1176701-399; 1176701-400; 1176701-401; 1176701-402; 1176701-403; 1176701-
404; 1176701-405; 1176701-406; 1176701-407; 1176701-408; 1176701-409; 1176701-410; 1176701-411; 1176701-412;
1176701-413; 1176701-414; 1176701-415; 1176701-416; 1176701-417; 1176701-418; 1176701-419; 1176701-420; 1176701-
421; 1176701-422; 1176701-423; 1176701-424; 1176701-425; 1176701-426; 1176701-427; 1176701-428; 1176701-429;
1176701-430; 1176701-431; 1176701-432; 1176701-433; 1176701-434; 1176701-435; 1176701-436; 1176701-437; 1176701-
438; 1176701-439; 1176701-440; 1176701-441; 1176701-442; 1176701-443; 1176701-444; 1176701-445; 1176701-446;
1176701-447; 1176701-448; 1176701-449; 1176701-450; 1176701-451; 1176701-452; 1176701-453; 1176701-454; 1176701-
455; 1176701-456; 1176701-457; 1176701-458; 1176701-459; 1176701-460; 1176701-461; 1176701-462; 1176701-463;
1176701-464; 1176701-465; 1176701-466; 1176701-467; 1176701-468; 1176701-469; 1176701-470; 1176701-471; 1176701-
472; 1176701-473; 1176701-474; 1176701-475; 1176701-476; 1176701-477; 1176701-478; 1176701-479; 1176701-480;
1176701-481; 1176701-482; 1176701-483; 1176701-484; 1176701-485; 1176701-486; 1176701-487; 1176701-488; 1176701-
489; 1176701-490; 1176701-491; 1176701-492; 1176701-493; 1176701-494; 1176701-495; 1176701-496; 1176701-497;
1176701-498; 1176701-499; 1176701-500; 1176701-501; 1176701-502; 1176701-503; 1176701-504; 1176701-505;
506; 1176701-507; 1176701-508; 1176701-509; 1176701-510; 1176701-511; 1176701-512; 1176701-513; 1176701-514;
1176701-515; 1176701-516; 1176701-517; 1176701-518; 1176701-519; 1176701-520; 1176701-521; 1176701-522; 1176701-
523; 1176701-524; 1176701-525; 1176701-526; 1176701-527; 1176701-528; 1176701-529; 1176701-530; 1176701-531;
1176701-532; 1176701-533; 1176701-534; 1176701-535; 1176701-536; 1176701-537; 1176701-538; 1176701-539; 1176701-
540; 1176701-541; 1176701-542; 1176701-543; 1176701-544; 1176701-545; 1176701-546; 1176701-547; 1176701-548;
1176701-549; 1176701-550; 1176701-551; 1176701-552; 1176701-553; 1176701-554; 1176701-555; 1176701-556; 1176701-
557; 1176701-558; 1176701-559; 1176701-560; 1176701-561; 1176701-562; 1176701-563; 1176701-564; 1176701-565;
1176701-566; 1176701-567; 1176701-568; 1176701-569; 1176701-570; 1176701-571; 1176701-572; 1176701-573; 1176701-
574; 1176701-575; 1176701-576; 1176701-577; 1176701-578; 1176701-579; 1176701-580; 1176701-581; 1176701-582;
1176701-583; 1176701-584; 1176701-585; 1176701-586; 1176701-587; 1176701-588; 1176701-589; 1176701-590; 1176701-
591; 1176701-592; 1176701-593; 1176701-594; 1176701-595; 1176701-596; 1176701-597; 1176701-598; 1176701-599;
1176701-600; 1176701-601; 1176701-602; 1176701-603; 1176701-604; 1176701-605; 1176701-606; 1176701-607; 1176701-
608; 1176701-609; 1176701-610; 1176701-611; 1176701-612; 1176701-613; 1176701-614; 1176701-615; 1176701-616;
1176701-617; 1176701-618; 1176701-619; 1176701-620; 1176701-621; 1176701-622; 1176701-623; 1176701-624; 1176701-
625; 1176701-626; 1176701-627; 1176701-628; 1176701-629; 1176701-630; 1176701-631; 1176701-632; 1176701-633;
1176701-634; 1176701-635; 1176701-636; 1176701-637; 1176701-638; 1176701-639; 1176701-640; 1176701-641; 1176701-
642; 1176701-643; 1176701-644; 1176701-645; 1176701-646; 1176701-647; 1176701-648; 1176701-649; 1176701-650;
1176701-651; 1176701-652; 1176701-653; 1176701-654; 1176701-655; 1176701-656; 1176701-657; 1176701-658; 1176701-
659; 1176701-660; 1176701-661; 1176701-662; 1176701-663; 1176701-664; 1176701-665; 1176701-666; 1176701-667;
1176701-668; 1176701-669; 1176701-670; 1176701-671; 1176701-672; 1176701-673; 1176701-674; 1176701-675; 1176701-
676; 1176701-677; 1176701-678; 1176701-679; 1176701-680; 1176701-681; 1176701-682; 1176701-683; 1176701-684;
1176701-685; 1176701-686; 1176701-687; 1176701-688; 1176701-689; 1176701-690; 1176701-691; 1176701-692; 1176701-

693; 1176701-694; 1176701-695; 1176701-696; 1176701-697; 1176701-698; 1176701-699; 1176701-700; 1176701-701; 1176701-702; 1176701-703; 1176701-704; 1176701-705; 1176701-706; 1176701-707; 1176701-708; 1176701-709; 1176701-710; 1176701-711; 1176701-712; 1176701-713; 1176701-714; 1176701-715; 1176701-716; 1176701-717; 1176701-718; 1176701-719; 1176701-720; 1176701-721; 1176701-722; 1176701-723; 1176701-724; 1176701-725; 1176701-726; 1176701-727; 1176701-728; 1176701-729; 1176701-730; 1176701-731; 1176701-732; 1176701-733; 1176701-734; 1176701-735; 1176701-736; 1176701-737; 1176701-738; 1176701-739; 1176701-740; 1176701-741; 1176701-742; 1176701-743; 1176701-744; 1176701-745; 1176701-746; 1176701-747; 1176701-748; 1176701-749; 1176701-750; 1176701-751; 1176701-752; 1176701-753; 1176701-754; 1176701-755; 1176701-756; 1176701-757; 1176701-758; 1176701-759; 1176701-760; 1176701-761; 1176701-762; 1176701-763; 1176701-764; 1176701-765; 1176701-766; 1176701-767; 1176701-768; 1176701-769; 1176701-770; 1176701-771; 1176701-772; 1176701-773; 1176701-774; 1176701-775; 1176701-776; 1176701-777; 1176701-778; 1176701-779; 1176701-780; 1176701-781; 1176701-782; 1176701-783; 1176701-784; 1176701-785; 1176701-786; 1176701-787; 1176701-788; 1176701-789; 1176701-790; 1176701-791; 1176701-792; 1176701-793; 1176701-794; 1176701-795; 1176701-796; 1176701-797; 1176701-798; 1176701-799; 1176701-800; 1176701-801; 1176701-802; 1176701-803; 1176701-804; 1176701-805; 1176701-806; 1176701-807; 1176701-808; 1176701-809; 1176701-810; 1176701-811; 1176701-812; 1176701-813; 1176701-814; 1176701-815; 1176701-816; 1176701-817; 1176701-818; 1176701-819; 1176701-820; 1176701-821; 1176701-822; 1176701-823; 1176701-824; 1176701-825; 1176701-826; 1176701-827; 1176701-828; 1176701-829; 1176701-830; 1176701-831; 1176701-832; 1176701-833; 1176701-834; 1176701-835; 1176701-836; 1176701-837; 1176701-838; 1176701-839; 1176701-840; 1176701-841; 1176701-842; 1176701-843; 1176701-844; 1176701-845; 1176701-846; 1176701-847; 1176701-848; 1176701-849; 1176701-850; 1176701-851; 1176701-852; 1176701-853; 1176701-854; 1176701-855; 1176701-856; 1176701-857; 1176701-858; 1176701-859; 1176701-860; 1176701-861; 1176701-862; 1176701-863; 1176701-864; 1176701-865; 1176701-866; 1176701-867; 1176701-868; 1176701-869; 1176701-870; 1176701-871; 1176701-872; 1176701-873; 1176701-874; 1176701-875; 1176701-876; 1176701-877; 1176701-878; 1176701-879; 1176701-880; 1176701-881; 1176701-882; 1176701-883; 1176701-884; 1176701-885; 1176701-886; 1176701-887; 1176701-888; 1176701-889; 1176701-890; 1176701-891; 1176701-892; 1176701-893; 1176701-894; 1176701-895; 1176701-896; 1176701-897; 1176701-898; 1176701-899; 1176701-900; 1176701-901; 1176701-902; 1176701-903; 1176701-904; 1176701-905; 1176701-906; 1176701-907; 1176701-908; 1176701-909; 1176701-910; 1176701-911; 1176701-912; 1176701-913; 1176701-914; 1176701-915; 1176701-916; 1176701-917; 1176701-918; 1176701-919; 1176701-920; 1176701-921; 1176701-922; 1176701-923; 1176701-924; 1176701-925; 1176701-926; 1176701-927; 1176701-928; 1176701-929; 1176701-930; 1176701-931; 1176701-932; 1176701-933; 1176701-934; 1176701-935; 1176701-936; 1176701-937; 1176701-938; 1176701-939; 1176701-940; 1176701-941; 1176701-942; 1176701-943; 1176701-944; 1176701-945; 1176701-946; 1176701-947; 1176701-948; 1176701-949; 1176701-950; 1176701-951; 1176701-952; 1176701-953; 1176701-954; 1176701-955; 1176701-956; 1176701-957; 1176701-958; 1176701-959; 1176701-960; 1176701-961; 1176701-962; 1176701-963; 1176701-964; 1176701-965; 1176701-966; 1176701-967; 1176701-968; 1176701-969; 1176701-970; 1176701-971; 1176701-972; 1176701-973; 1176701-974; 1176701-975; 1176701-976; 1176701-977; 1176701-978; 1176701-979; 1176701-980; 1176701-981; 1176701-982; 1176701-983; 1176701-984; 1176701-985; 1176701-986; 1176701-987; 1176701-988; 1176701-989; 1176701-990; 1176701-991; 1176701-992; 1176701-993; 1176701-994; 1176701-995; 1176701-996; 1176702-; 1176801-; 1176810-; 1176811-; 1176812-; 1176813-; 1176814-; 117NT000-1; 117NT000-3; 117NT001-1; 117NT001-11; 117NT001-23; 117NT001-27; 117NT001-3; 117NT001-31; 117NT001-33; 117NT001-5; 117NT001-7; 117NT001-9; 117NT002-1; 1191-1; 1191-2; 1191-21; 1191-23; 1191-26; 1191-28; 1191-3; 1191-31; 1191-33; 1191-4; 1191-41; 1191-46; 1191510-; 1191-6; 1191-8; 11918001-; 11918002-; 1191801-1; 1191801-2; 1191802-; 1191803-; 1191804-; 1191807-; 1191808-1; 1191808-2; 1191809-; 1191810-; 1191811-; 1191812-1; 1191812-2; 1191813-; 1191814-; 1191815-; 1191816-1; 1191816-2; 1191817-; 1191818-; 1191819-; 1191820-; 1191821-; 1191822-; 1191823-; 1191824-; 1191825-; 1191826-; 1191827-; 1191828-; 1191829-; 1191830-; 1191831-; 1191832-; 1191833-; 1191834-; 1191835-; 1191836-; 1191837-; 1191838-; 1191839-; 1191840-; 1191841-; 1191843-; 1191844-; 1191845-; 1191846-; 1191850-; 1191851-; 1191852-; 1191856-; 1191857-; 1191858-; 1191859-; 1191860-; 1191861-; 1191862-; 1191863-; 1191864-; 1191865-; 1191866-; 1191867-; 1191868-; 1191869-; 1191870-; 1191872-; 1191873-; 1191874-; 1191875-; 1191876-; 1191877-; 1191878-; 1191879-; 1191880-; 1191881-; 1191882-; 1191883-; 1191884-; 1191888-; 1191889-; 1191890-; 1191891-; 1191893-; 1191895-; 1191896-; 1191897-; 1191898-; 1193-1; 1193-2; 120NT000; 120NT000-1; 120NT000-11; 120NT000-13; 120NT000-15; 120NT000-17; 120NT000-3; 120NT000-5; 120NT000-7; 120NT000-9; 1215-1; 1215-20; 1215-30; 1235-1-; 1235-2-; 1235-20-; 1235-3-; 1235305-5; 1235-4-; 1235-5-; 1235511-; 1235511-3; 1235512-; 1235512-4; 1235513-; 1235513-2; 1235-5-14; 1235515-2; 1235517-1; 1235517-2; 1235519-1; 1235520-1; 1235-6-; 1235-7-; 1235-8-; 1235-9-; 1248-10; 1248111-; 1248121-; 1248122-; 1248-20; 1248-21; 1248323-2; 1248323-3; 1248327-; 1248328-; 1248408-1; 1248409-1; 1248423-1; 1248801-; 1248803-; 1248804-; 1248805-; 1248806-; 1248808-; 1248810-; 1248811-; 1248812-; 1248815-; 1248816-; 1248817-; 1248818-; 1248819-; 1248820-; 1248821-; 1248823-; 1248824-; 1248825-; 1248826-; 1248827-; 1248828-; 1248829-; 1248830-; 1248850-; 1248851-; 1248852-; 1248853-; 1248854-; 1248855-; 1248856-; 1248857-; 1248858-; 1248859-; 1248860-; 1248861-; 1248862-; 1248863-; 1248864-; 1248865-; 1248866-; 1248867-; 1248869-; 1248870-; 1248871-; 1248872-; 1248873-; 1248874-; 1248875-; 1248877-; 1248881-; 1248885-; 1248888-; 1248889-; 1248890-; 1248891-; 1248892-; 1248893-; 1248894-; 1248895-; 1249103-1; 1249112-1; 1249113-1; 1249113-2; 1249114-1; 1249115-1; 1281-1; 1284-1; 1284806-; 1284807-; 1284810-; 1284833-; 1285-1; 1285-2; 1285-3; 1285-4; 1285-5; 1285-6; 1291801-; 1291802-; 1291803-; 1291804-; 1291806-; 1291807-; 1291808-; 1291810-; 1291811-; 1291812-; 1291813-; 1291814-; 1291815-; 1291816-; 1291817-; 1291818-; 1291821-; 1291822-; 1291823-; 1291824-; 1291830-; 1291832-; 1291833-; 1291834-; 1291835-; 1291836-; 1291837-; 1291838-; 1291839-; 1291840-; 1291841-; 1291842-;

1291843-; 1291844-; 1291846-; 1291847-; 1291848-; 1291849-; 12918801-; 1292-1-; 1292-10-; 1292-11-; 1292-15-; 1292-16-; 1292-2-; 1292-3-; 1292-4-; 1292-5-; 1292501-; 1292506-; 1292507-1; 1292508-1; 1292-6-; 1292-7-; 1292-8-; 1292805-; 1292806-; 1292824-; 1292825-; 1292826-; 1292827-; 1292-9-; 1294-1-; 1294-2-; 1294-3-; 1294-4-; 1294-5-; 1294501-; 1294801-; 1294802-; 1294803-; 1294804-; 1294805-; 1294806-; 1294807-; 1294808-; 1294809-; 1294810-; 1295-1-; 1295-10-; 1295-11-; 1295-12-105-1; 1295-12-105-2; 1295-12-105-3; 1295-12-105-4; 1295-12-113-1; 1295-12-118-1; 1295-12-127-4; 1295-12-18-1; 1295-2-; 1295-3-; 1295-4-; 1295-5-; 1295511-; 1295512-; 1295513-; 1295-8-; 1295825-; 1295826-; 1295827-; 1295828-; 1295-9-; 12998001-; 12998002-; 12998005-; 1299803-; 1299805-; 1299810-; 1299814-; 1299815-; 1299817-; 1299818-; 1299819-; 1299826-; 1299828-; 1299833-; 1299835-; 1299836-; 1299837-; 1299838-; 1299839-; 1299840-; 1299841-; 1299842-; 1299843-; 1299844-; 1299845-; 1299853-; 1299851-; 1299852-; 1299854-; 1299855-; 1299856-; 1299857-; 1299860-; 1299861-; 1299862-; 1299863-; 1299864-; 1299865-; 1299870-; 1299871-; 1299872-; 1299873-; 1299874-; 1299877-; 1299878-; 1299879-; 1299880-; 1299881-; 1299883-; 1299884-; 1299885-; 1299888-; 1299889-; 1299893-; 1299894-; 1299895-; 1299896-; 1299897-; 1299898-; 1301-1; 1301-4-; 1301-6; 1301701-023; 1301701-059; 1301701-063; 1301701-067; 1301701-113; 1301701-114; 1301701-145; 1301701-172; 1301701-189; 1301701-222; 1301701-315; 1301701-316; 1301701-317; 1301701-318; 1301701-319; 1301701-320; 1301701-321; 1301701-322; 1301701-343; 1301701-344; 1301701-345; 1301701-373; 1301701-374; 1301701-375; 1301701-378; 1301701-386; 1301701-387; 1301701-388; 1301701-389; 1301701-390; 1301701-392; 1301701-397; 1301701-438; 1301701-450; 1301701-452; 1301701-457; 1301701-464; 1301701-465; 1301701-466; 1301701-467; 1301701-473; 1301701-474; 1301701-484; 1301701-496; 1301701-499; 1301701-501; 1301701-506; 1301701-507; 1301701-508; 1301701-521; 1301701-535; 1301701-558; 1301701-560; 1301701-561; 1301701-562; 1301701-563; 1301701-564; 1301701-565; 1301701-568; 1301701-569; 1301701-570; 1301701-571; 1301701-572; 1301701-600; 1301701-622; 1301701-623; 1301701-624; 1301701-625; 1301701-626; 1301701-627; 1301701-628; 1301701-629; 1301701-630; 1301701-631; 1301701-633; 1301701-661; 1301701-662; 1301701-663; 1301701-664; 1301701-674; 1301701-675; 1301701-738; 1301701-739; 1301701-740; 1301701-807; 1301701-808; 1301701-829; 1301701-830; 1301701-831; 1301701-832; 1301701-833; 1301701-873; 1301701-874; 1301701-875; 1301701-876; 1301701-877; 1301701-878; 1301701-879; 1301701-881; 1301701-891; 1301701-892; 1301701-893; 1301701-894; 1301701-895; 1301701-914; 1301701-915; 1301701-916; 1301701-922; 1301701-923; 1301701-924; 1301701-925; 1301701-943; 1301701-946; 1301701-947; 1301701-960; 1301701-963; 1301-76; 1301-8; 1301801-1; 1301801-2; 1301801-92; 1301802-; 1301803-; 1301806-; 1301807-; 1301808-; 1301809-; 1301810-; 1301811-; 1301815-; 1301816-; 1301818-; 1301819-; 1301820-; 1301821-; 1301822-; 1301823-; 1301824-; 1301825-; 1301826-; 1301827-; 1301828-; 1301830-; 1301831-; 1301832-; 1301833-; 1301834-; 1301835-; 1301836-; 1301837-; 1301838-; 1301839-; 1301840-; 1301841-; 1301845-; 1301846-; 1301847-; 1301848-; 1301849-; 1301850-; 1301851-; 1301-85-1; 1301852-; 1301-85-2; 1301853-; 1301-85-3; 1301854-; 1301-85-4; 1301855-; 1301-85-5; 1301856-; 1301857-; 1301858-; 1301859-; 1301860-; 1301861-; 1301862-; 1301863-; 1301864-; 1301866-; 1301867-; 1301870-; 1301871-; 1301872-; 1301873-; 1301874-; 1301876-; 1301878-; 1301879-; 1301880-; 1301881-; 1301882-; 1301883-; 1301884-; 1301885-; 1301886-; 1301887-; 1301888-; 1301889-; 1301890-; 1301891-; 1301892-; 1301893-; 1301894-; 1301895-; 1301896-; 1301-92-; 1301-93-; 1301-94-; 1301-95-; 1301-96-; 1303-10-; 1303-100-; 1303-101-; 1303-102; 1303-103; 1303-104; 1303-105; 1303-106-; 1303-107-; 1303-108-; 1303-109-; 1303-11-; 1303-110-; 1303-111-; 1303-112-; 1303-113-; 1303-114-; 1303-115-; 1303-116-; 1303-117-; 1303-119-; 1303-12; 1303-120-; 1303-121; 1303-122-; 1303-123-; 1303-124-; 1303-125-; 1303-126-; 1303-127-; 1303-128-; 1303-129-; 1303-13; 1303-130-; 1303-131-; 1303-132-; 1303-133-; 1303-134-; 1303-135-; 1303-136-; 1303-137-; 1303-138; 1303-139-; 1303-14-; 1303-140-; 1303-141-; 1303-142-; 1303-143-; 1303-144-; 1303-145-; 1303-146-; 1303-147-; 1303-148-; 1303-149-; 1303-15-; 1303-150-; 1303-151-; 1303-152-; 1303-153-; 1303-154-; 1303-155-; 1303-156-; 1303-157-; 1303-158-; 1303-159-; 1303-16-; 1303-160; 1303-161; 1303-162-; 1303-163; 1303-164-; 1303-165-; 1303-166-; 1303-167-; 1303-168-; 1303-169-; 1303-17; 1303-170-; 1303-171-; 1303-172-; 1303-173-; 1303-174-; 1303-175-; 1303-176; 1303-177-; 1303-178-; 1303-179-; 1303-18; 1303-180-; 1303-181-; 1303-182; 1303-183-; 1303-184-; 1303-185-; 1303-186-; 1303-187; 1303-188; 1303-189; 1303-19; 1303-190; 1303-191; 1303-192-; 1303-193-; 1303-194-; 1303-195-; 1303-196-; 1303-197; 1303-198-; 1303-199; 1303-2-; 1303-20; 1303-200; 1303-201; 1303-202; 1303-203; 1303-204-; 1303-205; 1303-206; 1303-207; 1303-209-; 1303-21; 1303-210-; 1303-211-; 1303-212-; 1303-213-; 1303-214-; 1303-215-; 1303-216; 1303-217; 1303-218-; 1303-219-; 1303-22-; 1303-220-; 1303-221-; 1303-222-; 1303-223-; 1303-224-; 1303-225-; 1303-226-; 1303-227-; 1303-228-; 1303-229-; 1303-23-; 1303-230; 1303-231-; 1303-232-; 1303-233; 1303-234-; 1303-235-; 1303-236-; 1303-237-; 1303-238-; 1303-239-; 1303-24-; 1303-240-; 1303-241-; 1303-242-; 1303-243-; 1303-244-; 1303-245-; 1303-246-; 1303-247-; 1303-248-; 1303-249-; 1303-25; 1303-250-; 1303-251-; 1303-252-; 1303-253-; 1303-254-; 1303-255-; 1303-256-; 1303-257; 1303-258; 1303-259-; 1303-26; 1303-260-; 1303-261-; 1303-262-; 1303-263-; 1303-264; 1303-265-; 1303-266-; 1303-267-; 1303-268-; 1303-269; 1303-27-; 1303-270; 1303-271-; 1303-274-; 1303-276-; 1303-277-; 1303-278-; 1303-279-; 1303-28; 1303-280-; 1303-281-; 1303-282-; 1303-283-; 1303-284-; 1303-285-; 1303-286-; 1303-287-; 1303-288-; 1303-289-; 1303-29-; 1303-290-; 1303-291-; 1303-293-; 1303-294-; 1303-295; 1303-296-; 1303-297-; 1303-3-; 1303-30-; 1303-304-; 1303-305-; 1303-306-; 1303-307-; 1303-308-; 1303-31-; 1303-315-; 1303-316; 1303-317; 1303-318-; 1303-319; 1303-32-; 1303-320-; 1303-321-; 1303-322; 1303-323-; 1303-324; 1303-325; 1303-326; 1303-327-; 1303-328-; 1303-329-; 1303-33-; 1303-330-; 1303-331-; 1303-332; 1303-333; 1303-334; 1303-336-; 1303-337-; 1303-338-; 1303-339-; 1303-34; 1303-340-; 1303-341-; 1303-342-; 1303-343-; 1303-344-; 1303-345-; 1303-346-; 1303-347-; 1303-348; 1303-349; 1303-35-; 1303-350; 1303-351; 1303-352-; 1303-353-; 1303-354-; 1303-355-; 1303-356-; 1303-357-; 1303-358-; 1303-359-; 1303-36-; 1303-37; 1303-38-; 1303-39-; 1303-4-; 1303-40-; 1303-41-; 1303-42-; 1303-43-; 1303-45-; 1303-46; 1303-47-005; 1303-47-018; 1303-47-045; 1303-47-059; 1303-47-061; 1303-47-064; 1303-47-071; 1303-47-096; 1303-47-112; 1303-47-113; 1303-47-120; 1303-47-121; 1303-47-122; 1303-47-124; 1303-47-125; 1303-47-126; 1303-47-128; 1303-47-138; 1303-47-139; 1303-47-140; 1303-47-141; 1303-47-142; 1303-47-143; 1303-47-144; 1303-47-145; 1303-47-146; 1303-47-147; 1303-47-148;

1303-47-149; 1303-47-150; 1303-47-151; 1303-47-152; 1303-47-153; 1303-47-154; 1303-47-155; 1303-47-156; 1303-47-157;
1303-47-158; 1303-47-159; 1303-47-160; 1303-47-161; 1303-47-162; 1303-47-163; 1303-47-164; 1303-47-165; 1303-47-166;
1303-47-167; 1303-47-168; 1303-47-169; 1303-47-170; 1303-47-171; 1303-47-172; 1303-47-173; 1303-47-174; 1303-47-175;
1303-47-176; 1303-47-177; 1303-47-178; 1303-47-179; 1303-47-180; 1303-47-181; 1303-47-182; 1303-47-184; 1303-47-185;
1303-47-188; 1303-47-189; 1303-47-190; 1303-47-191; 1303-47-192; 1303-47-193; 1303-47-194; 1303-47-197; 1303-47-198;
1303-47-199; 1303-47-200; 1303-47-201; 1303-47-202; 1303-47-203; 1303-47-217; 1303-47-218; 1303-47-219; 1303-47-220;
1303-47-221; 1303-47-222; 1303-47-223; 1303-47-224; 1303-47-226; 1303-47-227; 1303-47-230; 1303-47-231; 1303-47-232;
1303-47-233; 1303-47-234; 1303-47-235; 1303-47-239; 1303-47-240; 1303-47-241; 1303-47-242; 1303-47-243; 1303-47-244;
1303-47-245; 1303-47-246; 1303-47-247; 1303-47-249; 1303-47-250; 1303-47-251; 1303-47-252; 1303-47-253; 1303-47-254;
1303-47-257; 1303-47-261; 1303-47-262; 1303-47-263; 1303-47-264; 1303-47-269; 1303-47-270; 1303-47-279; 1303-47-280;
1303-47-281; 1303-47-282; 1303-47-288; 1303-47-289; 1303-47-317; 1303-47-323; 1303-47-324; 1303-47-325; 1303-47-326;
1303-47-327; 1303-47-328; 1303-47-330; 1303-47-331; 1303-47-332; 1303-47-333; 1303-47-334; 1303-47-335; 1303-47-336;
1303-47-337; 1303-47-338; 1303-47-339; 1303-47-340; 1303-47-346; 1303-47-347; 1303-47-348; 1303-47-349; 1303-47-350;
1303-47-351; 1303-47-352; 1303-47-353; 1303-47-354; 1303-47-355; 1303-47-356; 1303-47-357; 1303-47-358; 1303-47-359;
1303-47-360; 1303-47-361; 1303-47-362; 1303-47-363; 1303-47-364; 1303-47-365; 1303-47-366; 1303-47-367; 1303-47-368;
1303-47-369; 1303-47-370; 1303-47-371; 1303-47-372; 1303-47-376; 1303-47-377; 1303-47-379; 1303-47-380; 1303-47-381;
1303-47-382; 1303-47-383; 1303-47-384; 1303-47-385; 1303-47-387; 1303-47-393; 1303-47-394; 1303-47-395; 1303-47-396;
1303-47-397; 1303-47-398; 1303-47-399; 1303-47-400; 1303-47-401; 1303-47-402; 1303-47-403; 1303-47-404; 1303-47-405;
1303-47-406; 1303-47-407; 1303-47-408; 1303-47-409; 1303-47-410; 1303-47-411; 1303-47-412; 1303-47-413; 1303-47-414;
1303-47-415; 1303-47-416; 1303-47-417; 1303-47-418; 1303-47-419; 1303-47-420; 1303-47-421; 1303-47-422; 1303-47-423;
1303-47-424; 1303-47-425; 1303-47-426; 1303-47-427; 1303-47-431; 1303-47-432; 1303-47-433; 1303-47-434; 1303-47-435;
1303-47-436; 1303-47-437; 1303-47-438; 1303-47-439; 1303-47-440; 1303-47-441; 1303-47-442; 1303-47-443; 1303-47-444;
1303-47-445; 1303-47-446; 1303-47-447; 1303-47-448; 1303-47-449; 1303-47-450; 1303-47-451; 1303-47-452; 1303-47-453;
1303-47-454; 1303-47-456; 1303-47-457; 1303-47-458; 1303-47-459; 1303-47-460; 1303-47-461; 1303-47-462; 1303-47-463;
1303-47-468; 1303-47-469; 1303-47-470; 1303-47-471; 1303-47-472; 1303-47-473; 1303-47-474; 1303-47-475; 1303-47-476;
1303-47-477; 1303-47-478; 1303-47-479; 1303-47-480; 1303-47-481; 1303-47-482; 1303-47-483; 1303-47-484; 1303-47-485;
1303-47-486; 1303-47-487; 1303-47-488; 1303-47-489; 1303-47-490; 1303-47-491; 1303-47-492; 1303-47-493; 1303-47-494;
1303-47-495; 1303-47-496; 1303-47-497; 1303-47-498; 1303-47-502; 1303-47-503; 1303-47-504; 1303-47-505; 1303-47-506;
1303-47-507; 1303-47-508; 1303-47-510; 1303-47-511; 1303-47-512; 1303-47-515; 1303-47-516; 1303-47-517; 1303-47-518;
1303-47-519; 1303-47-521; 1303-47-522; 1303-47-523; 1303-47-526; 1303-47-527; 1303-47-528; 1303-47-529; 1303-47-530;
1303-47-532; 1303-47-533; 1303-47-534; 1303-47-535; 1303-47-536; 1303-47-537; 1303-47-539; 1303-47-540; 1303-47-541;
1303-47-542; 1303-47-543; 1303-47-544; 1303-47-545; 1303-47-546; 1303-47-547; 1303-47-548; 1303-47-549; 1303-47-550;
1303-47-551; 1303-47-552; 1303-47-553; 1303-47-554; 1303-47-555; 1303-47-556; 1303-47-557; 1303-47-559; 1303-47-564;
1303-47-565; 1303-47-567; 1303-47-573; 1303-47-574; 1303-47-575; 1303-47-576; 1303-47-580; 1303-47-581; 1303-47-582;
1303-47-583; 1303-47-584; 1303-47-585; 1303-47-586; 1303-47-587; 1303-47-588; 1303-47-589; 1303-47-590; 1303-47-591;
1303-47-592; 1303-47-593; 1303-47-594; 1303-47-595; 1303-47-596; 1303-47-597; 1303-47-598; 1303-47-599; 1303-47-601;
1303-47-602; 1303-47-603; 1303-47-604; 1303-47-605; 1303-47-606; 1303-47-607; 1303-47-608; 1303-47-609; 1303-47-610;
1303-47-611; 1303-47-612; 1303-47-613; 1303-47-614; 1303-47-615; 1303-47-616; 1303-47-617; 1303-47-618; 1303-47-619;
1303-47-620; 1303-47-621; 1303-47-631; 1303-47-632; 1303-47-635; 1303-47-636; 1303-47-637; 1303-47-638; 1303-47-639;
1303-47-640; 1303-47-641; 1303-47-642; 1303-47-643; 1303-47-644; 1303-47-645; 1303-47-646; 1303-47-647; 1303-47-648;
1303-47-649; 1303-47-650; 1303-47-651; 1303-47-652; 1303-47-653; 1303-47-656; 1303-47-657; 1303-47-658; 1303-47-659;
1303-47-660; 1303-47-665; 1303-47-666; 1303-47-667; 1303-47-668; 1303-47-669; 1303-47-670; 1303-47-671; 1303-47-672;
1303-47-673; 1303-47-676; 1303-47-677; 1303-47-678; 1303-47-679; 1303-47-680; 1303-47-681; 1303-47-687; 1303-47-688;
1303-47-689; 1303-47-690; 1303-47-691; 1303-47-692; 1303-47-693; 1303-47-694; 1303-47-695; 1303-47-696; 1303-47-697;
1303-47-698; 1303-47-699; 1303-47-700; 1303-47-701; 1303-47-702; 1303-47-703; 1303-47-704; 1303-47-705; 1303-47-706;
1303-47-707; 1303-47-708; 1303-47-709; 1303-47-710; 1303-47-712; 1303-47-713; 1303-47-714; 1303-47-715; 1303-47-716;
1303-47-717; 1303-47-718; 1303-47-719; 1303-47-720; 1303-47-721; 1303-47-722; 1303-47-723; 1303-47-724; 1303-47-725;
1303-47-726; 1303-47-727; 1303-47-728; 1303-47-729; 1303-47-730; 1303-47-731; 1303-47-732; 1303-47-733; 1303-47-734;
1303-47-740; 1303-47-741; 1303-47-742; 1303-47-743; 1303-47-744; 1303-47-745; 1303-47-746; 1303-47-753; 1303-47-754;
1303-47-755; 1303-47-756; 1303-47-757; 1303-47-758; 1303-47-759; 1303-47-760; 1303-47-761; 1303-47-762; 1303-47-763;
1303-47-764; 1303-47-765; 1303-47-766; 1303-47-767; 1303-47-768; 1303-47-769; 1303-47-770; 1303-47-771; 1303-47-772;
1303-47-773; 1303-47-774; 1303-47-775; 1303-47-776; 1303-47-777; 1303-47-778; 1303-47-779; 1303-47-780; 1303-47-781;
1303-47-782; 1303-47-783; 1303-47-784; 1303-47-785; 1303-47-786; 1303-47-787; 1303-47-788; 1303-47-789; 1303-47-790;
1303-47-791; 1303-47-792; 1303-47-793; 1303-47-794; 1303-47-795; 1303-47-796; 1303-47-797; 1303-47-798; 1303-47-799;
1303-47-800; 1303-47-801; 1303-47-802; 1303-47-803; 1303-47-804; 1303-47-805; 1303-47-806; 1303-47-807; 1303-47-815;
1303-47-816; 1303-47-817; 1303-47-818; 1303-47-819; 1303-47-820; 1303-47-821; 1303-47-822; 1303-47-823; 1303-47-824;
1303-47-833; 1303-47-834; 1303-47-835; 1303-47-836; 1303-47-837; 1303-47-838; 1303-47-839; 1303-47-840; 1303-47-841;
1303-47-842; 1303-47-843; 1303-47-853; 1303-47-854; 1303-47-855; 1303-47-859; 1303-47-866; 1303-47-867; 1303-47-868;
1303-47-869; 1303-47-870; 1303-47-871; 1303-47-872; 1303-47-880; 1303-47-881; 1303-47-882; 1303-47-883; 1303-47-884;
1303-47-885; 1303-47-886; 1303-47-894; 1303-47-896; 1303-47-897; 1303-47-898; 1303-47-899; 1303-47-900; 1303-47-901;
1303-47-902; 1303-47-903; 1303-47-904; 1303-47-905; 1303-47-913; 1303-47-917; 1303-47-921; 1303-47-938; 1303-47-943;
1303-47-948; 1303-47-949; 1303-47-950; 1303-47-951; 1303-47-952; 1303-47-953; 1303-47-954; 1303-47-955; 1303-47-956;

1303-47-957; 1303-47-958; 1303-47-964; 1303-47-968; 1303-47-969; 1303-47-970; 1303-47-971; 1303-47-973; 1303-47-979; 1303-47-980; 1303-47-996; 1303-49; 1303-5-; 1303-50; 1303-51; 1303-52; 1303-53; 1303-54; 1303-55; 1303-56; 1303-57-; 1303-58; 1303-59; 1303-6-; 1303-60; 1303-61; 1303-62; 1303-63; 1303-64-; 1303-65-; 1303-66; 1303-67; 1303-68; 1303-69; 1303-7-; 1303-70; 1303-71; 1303-72; 1303-73-; 1303-74-; 1303-75-; 1303-76; 1303-77; 1303-78-; 1303-79-; 1303-8-; 1303-80-; 1303-81; 1303-82-; 1303-83; 1303-84-; 1303-85-; 1303-86; 1303-87; 1303-88; 1303-89-; 1303-9-; 1303-90-; 1303-91-; 1303-92-; 1303-93-; 1303-94; 1303-95; 1303-96-; 1303-97-; 1303-98-; 1303-99-; 1315-10; 1315-13; 1315-15; 1315-20; 1315-3; 1315-32; 1315801-; 1315812-; 1315813-; 1315814-; 1315815-; 1315825-; 1315826-; 131583-; 1315830-; 1315831-; 1315832-; 1315833-; 1315834-; 1315835-; 1315836-; 1315837-; 1315838-; 1315839-; 131584-; 1315840-; 1315841-; 1315842-; 1315843-; 1315844-; 1315845-; 1315846-; 1315848-; 1315849-; 1315850-; 1315851-; 1315852-; 1315853-; 1315855-; 1315856-; 1315857-; 1315858-; 1315859-; 131586-; 1315860-; 1315861-; 1315862-; 1315863-; 1315864-; 1315865-; 1315866-; 1315867-; 1315868-; 1315871-; 1315872-; 1315873-; 1315874-; 1315875-; 1315876-; 1315877-; 1315878-; 1315880-; 1315881-; 1315882-; 1315884-; 1315885-; 1315886-; 1315887-; 1315888-; 1315889-; 1315890-; 1315891-; 1315892-; 1315893-; 1315894-; 1360-1; 1364-1; 1364-10; 1366-1; 1366-103-; 1366-104; 1366-108-; 1366-110-; 1366-112-; 1366-114-; 1366-125-; 1366-135; 1366-145; 1366-146; 1366-152; 1366-154-; 1366-155-; 1366-164; 1366-165; 1366-167; 1366-168-; 1366-26; 1366-28; 1366-31; 1366-33; 1366-36; 1366-38; 1366-46; 1366-67; 1366701-1; 1366701-126; 1366701-397; 1366701-59; 1366-92-; 1366-94-; 1366-95-; 1390-1; 1501-030709; 1501-0715; 1501-101-; 1501-102-; 1501-106-; 1501-107-; 1501-11-; 1501-110-; 1501-111-; 1501-115-; 1501-116-; 1501-118-; 1501-119-; 1501-12-; 1501-120-; 1501-125; 1501-126; 1501-127; 1501-128; 1501-13-; 1501-135-; 1501-136; 1501-139; 1501-141; 1501-145; 1501-148; 1501-15-; 1501-150-; 1501-16-; 1501-196-; 1501-200; 1501-201-; 1501-202-; 1501-203; 1501-204-; 1501-205-; 1501-206-; 1501-207-; 1501-208; 1501-209; 1501-21-; 1501-210-; 1501-211-; 1501-212; 1501-213-; 1501-214-; 1501-215; 1501-216-; 1501-218-; 1501-22-; 1501-25; 1501-26-; 1501-27; 1501-28; 1501-305-; 1501-34; 1501-35; 1501-37; 1501-41; 1501-46; 1501-56; 1501-7-; 1501-92-; 1501-94-1; 1501-94-2; 1501-95; 1503-101-; 1503-103-; 1503-104-; 1503-110-; 1503-111-; 1503-112-; 1503-114-; 1503-115-; 1503-118-; 1503-119-; 1503-120-; 1503-123; 1503-125; 1503-126-; 1503-13; 1503-130-; 1503-131-; 1503-132-; 1503-133-; 1503-134-; 1503-140-; 1503-141-; 1503-142-; 1503-171-; 1503-193-; 1503-195-; 1503-2; 1503-201; 1503-202; 1503-211; 1503-212; 1503-221; 1503-222; 1503-223-; 1503-224-; 1503-225-; 1503-226-; 1503-227-; 1503-228-; 1503-229-; 1503-230-; 1503-231-; 1503-232-; 1503-233-; 1503-3-; 1503-307-; 1503-46; 1503-47-059; 1503-47-125; 1503-47-192; 1503-47-225; 1503-47-288; 1503-47-289; 1503-47-333; 1503-47-507; 1503-47-765; 1503-47-766; 1503-47-767; 1503-47-768; 1503-47-769; 1503-47-770; 1503-47-809; 1503-47-810; 1503-47-811; 1503-47-812; 1503-47-813; 1503-47-814; 1503-47-825; 1503-47-826; 1503-47-827; 1503-47-828; 1503-47-846; 1503-47-847; 1503-47-848; 1503-47-849; 1503-47-850; 1503-47-851; 1503-47-852; 1503-47-860; 1503-47-861; 1503-47-862; 1503-47-863; 1503-47-864; 1503-47-865; 1503-47-887; 1503-47-888; 1503-47-889; 1503-47-890; 1503-76; 1503-92-; 1503-94-1; 1503-94-2; 1503-95-; 1505-1; 16-50019-006; 180725-; 180729-; 180811-; 180894-101; 180894-102; 180949-; 180950-; 180951-; 180952-; 181114-; 181198-; 181219-; 181220-; 181590-; 181591-; 181609-; 181610-101; 181613-; 181614-; 181615-; 181621-101; 181621-201; 181621-301; 181621-303; 181621-401; 181621-403; 181621-405; 181621-407; 181621-409; 181621-411; 181621-413; 181621-415; 181621-417; 181621-419; 181621-421; 181621-423; 181621-425; 181621-427; 181621-429; 181621-431; 181621-433; 181621-435; 181621-437; 181621-439; 181621-441; 181621-443; 181621-445; 181621-447; 181621-449; 181621-451; 181621-453; 181621-455; 181621-457; 181621-459; 181621-461; 181621-463; 181621-465; 181621-467; 181621-469; 181621-471; 181621-473; 181621-475; 181621-477; 181621-479; 181621-481; 181621-483; 181621-485; 181621-487; 181621-489; 181621-491; 181621-493; 181621-495; 181621-497; 181621-499; 181621-501; 181621-503; 181621-505; 181621-507; 181621-509; 181621-511; 181621-513; 181621-515; 181621-517; 181621-519; 181621-521; 181621-523; 181621-525; 181621-527; 181621-529; 181621-531; 181621-533; 181621-535; 181621-537; 181621-539; 181621-541; 181621-543; 181621-545; 181621-547; 181622-101; 181622-201; 181622-301; 181704-; 181706-; 181718-; 181782-; 181802-; 181877-; 181911-101; 181911-201; 181911-301; 181977-; 182069-; 182070-; 182184-; 182387-; 182728-; 182857-; 182874-; 182876-; 182877-; 182878-; 182879-; 182970-; 183117-; 183166-; 183168-; 183169-; 183170-; 183193-; 183254-; 183328-; 183331-; 183594-; 183595-; 183596-; 183597-; 183598-; 183601-; 183778-; 183779-; 183782-; 183887-; 183972-; 184006-; 184053-; 184054-; 184056-; 184057-; 184058-; 184158-; 184255-; 184329-; 184330-; 184331-; 184332-; 184333-; 184334-; 184335-; 184418-; 184479-; 184484-; 184487-; 184488-; 184489-; 184490-; 184572-; 184586-; 184587-; 184653-; 186530-; 18N00004-1; 18N00004-13; 18N00004-19; 18N00004-21; 1NS002-008J050G; 20-00003-005; 20-00003-036; 20-00036-005; 20-00066-002; 20-00073-004; 20-00077-001; 20-00077-002; 20-00077-003; 20-00077-004; 20-00077-005; 20-00081-007; 20-00081-009; 20-00125-017; 20-00137-002; 20-00145-001; 20-00147-001; 21-00024-008; 21-00025-003; 21-00080-041; 21-00080-042; 21-00107-005; 21-00107-006; 21-00107-012; 21-00108-001; 21-00108-002; 21-00108-003; 21-00108-004; 21-00108-005; 21-00108-006; 21-00108-007; 21-00108-008; 21-00108-010; 23-00070-016; 23-00070-027; 23-00074-030; 23-00074-031; 23-00077-002; 23-00078-003; 23-00078-010; 23-00078-012; 23-00078-024; 23-00090-016; 23-00090-018; 24-00006-006; 24-00088-016; 24-00095-027; 24-00110-002; 24-00110-003; 24-00110-004; 25-00043-003; 30-00041-001; 30-00041-002; 30-00041-003; 311122-51; 311158-226; 319007-11; 32-00029-002; 32-00029-024; 39-00018-011; 40N00030-11; 40N00030-11; 40N00030-13; 40N00030-15; 40N00030-17; 40N00030-19; 40N00030-3; 40N00030-5; 40N00030-7; 40N00030-9; 40N00055-1; 40N00056-1; 40N00056-3; 40N00056-5; 41-00121-007; 41-00121-009; 41-00264-006; 41-00281-018; 41-00300-018; 41-00322-016; 41-00371-003; 41-00376-002; 41-00376-003; 41-00385-004; 41-00392-001; 41-00406-003; 45-00407-005; 45-00407-006; 45-00408-004; 45-00408-006; 45-00440-002; 46-00004-005; 46-00009-011; 46-00009-012; 46-00062-002; 46-00062-003; 46-00062-004; 46-00062-005; 46-00062-006; 46-00062-007; 46-00062-009; 46-00062-010; 46-00062-011; 46-00062-012; 46-00062-013; 46-00062-015; 46-00062-016; 46-00062-017; 46-00062-019; 46-00065-001; 46-00065-006; 46-00065-007; 48-00400-001; 48-00500-001; 49-00161-013; 49-00161-014; 49-00161-015; 49-00161-017; 49-00161-019; 49-00161-021; 49-00161-022; 49-00197-007; 49-00202-006; 49-00202-009; 49-00202-010; 49-

00205-001; 49-00228-002; 51-00323-004; 51-50016-002; 59-00027-001; 72-00364-006; 81000-1; 90-00068-028; 90-00109-007;
90-00109-035; 90-00120-001; 90-00123-025; AF1504-605; AN960C10L; AN960D10L; AN960JD10L; AN960JD4L;
BACN10YC3-10; CDWG-IS61233; D38999/20MD5SN; D38999/26MD35PN; D38999/26MD5SN; EAD22-0202-00; EAD22-
0203-00; EAD22-0204-00; EAD22-0205-00; EAD22-0206-00; EAD22-0207-00; IS60293-01; IS60293-04; IS60293-07;
IS60293-10; IS60293-16; IS60341-01; IS60341-04; IS60341-07; IS60341-12; IS60468-04; IS60468-08; IS60631-03; IS60631-
06; IS60631-09; IS60631-12; IS60631-15; IS60685-04; IS60685-05; IS61076-09; IS61233-104; IS61233-105; IS61233-110;
IS61233-111; IS61233-115; IW70007-03; IW70007-05; IW70007-08; IW70033; IW70033-06; KT1067103-2; KT1067104-2;
KT1067-2; KT1067844; KT1067845; KT1067847; KT1089103-22; KT1089-22-2; KT1089-9-4; KT1089-9-5; KT1091-10-1;
KT1091101-8-1; KT1091101-8-2A; KT1091101-8-2B; KT1091101-8-2C; KT1091101-8-2D; KT1091101-9-1; KT1091101-9-
2A; KT1091101-9-2B; KT1091101-9-2C; KT1091101-9-2D; KT1091-10-2; KT1091102-8-1; KT1091102-8-2A; KT1091102-8-
2B; KT1091102-8-3; KT1091102-9-1; KT1091102-9-2A; KT1091102-9-2B; KT1091102-9-3; KT1091-10-3; KT1091-10-4;
KT1091-10-5; KT1091-10-6; KT1091-11-1; KT1091-11-2; KT1091-11-3; KT1091-11-4; KT1091-11-5; KT1091-12-1; KT1091-
12-2; KT1091-14-1; KT1091-14-2; KT1091-20-1; KT1091-20-2; KT1091-20-3; KT1091-4-21; KT1091-4-22; KT1091-4-30;
KT1091-4-31; KT1091-5-1; KT1091-5-2; KT1091-6-1; KT1092-1-5; KT1092-1-6; KT1092-20-02; KT1092-20-03; KT1092-20-
1; KT1092-20-2; KT1092-20-3; KT1092-4-21; KT1092-4-22; KT1092-4-5; KT1092-4-7; KT1092-4-8; KT1092-4-9; KT1092-5-
1; KT1092-6-1; KT1092-6-2; KT1092-6-3; KT1121-1; KT1121-2; KT1121-3; KT1121-4; KT1121-5; KT1121-6; KT1122-1;
KT1122-10-1; KT1122-10-2; KT1122-10-4; KT1122-1-1; KT1122-1-2; KT1122-1-3; KT1122-2; KT1122-22; KT1122-3;
KT1122-4; KT1133-1; KT1133-2; KT1133-3; KT1133-4; KT1139-1; KT1140-10-1; KT1140-10-11; KT1140-10-20; KT1140-
10-21; KT1140-19-1; KT1140-20-1; KT1140-20-2; KT1140-20-3; KT1140-20-4; KT1140-21-1; KT1140-21-2; KT1140-21-3;
KT1140-21-4; KT1140-5-1; KT1140-5-11; KT1140-5-12; KT1140-5-13; KT1140-5-14; KT1140-5-15; KT1140-5-16; KT1140-
5-20; KT1140-5-21; KT1140-5-22; KT1140-6-1; KT1140-6-13; KT1140-6-14; KT1140-6-16; KT1140-6-2; KT1140-7-1;
KT1140-7-11; KT1140-7-12; KT1140-7-13; KT1140-7-14; KT1140-7-15; KT1140-9-1; KT1140-9-11; KT1140-9-12; KT1140-
9-2; KT1140-9-20; KT1140-9-3; KT1141-1; KT1144-1; KT1150-1; KT1150-20; KT1150-30; KT1150-4; KT1150-50; KT1150-
60; KT1150-7; KT1151-100; KT1151-101; KT1153-1; KT1153-10; KT1153-2; KT1153-20; KT1153-3; KT1153-30; KT1153-
40; KT1153-50; KT1154-1; KT1154-3; KT1154-30; KT1154-4; KT1154-50; KT1154-60; KT1154-70; KT1155-1; KT1155-2;
KT1155-3; KT1155-30; KT1155-31; KT1155-4; KT1155-5; KT1155-50; KT1155-6; KT1155-60; KT1156-1; KT1156-10;
KT1156-100; KT1156-130; KT1156-131; KT1156-14; KT1156-141; KT1156-150; KT1156-3; KT1156-30; KT1156-4;
KT1156-50; KT1156-60; KT1156-70; KT1170808; KT1170808-24; KT1170809; KT1170809-99; KT1170810; KT1170810-99;
KT1170811; KT1170811-138; KT1170811-157; KT1170811-157; KT1175-1; KT1175-2; KT1175-3; KT1175-4; KT1175-
744KIT1RETRO; KT1175-744KIT2RETRO; KT1175-744KIT3RETRO; KT1175-744KIT4RETRO; KT1175-
KIT1LY777RETRO; KT1175-KIT2LY777RETRO; KT1175-KIT3LY777RETRO; KT1175-KIT4LY777RETRO; KT1175-
LY767RETRO-EAK; KT1177-1; KT1177-1; KT1190-1; KT1190-2; KT1191-10-1; KT1191-10-2; KT1191-10-3; KT1191-10-4;
KT1191-10-5; KT1191330-1; KT1191800-1; KT1191-815-1; KT1191-815-2; KT1191-815-3; KT1191-841; KT1191-9-1;
KT1191-9-2; KT1191-9-3; KT1191-9-4; KT1191-9-5; KT1191-9-6; KT1191-9-7; KT1191-9-8; KT1194-1; KT1215-1; KT1215-
2; KT1215-3; KT1215-3-1; KT1235-3; KT1235305-2; KT1235305-3; KT1235305-4; KT1235305-5; KT1247-1; KT1249-1;
KT1249-1-11; KT1249-1-21; KT1249-1-31; KT1249-1-41; KT1249-2; KT1249-3; KT1249-3-11; KT1249-3-21; KT1249-3-31;
KT1249-3-41; KT1249-3-51; KT1250-1; KT1260-10; KT1260-11; KT1260-1-1; KT1260-12; KT1260-1-2; KT1260-13;
KT1260-1-3; KT1260-14; KT1260-16; KT1260-20; KT1260-21; KT1260-2-1; KT1260-2-2; KT1260-2-3; KT1260-3-2;
KT1260-3-3; KT1260-4-1; KT1260-4-2; KT1260-4-3; KT1260-5; KT1280-1; KT1280-11; KT1280-2; KT1280-3; KT1280-4;
KT1280-5; KT1280-6; KT1280-7; KT1290-1-1; KT1290-2-1; KT1290-2-1-1; KT1290-3-1; KT1290-3-1-1; KT1290-3-2;
KT1290-3-2-1; KT1290-4-1; KT1290-4-1-1; KT1290-5-1; KT1290-5-1-1; KT1290-6-1; KT1290-6-1-1; KT1290-7-1; KT1290-
8-1; KT1290-8-1-1; KT1291-10-1; KT1291-10-10; KT1291-10-2; KT1291-1-1; KT1291-1-10; KT1291-1-2; KT1291-2-1;
KT1291-2-10; KT1291-2-2; KT1291-2-3; KT1291-3-1; KT1291-3-10; KT1291-3-2; KT1291-4-1; KT1291-4-10; KT1291-4-2;
KT1291-4-20; KT1291-4-3; KT1291-5-1; KT1291-5-10; KT1291-5-2; KT1291-5-20; KT1291-5-3; KT1291-6-1; KT1291-6-10;
KT1291-6-2; KT1291-6-20; KT1291-7-1; KT1291-7-10; KT1291-7-2; KT1291-7-20; KT1291-8-1; KT1291-8-10; KT1291-8-2;
KT1291-8-20; KT1291-9-1; KT1291-9-10; KT1291-9-2; KT1291-9-20; KT1292501; KT1292506-1; KT1292506-1-10;
KT1292506-1-11; KT1292506-1-12; KT1292506-1-13; KT1292506-1-14; KT1292506-1-15; KT1292506-1-16; KT1292506-1-
17; KT1292506-1-18; KT1292506-1-19; KT1292506-1-2; KT1292506-1-3; KT1292506-1-4; KT1292506-1-5; KT1292506-1-6;
KT1292506-1-7; KT1292506-1-8; KT1292506-1-9; KT1294-2-1; KT1294-2-2; KT1295-1; KT1295305-1; KT1295513;
KT1295519; KT1295-8; KT1296-1-1; KT1296-1-2; KT1296-1-3; KT1296-2; KT1296-3; KT1296-4; KT1299-1; KT1299-2;
KT1299-3; KT1299-4; KT1299-5; KT1299-6; KT1299-7; KT1300-1-1; KT1300-1-2; KT1300-1-3; KT1300-1-4; KT1300-1-5;
KT1300-2-1; KT1300-2-2; KT1300-2-3; KT1300-2-30; KT1300-2-31; KT1300-2-4; KT1300-2-41; KT1300-2-42; KT1300-2-5;
KT1300-3-1; KT1300-3-10; KT1300-3-3; KT1300-3-30; KT1300-3-31; KT1300-3-4; KT1300-3-5; KT1300-4-1; KT1300-4-2;
KT1300-4-3; KT1300-4-4; KT1300-4-5; KT1302-1-1; KT1302-1-2; KT1302-1-3; KT1302-2-1; KT1303-12-1; KT1303-166-1;
KT1303-166-2; KT1303-61; KT1310-1-1; KT1310-1-2; KT1310-1-3; KT1310-2-1; KT1310-2-2; KT1310-2-3; KT1311-1;
KT1311-3; KT1311-4; KT1311-5; KT1315501-1; KT1319-1-1; KT1319-1-2; KT1319-1-3; KT1319-2-1; KT1319-2-2; KT1319-
2-3; KT1319-3-1; KT1319-3-2; KT1319-3-3; KT1319-4-1; KT1319-4-2; KT1319-4-3; KT1319-5-1; KT1319-5-2; KT1319-6-1;
KT1319-6-2; KT1319-6-3; KT1319-6-4; KT1319-6-5; KT1325-21-1; KT1327501; KT1327531; KT1518-1; KT1518-10;
KT1518-11; KT1518-2; KT1518-3; KT1518-4; KT1518-5; KT1518-6; KT1518-7; KT1518-8; KT1518-9; KT1527301-1;
M22759/34-22-0; M83723/60-214AN; M85528/2-12-A; MS20426AD3-4; MS20470AD4-6; MS20470AD5-7; MS20470D6-11;
MS20470D6-7; MS20470D6-9; MS20470D8-12; MS21042L04; MS21042L08; MS21042L3; MS21059L3; MS24693-C27;
MS3367-4-9; MS3367-7-2; MS3367-7-5; MS3367-7-6; MS3367-7-9; MS3476L12-10SW; MS35338-43; MS35650-305T;

MS51957-17; NAS1149D0316H; NAS1149D0332J; NAS1149D0332K; NAS1149DN432K; NAS1149DN816H; NAS1149DN832J; NAS1801-04-6; NAS1801-08-7; NAS1801-3-10; NAS1801-3-6; NAS1801-3-7; NAS1801-3-9; NAS1836-3-11; NAS514P1032-7P; NAS602-8P; NAS623-2-2; RD-FA3621-01; RD-FA3622-01; RD-FA3622-02; RD-FA3622-03; RD-FA3632-01; RD-FA3652-01; RD-KM6097-; RD-KM6100-; RD-KM6101-; RD-KM6188-; RD-KM6325-; RD-KM6326-

\* \* \*